# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BEVERLY J. WILLIAMSON, )<br>)<br>and )<br>)<br>REBECCA PALMER )<br>) Case No. 4:18-cv-513<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>COMMERCE BANK )<br>)<br>Defendant. ) | |

## NOTICE OF REMOVAL

Defendant Commerce Bank ("Commerce") respectfully notifies this Court in accordance with 28 U.S.C. §§ 1441 and 1446(a), 28 U.S.C. § 1331, and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), of its removal of the putative class action styled *Beverly J. Williamson, et al. v. Commerce Bank*, Case No. 16CR-AC00091-01, from the Circuit Court of Carroll County, Missouri, to the U.S. District Court for the Western District of Missouri, Western Division. As grounds for removing this action, Commerce states as follows:

## PROCEDURAL BACKGROUND
## AND THE ALLEGATIONS IN THE COMPLAINT

1. On May 2, 2016, Commerce filed a Petition against Plaintiffs Beverly J. Williamson and Rebecca Palmer ("Plaintiffs") seeking a deficiency judgment in the amount of $13,023.15 plus reasonable attorney fees, costs, and interest at the contract rate of 3.39%. Because the deficiency amount sought by Commerce was less than $25,000, Commerce was required to file its claim in the Associate Circuit Division of the Circuit Court of Carroll County, Missouri. *See* Mo. Rev. Stat. § 517.011.1(1).

2. On June 14, 2016, Plaintiffs filed their First Amended Counterclaim ("Complaint" or "Compl.") against Commerce.

3. On September 22, 2017, Commerce voluntarily dismissed its Petition against Plaintiffs in this case with prejudice pursuant to Missouri Supreme Court Rule 67.02, and concurrently filed a Motion to Realign the Parties.

4. On June 27, 2018, the Circuit Court of Carroll County, Missouri granted Commerce's Motion to Realign the Parties, and formally realigned Commerce as the "Defendant" and Beverly J. Williamson and Rebecca Palmer as the "Plaintiffs" in this case. *See* **Exhibit A**, June 27, 2018 Order.

5. The Complaint alleges two claims on behalf of Plaintiffs and putative nationwide and "Missouri-only" classes of consumers based on alleged defects in certain pre-sale and post-sale notices that the Uniform Commercial Code ("UCC") required Commerce to send to Plaintiffs and the putative class members.

6. The Complaint alleges that Plaintiffs signed a "consumer credit contract" with Commerce on July 31, 2012 (the "Installment Agreement") for the purchase of a motor vehicle ("the Vehicle"). *See* Compl. ¶¶ 12-15. In late 2013, Plaintiffs defaulted on their obligations under the Installment Agreement, and Commerce repossessed the Vehicle. Compl. ¶¶ 2, 16-17. On February 11, 2014, Commerce sent Plaintiffs a notice pursuant to Mo. Rev. Stat. § 400.9-611(b) and 614 "advising of Commerce Bank's intent to dispose of" the Vehicle (the "Pre-Sale Notice"). Compl. ¶ 18. Plaintiffs did not redeem the Vehicle, and as per the Pre-Sale Notice, Commerce then sold the Vehicle at a private sale on March 20, 2014. On April 18, 2014, Commerce sent Plaintiffs a notice pursuant to Mo. Rev. Stat. § 400.9-616 and Mo. Rev. Stat. § 408.557 "explaining how [Commerce] calculated their deficiency balances" (the "Post-Sale

Notice"). Compl. ¶¶ 18, 22-23.

7. Plaintiffs allege two claims against Commerce. In Count I, Plaintiffs allege that Commerce's Pre-Sale and Post-Sale Notices do not comply with the UCC. Plaintiffs allege the Pre-Sale Notice is not a "reasonable authenticated notification of disposition" as required by Mo. Rev. Stat. § 400.9-611(b) because it allegedly (i) "failed to inform [Defendants], specifically and unambiguously, the intended method of disposition and the timing of the sale" (Compl. ¶ 19), and (ii) "stated [Defendants] could attend the sale and bring bidders when this was not true." Compl. ¶ 20. Defendants allege the Post-Sale Notice does not comply with Mo. Rev. Stat. § 400.9-616(c)(3) because it allegedly (i) "[d]id not provide all the information, in the requisite order, as required by § 9-616(c)(3)" (Compl. ¶ 24(a)); (ii) "[d]id not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 9-616(a)(1)(C)" (Compl. ¶ 24(b)); and (iii) "misstate[s] the aggregate amount of obligation . . . and the amount of the deficiency . . . by including unpaid balances or interest that had not become due." Compl. ¶ 25.

8. In Count II, Plaintiffs allege Commerce violated Mo. Rev. Stat. § 408.553 by "wrongfully charg[ing] interest after default but before a final judgment." Compl. ¶ 77. According to Plaintiffs, this alleged conduct renders the Pre-Sale and Post-Sale Notices "unreasonable and misleading" in violation of Mo. Rev. Stat. §§ 400.9-611, 614(5), and 616. Compl. at ¶¶ 78-79. Plaintiffs also re-allege their allegations regarding the validity of the Post-Sale Notice. Compl. ¶¶ 80-81.

9. Plaintiffs seek statutory damages pursuant to Mo. Rev. Stat. § 400.9-625, statutory damages of $500 for each allegedly defective notice, punitive damages, attorneys' fees, and injunctive relief. *See* Compl. at *ad damnum* clauses. Plaintiffs also allege Commerce

damaged their "credit worthiness, credit standing, credit capacity, character, and general reputation" by reporting "false or inaccurate derogatory information on the class members' credit reports" to consumer credit reporting agencies.  Compl. ¶¶ 34-37.

10. Additionally, as explained below, Plaintiffs bring their Complaint as a putative class action, seeking to certify a nationwide class.

11. Pursuant to the requirements of 28 U.S.C. § 1446(a), a copy of Plaintiffs' Complaint, together with "all process, pleadings, and orders served upon" Commerce, are attached as **Exhibit B**.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

12. CAFA was signed into law on February 18, 2005.  CAFA relaxed the traditional removal rules under 28 U.S.C. § 1441(a) by authorizing the removal of putative class actions "commenced" on or after February 18, 2005, if:  (i) the amount-in-controversy exceeds $5 million in the aggregate; (ii) the citizenship of at least one member of the proposed class is diverse from any defendant; and (iii) the proposed class size is not less than 100. *See* 28 U.S.C. § 1332(d)(2)(A), d(5)(B), d(6), "note re: "Effective and Applicability Provisions – 2005 Acts"; Pub. L. 109-2, 119 Stat. 4, § 9 (2005).  "A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell v. Hershey Co.*, 557 F.3d 953, 957–58 (8th Cir. 2009) (citing CAFA, Pub.L. No. 109–2, § 2(a)(2)(B), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711) ("[T]here have been abuses of the class action device that have adversely affected interstate commerce.")).

### *This is a Putative Class Action "Commenced" After February 18, 2005*

13. For purposes of CAFA, an action is "commenced" when it is filed in state court.

14. Plaintiffs filed their Complaint in state court on or about June 14, 2016. *See generally* Compl.

15. The allegations in Plaintiffs' Complaint make clear that this is a class action that Plaintiffs purport to bring on behalf of themselves and "all other similarly situated consumers." Compl. ¶ 5; *see also* Compl. ¶ 1 ("This is a consumer class action against Commerce Bank . . . ."); Compl. ¶¶ 38-67 (reciting "Class Allegations" brought under Mo. R. Civ. P. 52.08).

16. Therefore, this is a putative class action "commenced" after February 18, 2005.

### *The Alleged Amount-In-Controversy Exceeds $5 Million*

17. Plaintiffs did not expressly allege an amount in controversy in their Complaint. When the Complaint does not state an amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

18. Plaintiffs' damages theories are wholly without merit, and the putative class members are not entitled to any of the damages requested in Plaintiffs' Complaint. Nevertheless, taking the allegations in Plaintiffs' Complaint at face value for removal purposes only, even the putative class' alleged minimum statutory damages, standing alone, satisfy the CAFA amount-in-controversy requirement.

19. The minimum statutory damages for failure to comply with the notice provisions under Article 9 of the UCC is "an amount not less than the credit service charge *plus ten percent of the principal amount of the obligation*," Mo. Rev. Stat. § 400.9-625(c)(2) (emphasis added), which Plaintiffs seek in their Complaint. *See* Compl. at 14, 17 (*ad damnum* clauses (a)).

Although Commerce denies that it is liable to Plaintiffs in any way, as shown below, "ten percent of the principal amount of the obligation" alone (without including the "credit service charge" component of the minimum statutory damages sought by Plaintiffs), amounts to **more than $8 million**, which is more than sufficient to satisfy the CAFA amount-in-controversy requirement.

20. Commerce has identified a total of 4,655 loans in which goods serving as collateral for the loan were repossessed between June 14, 2013 and February 28, 2018 ("Loans").[1] *See* Decl. of Ron Nesemeyer, ¶¶ 3-4, attached hereto as **Exhibit C**. Of those 4,655 Loans, 952 (20%) are Loans in which Commerce's records include a current Missouri address for the primary borrower ("Missouri Borrowers"). Nesemeyer Decl., Exhibit C, ¶ 4. The remaining Loans are from borrowers located in all of the forty-nine states other than Missouri, as well as in U.S. territories. *Id.*

21. Of the 4,655 Loans, information regarding the original principal amount of the obligation is available in Commerce's computerized business records for 4,153 Loans; there are 502 Loans for which Commerce has not been able to locate the information regarding the original principal amount of the Loan. Nesemeyer Decl., Exhibit C, ¶ 5. Based on the information available, the original principal amount of the obligation for the 4,153 Loans for which Commerce has data totals $80,480,001. *Id.* Although Commerce denies that it is liable to Plaintiffs in any way, **the amount in controversy as alleged in the Complaint**—based on the 4,153 Loans for which Commerce has data, and limited solely to the "10% of the principal amount of the obligation" component of the minimum statutory damages in Mo. Rev. Stat. §

---

[1] Plaintiffs' claims (at least for Missouri Borrowers) are governed by the three year statute of limitations in Mo. Rev. Stat. § 516.130(2). *See* Mo. Rev. Stat. § 516.130(2). Because their Complaint was filed on June 14, 2016, the "bar date" for any putative class claims is June 14, 2013. While other states might have longer statutes of limitations that apply to Loans in those states, that would only increase the number of *non*-Missouri Loans and the aggregate amount of the principal obligation of such Loans.

400.9-625(c)(2)"—is greater than **$8,048,000**,[2] thus exceeding the $5 million threshold.

<u>*The Citizenship of At Least One Putative Class Member and Commerce Is Diverse*</u>

22. Consistent with Congress' intent that nationwide class actions be heard by federal courts, CAFA relaxed 28 U.S.C. § 1332(a) (1)'s requirement of complete diversity of parties, and instead requires only that there be diversity between a single class member and a single defendant. 28 U.S.C. § 1332 (d); *see Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) ("Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., **any class member and any defendant are citizens of different states**; and there are at least 100 members in the class. 28 U.S.C. § 1332(d).") (Emphasis added).

23. Minimal diversity exists here because *thousands* of the members of the putative nationwide class are citizens of a state other than Missouri, and Commerce is a citizen of Missouri under 28 U.S.C. § 1332(c)(1).

24. Although the Complaint alleges that Commerce is a Missouri banking corporation with its principal place of business in Missouri Compl. ¶ 7), the Complaint, seeks to certify two alternative nationwide putative classes and a "Missouri Subclass." *See* Compl at ¶ 39 ("The Class comprises all persons ('Class') within the applicable statute of limitations: a. who are named as borrowers or buyers on a loan or financing agreement with Commerce Bank, assigned to Commerce Bank or owned by Commerce Bank; b. whose loan or financing agreement was secured by collateral; c. whose collateral was repossessed, voluntarily or involuntarily; and d.

---

[2] In addition to the $8.0 million, Plaintiffs seek to recover statutory damages that include the "credit service charge" on each Loan, plus $500 per Loan. Compl. at 14, 17 (*ad damnum* clauses (a), (b)), citing Mo. Rev. Stat. § 400.9-625(c)(2).

whose collateral was disposed."); Compl. ¶ 40 ("Alternatively, the Class comprises all persons ("Class") within the applicable statute of limitations: a. who Commerce Bank failed to send a presale notice; or b. who Commerce Bank sent a presale notice identical or substantially similar to the one attached to its Petition."); Compl. ¶ 41 (defining the Missouri Subclass); Compl. ¶ 42 (alternative definition of the Missouri Subclass).

25. Commerce has identified over 3,700 Loans emanating from non-Missouri Borrowers, i.e., Loans in which the Borrower is from one of the forty-nine states other than Missouri. Nesemeyer Decl., Exhibit C, ¶ 4. For example, over 150 Loans are from Borrowers in Illinois. *Id.*

26. CAFA's minimal diversity requirement is therefore satisfied. 28 U.S.C. § 1332(d)(2)(A).

*The Alleged Class Size Is Greater Than 100*

27. As already stated, Commerce has identified a total of 4,655 Loans in which goods serving as collateral for the Loan were repossessed between June 14, 2013 and February 28, 2018. Nesemeyer Decl., Exhibit C, ¶ 4.

28. In any event, Plaintiff also alleges that the "proposed classes each contain over 1,000 individuals." Compl. ¶ 43.

29. The alleged putative class is thus sufficiently large pursuant to 28 U.S.C. § 1332(d)(5)(B).

### The Home State Exceptions Do Not Apply

30. Of the 4,655 Loans identified by Commerce, only 20% (952/4,655 = 20%) are Missouri Borrower Loans. Nesemeyer Decl., Exhibit C, ¶ 4.[3] The remaining 3,703 identified Loans are from borrowers in states and/or territories in the United States other than Missouri.

31. Thus, the exceptions to removal in 28 U.S.C. § 1332(d)(3) and (4) do not apply because less than one-third (i.e., 20%) of all proposed putative class members are citizens of the State of Missouri. *See* 28 U.S.C. § 1332(d)(3) and (4).

### CAFA Authorizes Removal

32. This case is properly removable under CAFA because the amount in controversy satisfies the $5 million CAFA threshold for removal purposes, the putative class is alleged to number in excess of 100, and minimal diversity is satisfied. 28 U.S.C. § 1332(d).

### Commerce's Removal Is Timely

33. Commerce timely files this renewed notice of removal within thirty days of the Circuit Court of Carroll County, Missouri's order realigning Beverly J. Williamson and Rebecca Palmer as "Plaintiffs" and Commerce as "Defendant," which was the first time Commerce was able to ascertain its right to remove Plaintiff's Complaint. *See* 28 U.S.C. § 1446(b)(3) ("Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.")

---

[3] The ratio of Missouri Borrowers to non-Missouri Borrowers changes only slightly if a longer statute of limitations were to be applied. *See* Nesemeyer Decl., Exhibit C, ¶ 6 (when the period is expanded backwards to begin June 14, 2011, the ratio of Missouri to non-Missouri Borrowers changes from 20% to 21%).

## CONCLUSION

34. For all of the foregoing reasons, removal of this case to this Court is proper pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

35. Concurrent with the filing of this Notice of Removal, Commerce is providing Plaintiffs with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

36. Pursuant to the requirements of 28 U.S.C. § 1446(d), Commerce is filing a copy of this Notice of Removal with the Clerk of the Circuit Court of Carroll County, Missouri.

37. Removal to the United States District Court for the Western District of Missouri, Western Division, is proper pursuant to 28 U.S.C. § 1441(a), because this forum embraces the Circuit Court of Carroll County, Missouri, the place where this action is pending. 28 U.S.C. § 105(a)(1).

38. Commerce has given the undersigned attorneys authority to sign and file this Notice of Removal.

39. Commerce reserves all of its defenses, including, without limitation, the right to amend or supplement this Notice of Removal.

WHEREFORE, Commerce Bank removes to this Court the action captioned as *Beverly J. Williamson et al., v. Commerce Bank*, Case No. 16CR-AC00091-01, currently pending in the Circuit Court of Carroll County, Missouri, to this Court.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
    Edwin G. Harvey, #30565
    David M. Mangian, #61728
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Defendant Commerce Bank*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 6th day of July, 2018, a true copy of the foregoing was electronically filed with the Clerk of the Court and served via U.S. mail, postage prepaid and email, upon:

Martin L. Daesch
Jesse B. Rochman
Onder, Shelton, O'Leary & Paterson, LLC
110 E. Lockwood Ave.
St. Louis, MO 63119
daesch@onderlaw.com
rochman@onderlaw.com

    /s/ David M. Mangian