# Exhibit B



Judicial Links | eFiling | Help | Contact Us | Print
GrantedPublicAccess Logoff BOOKERSHAW

## 16CR-AC00091-01 - COMMERCE BANK V BEVERLY J WILLIAMSON ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ⦿ Descending    ○ Ascending

Display Options: [All Entries ▾]

---

**06/27/2018** ☐ **Order**

**10/24/2017** ☐ Cause Taken Under Advisement
   Filed By: KEVIN L WALDEN
☐ **Sound Recording Log Sheet**
☐ Hearing Held
   Plaintiff appears by counsel Edwin G Harvey. Defendant appears by counsel Jesse E Rochman and Martin L Daesch. Argument heard on Plaintiff's Motion to Realign the Parties; Matter taken under advisment. Kevin Walden, judge
   **Scheduled For:** 10/24/2017;  1:30 PM ;  KEVIN L WALDEN;  Carroll Circuit Division

**10/20/2017** ☐ **Response Filed**
   Response to Oppose Motion to Realign; Electronic Filing Certificate of Service in response to Motion (other) filed on 09/22/2017.
   **Filed By:** JESSE BARRETT ROCHMAN
   **On Behalf Of:** BEVERLY J WILLIAMSON, REBECCA ANN PALMER

**09/26/2017** ☐ Hearing Scheduled
   **Associated Entries: 10/24/2017 - Hearing Held** ⊞
   **Scheduled For:** 10/24/2017;  1:30 PM ;  KEVIN L WALDEN;  Carroll Circuit Division
☐ **Notice of Hearing Filed**
   Notice of Hearing; Electronic Filing Certificate of Service.
   **Filed By:** DAVID MICHAEL MANGIAN
   **On Behalf Of:** COMMERCE BANK N.A.

**09/22/2017** ☐ **Motion Filed**
   Commerce Banks Motion to Realign the Parties; Electronic Filing Certificate of Service.
   **Filed By:** EDWIN G HARVEY
   **On Behalf Of:** COMMERCE BANK N.A.
   **Associated Entries: 08/29/2016 - Judge Assigned**
☐ **Notice of Dismissal**
   Notice of Voluntary Dismissal with Prejudice; Electronic Filing Certificate of Service.
   **Filed By:** EDWIN G HARVEY
   **On Behalf Of:** COMMERCE BANK N.A.

**09/14/2017** ☐ **Cert Serv Req Prod Docs Things**
   Certificate of Service; Electronic Filing Certificate of Service.
   **Filed By:** DAVID MICHAEL MANGIAN
   **On Behalf Of:** COMMERCE BANK N.A.

**06/23/2017** ☐ **Answer Filed**
   Commerce Banks Answer to Amended Counterclaim; Electronic Filing Certificate of Service.
   **Filed By:** EDWIN G HARVEY
   **On Behalf Of:** COMMERCE BANK N.A.

**06/14/2017**  ☐ **Cert Serv of Interrog Filed**
Certificate of Mailing Interrogatories and Requests for Production; Electronic Filing Certificate of Service.
**Filed By:** JESSE BARRETT ROCHMAN
**On Behalf Of:** BEVERLY J WILLIAMSON, REBECCA ANN PALMER

**06/13/2017**  ☐ **Notice**
☐ **Order**
Associated Entries: 12/09/2016 - Cause Taken Under Advisement

**12/09/2016**  ☐ **Cause Taken Under Advisement**
Associated Entries: 06/13/2017 - **Order**
☐ **Hearing Held**
The Plaintiff appears by counsel Edwin G. Harvey and David M. Mangian. Defendant appears by counsel Jesse B. Rochman. Argument heard on Plaintiff's motion to dismiss counterclaim. Matter taken under advisement.
Scheduled For: 12/09/2016;  1:30 PM ;  KEVIN L WALDEN;  Carroll Circuit Division
☐ **Sound Recording Log Sheet**

**12/08/2016**  ☐ **Hearing Scheduled**
Associated Entries: 12/09/2016 - Hearing Held  ⊞
Scheduled For: 12/09/2016;  1:30 PM ;  KEVIN L WALDEN;  Carroll Circuit Division
☐ **Judge/Clerk - Note**
PER PHONE CONFERENCE WITH JUDGE WALDEN CASE IS ON THE 1:30 P.M. DEC 9TH 2016 DOCKET.

**12/06/2016**  ☐ **Response Filed**
Commerce Banks Response to Defendants Sur-Reply; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
**Filed By:** DAVID MICHAEL MANGIAN

**12/01/2016**  ☐ **Reply**
Sur-Reply to Oppose Commerce Banks Motion to Dismiss the Amended Counterclaim; Exhibit A - Saber Case; Exhibit B - Myers Case; Electronic Filing Certificate of Service.
**Filed By:** JESSE BARRETT ROCHMAN
**On Behalf Of:** BEVERLY J WILLIAMSON, REBECCA ANN PALMER

**11/18/2016**  ☐ **Reply**
Commerce Banks Reply in Further Support of Motion to Dismiss Amended Counterclaim; Electronic Filing Certificate of Service.
**Filed By:** EDWIN G HARVEY
**On Behalf Of:** COMMERCE BANK N.A.

**11/02/2016**  ☐ **Response Filed**
Response to Oppose Motion to Dismiss; Electronic Filing Certificate of Service in response to Dismiss (motion) filed on 09/28/2016.
**Filed By:** JESSE BARRETT ROCHMAN
**On Behalf Of:** BEVERLY J WILLIAMSON, REBECCA ANN PALMER

**09/30/2016**  ☐ **Entry of Appearance Filed**
Entry of Appearance; Electronic Filing Certificate of Service.
**Filed By:** EVAN CHOUTEAU MURPHY
☐ **Entry of Appearance Filed**
Entry of Appearance; Electronic Filing Certificate of Service.
**Filed By:** EVAN CHOUTEAU MURPHY

**09/29/2016**  ☐ **Hearing/Trial Cancelled**
CASE REVIEW HEARING CANCELLED, WAS SCHEDULED IN ERROR BY CLERK. PLEASE CONTACT COURT FOR HEARING DATES WHEN NEEDED.

Scheduled For: 10/20/2016; 9:00 AM ; KEVIN L WALDEN; Carroll Circuit Division

**09/28/2016** ☐ **Suggestions in Support**

Plaintiff Commerce Banks Memorandum in Support of Motion to Dismiss Defendants Amended Counterclaim; Exhibit A; Exhibit B; Exhibit C; Electronic Filing Certificate of Service.
**Filed By:** EDWIN G HARVEY
**On Behalf Of:** COMMERCE BANK N.A.

☐ **Motion to Dismiss**

Plaintiff Commerce Banks Motion to Dismiss Defendants Amended Counterclaim; Electronic Filing Certificate of Service.
**Filed By:** EDWIN G HARVEY
**On Behalf Of:** COMMERCE BANK N.A.
**Associated Entries: 08/29/2016 - Judge Assigned**

**09/21/2016** ☐ **Case Review Scheduled**

Case review to determine status of cause in Circuit Court Division I scheduled for October 20, 2016 at 9:00 AM.
**Associated Entries: 09/29/2016 - Hearing/Trial Cancelled** 🖹
Scheduled For: 10/20/2016; 9:00 AM ; KEVIN L WALDEN; Carroll Circuit Division

**08/30/2016** ☐ **Judge/Clerk - Note**

In Chambers: The case herein having been transferred from the Associate Circuit Court of Carroll County for re-assignment to the Circuit Court, pursuant to statute, the said case is assigned to the Hon. Kevin Walden to hear the case by assignment to Division I of this Court. David H. Miller, Presiding Judge

☐ **Judge Assigned**

**08/29/2016** ☐ **Certified to Circuit Court**

☐ **Judge Assigned**
**Associated Entries: 09/28/2016 - Motion to Dismiss** 🖹
**Associated Entries: 09/22/2017 - Motion Filed** 🖹

Case 4:18-cv-00513-DGK   Document 1-2   Filed 07/06/18   Page 4 of 222

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

#16600072

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

| | | |
|---|---|---|
| COMMERCE BANK | ) | |
| A MISSOURI BANKING CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. |
| vs. | ) | |
| | ) | Division No. |
| BEVERLY J WILLIAMSON | ) | |
| | ) | |
| SERVE AT: | ) | |
| 404 GRAND AVENUE CIR | ) | |
| CARROLLTON MO 64633-2231 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| REBECCA PALMER | ) | |
| | ) | |
| SERVE AT: | ) | |
| 404 GRAND AVENUE CIR | ) | |
| CARROLLTON MO 64633-2231 | ) | |
| | ) | |
| Defendant(s). | ) | |

PETITION ON CONTRACT

Comes now Plaintiff and states to the Court that:

1.    At all times hereinafter mentioned Plaintiff is and was A MISSOURI BANKING

CORPORATION. Defendant(s) is/are a resident(s) of CARROLL COUNTY, Missouri.

2.    Plaintiff is the holder of a valid assignment of an account which originated with

CHUCK ANDERSON FORD INC. For definitional purposes Plaintiff and its Assignors are

collectively referred to herein as Plaintiff.

3.    On or about July 31, 2012, Plaintiff loaned money to Defendant(s), and the

Defendant(s) executed a Contract and Security Agreement promising to repay Plaintiff the loan

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

amount of $25,252.98, plus interest. A true copy of said Contract and Security Agreement is attached hereto, and made a part hereof by reference.

4.       That Defendant(s) made some payments, but defaulted on the balance, and despite demands for payment by Plaintiff, Defendant(s) has/have refused to pay said indebtedness.

5.       On DECEMBER 13, 2013, Plaintiff sent Defendant(s) a written notice of overdue loan payment and gave Defendant(s) notice that Defendant(s) had twenty (20) days to make payment on said indebtedness or Plaintiff would exercise its rights pursuant to said Contract and Security Agreement. This notice, however, was ignored by Defendant(s). A true copy of said notice is attached hereto, and made a part hereof by reference.

6       Plaintiff exercised its rights under the Contract and Security Agreement and repossessed the collateral securing Defendants' obligation to Plaintiff.

7.       On FEBRUARY 11, 2014, Plaintiff served Defendant(s) with a Notice of Our Plan to Sell the collateral securing said obligation. A true copy of said Notice is attached hereto, and made a part hereof by reference.

8.       On or before APRIL 18, 2014, the collateral securing said Contract and Security Agreement was sold for a total of $11,400.00.

9.       Said vehicle was sold in a commercially reasonable manner, if said sale occurred.

10.     On APRIL 18, 2014, Plaintiff served Defendant(s) with a Statement of Sale. A true copy of said Notice is attached hereto, and made a part hereof by reference.

11.     After all the above transactions, Defendant(s) remains indebted to Plaintiff in the principal sum of $13,023.15.

12.     Plaintiff has incurred attorney fees and costs in bringing this action for which it should be reimbursed by Defendant(s).

13.     That said Contract and Security Agreement attached hereto provides that Defendant(s) upon default of payment of said Contract and Security Agreement shall be responsible for Plaintiff's attorney's fee and Court costs if this obligation is referred to an attorney for collection.

14.     On FEBRUARY 19, 2016, Plaintiff, through counsel, sent Defendant(s) a written notice of overdue payment and gave Defendant(s) notice of their obligation to make payment on said indebtedness. This notice, however, was ignored by Defendant(s).

15.     After giving Defendant(s) all credits to which they are entitled, there is an outstanding balance owed of $13,023.15, which Defendant(s) refuses(ed) to pay despite demand for payment by Plaintiff. Plaintiff seeks interest from March 26, 2014, which is the date of demand or subsequent to the date when demand for payment was made.

WHEREFORE, Plaintiff prays judgment against the Defendant(s) for the principal amount of $13,023.15, together with reasonable attorney fees, together with interest continuing at the contract rate of 3.39% and for Court costs incurred; and for such other relief as the Court deems just and proper.

GAMACHE & MYERS, P.C.

BY: _____
DAVID R. GAMACHE, MBE 34112
Attorneys for Plaintiff
1000 CAMERA AVENUE STE A
CRESTWOOD (ST LOUIS) MO 63126
(314) 835-6602
FAX (314) 835-6604     RAYMOND P. BOZARTH 52668
RAYMOND P. BOZARTH@GMCOLLECTS.COM

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

#16600072

## **VERIFICATION**

I, the Affiant, of lawful age, state that I have checked the Service Members Civil Relief Act website (www.dmdc.osd.mil/appj/scra/scrahome.do) by both last name and Social Security number on March 28, 2016 and Defendant is not an active duty member of the Armed Services of the United States of America, all according to the best of my information, knowledge and belief.

Executed this day March 29, 2016.

Subscribed and sworn to before me on March 29, 2016.

NOTARY PUBLIC

JULI L. SEALS
Notary Public - Notary Seal
State of Missouri, Saint Louis County
Commission # 14954935
My Commission Expires Oct 17, 2018

My Commission expires:

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

01/26/16
STATE OF MISSOURI
COUNTY OF JACKSON

🌐 **Commerce Bank**

FILE NUMBER _____

AFFIDAVIT

I hereby certify and affirm that I am the Recovery Manager
of Commerce Bank.

( )    A sole proprietorship

( )    A partnership comprised of the following partners:

_____

( )    A Limited Liability Company organized under and
    existing by virture of the laws of the State of
_____

(X)    A Missouri Banking Corporation

I further state that the claim and cause of action of the
aforesaid against:
BEVERLY J WILLIAMSON  and/or   REBECCA PALMER
Account Number             0001
is in the total sum of      $14,110.09  of which
    $12,330.74    is principal.

I further certify that I am duly qualified and competent to
testify to the matters stated herein, and authorized to make
this Affidavit. I further state that the records of this
account are maintained under my supervision, have been reviewed
by the Affiant, and that the amount of the claim is just and
true to the best of my personal knowledge, and that all just
and lawful offsets, payments and credits have been allowed.

Executed this _27_ day of _Jan_____, 20_16_.

_____
Signature              Ron Nesemeyer
                      Printed name of Affiant

The foregoing Affidavit sworn to and subscribed before me
this _27_ day of _Jan_____, 20_16_.

NICK PETSCHE
Notary Public - Notary Seal
STATE OF MISSOURI
Clay County        _____
My Commission Expires Mar. 10, 2017   Notary Public
Commission # 13760021

My Commission Expires: _Mar 10, 2017_____

"THIS IS A COMMUNICATION FROM A DEBT COLLECTOR, IN AN ATTEMPT
TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE."

IBM530 10/11

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

3017989    92239-1

MO-102 10/31/2010

## Retail Installment Contract and Security Agreement

Buyer Name and Address:

CHUCK ANDERSON FORD INC
1910 W. JESSE JAMES RD
EXCELSIOR SPRINGS MO 64024

Co-Buyer Name and Address:
BEVERLY J WILLIAMSON
484 GRAND AVE
CARROLLTON MO 64633

REBECCA PALMER
484 GRAND AVE
CARROLLTON MO 64633

Date: 07/31/2012

### Truth-in-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 3.29 % | 2739.36 | 25852.98 | 27591.36 | 30481.36 |

### Description of Property

| Year | Make | Model | Body | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2012 | FORD | FUSION | 4DR SDN S FWD | 3FAHP0GA7CR413050 | 214 |

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

IL0080-339 0020

COMMERCE BANK          339
PO BOX 419248      CT4-1
KANSAS CITY, MO  64141
8004459829

REBECCA PALMER                                        12/13/13
400 W 2ND ST
MONBORNE MO 54552

| ACCOUNT NUMBER | AMOUNT NOW DUE | LAST DAY FOR PAYMENT |
|---|---|---|
| 339-001-0092239-0001 | 777.26 | 01/09/14 |

CREDIT TRANSACTION

LOAN TO   REBECCA PALMER

COLLATERAL DESCRIPTION:  12 FORD   FUSION

     FIRST     NOTICE OF DEFAULT AND RIGHT TO CURE

YOU ARE LATE IN MAKING YOUR PAYMENT(S).   IF YOU PAY THE
AMOUNT NOW DUE (ABOVE) BY THE LAST DAY FOR PAYMENT (ABOVE)
YOU MAY CONTINUE YOUR CONTRACT AS THOUGH YOU WERE NOT
LATE.   IF YOU DO NOT PAY BY THIS DATE, WE MAY EXERCISE OUR
LEGAL RIGHTS.   YOU MAY BE OBLIGATED TO PAY REASONABLE
COLLECTION COSTS INCLUDING, BUT NOT LIMITED TO, COURT AND
ATTORNEY FEES, EXCEPT COSTS MAY NOT INCLUDE: COSTS THAT
WERE INCURRED BY OUR SALARIED EMPLOYEE, INCLUDE THE
RECOVERY OF BOTH ATTORNEY AND COLLECTION AGENCY FEES, AND
BE IN EXCESS OF 15% OF THE UNPAID DEBT AFTER DEFAULT.

IF YOU VOLUNTARILY SURRENDER POSSESSION OF THE SPECIFIED
COLLATERAL, YOU COULD STILL OWE ADDITIONAL MONEY AFTER THE
MONEY RECEIVED FROM THE SALE OF THE COLLATERAL IS DEDUCTED
FROM THE AMOUNT YOU OWE.

THIS NOTICE CONTAINS LANGUAGE MANDATED BY APPLICABLE LAW.

IF YOU HAVE ANY QUESTIONS, WRITE OR TELEPHONE THE BANK
PROMPTLY AT 1-800-440-9829.

IL0080-339  0020

COMMERCE BANK          339
PO BOX 419248        CT4-1
KANSAS CITY, MO  64141
8004499829

BEVERLY J WILLIAMSON
404 GRAND AVENUE CTR
CARROLLTON MO 64633-2231

12/13/13

| ACCOUNT NUMBER | AMOUNT NOW DUE | LAST DAY FOR PAYMENT |
|---|---|---|
| 339-001-0092239-0001 | 777.26 | 01/09/14 |

CREDIT TRANSACTION

LOAN TO  BEVERLY J WILLIAMSON

COLLATERAL DESCRIPTION:  12 FORD    FUSION

FIRST    NOTICE OF DEFAULT AND RIGHT TO CURE

YOU ARE LATE IN MAKING YOUR PAYMENT(S).  IF YOU PAY THE
AMOUNT NOW DUE (ABOVE) BY THE LAST DAY FOR PAYMENT (ABOVE)
YOU MAY CONTINUE YOUR CONTRACT AS THOUGH YOU WERE NOT
LATE.  IF YOU DO NOT PAY BY THIS DATE, WE MAY EXERCISE OUR
LEGAL RIGHTS.  YOU MAY BE OBLIGATED TO PAY REASONABLE
COLLECTION COSTS INCLUDING, BUT NOT LIMITED TO, COURT AND
ATTORNEY FEES.  EXCEPT COSTS MAY NOT INCLUDE: COSTS THAT
WERE INCURRED BY OUR SALARIED EMPLOYEE, INCLUDE THE
RECOVERY OF BOTH ATTORNEY AND COLLECTION AGENCY FEES, AND
BE IN EXCESS OF 15% OF THE UNPAID DEBT AFTER DEFAULT.

IF YOU VOLUNTARILY SURRENDER POSSESSION OF THE SPECIFIED
COLLATERAL, YOU COULD STILL OWE ADDITIONAL MONEY AFTER THE
MONEY RECEIVED FROM THE SALE OF THE COLLATERAL IS DEDUCTED
FROM THE AMOUNT YOU OWE.

THIS NOTICE CONTAINS LANGUAGE MANDATED BY APPLICABLE LAW.

IF YOU HAVE ANY QUESTIONS, WRITE OR TELEPHONE THE BANK
PROMPTLY AT 1-800-440-9829.

**Commerce Bank**

P.O. Box 419248   KCREC
Kansas City, Mo. 64141-6248

02/11/14

BEVERLY J        WILLIAMSON
404 GRAND AVENUE CIR

CARROLLTON         MO    64633-2231

NOTICE OF OUR PLAN TO SELL PROPERTY

Subject: 33900100922390001

We have your 12 FORD    /FUSION          3FAHP0GA7CR415050
because of your broken promises in our agreement.
For public disposition: N/A
We will sell the above described collateral at a public sale.
A sale could include a lease or license. The sale will be held
as follows:
Day and Date:
Time:
Place:
You may attend the sale and bring bidders if you want.
For a private disposition:
We will sell the 12 FORD    /FUSION
3FAHP0GA7CR415050    at a private sale sometime after 03/03/14
We will file for a repossession title 10 days from the date of
this letter. A sale could include a lease or license.
The money that we get from the sale (after paying our costs)
may reduce the amount you owe. If we get less money than you
owe, you may still owe us the difference. If we get more money
than you owe, you will get the extra money, unless we must pay
it to someone else.
You can get the property back at any time before we sell it
by paying us the full amount you owe (not just the past-due
payments), including our expenses. To learn the exact amount
you must pay, call us at 800-892-7100.
If you want us to explain to you in writing how we have
figured the amount that you owe us, you may call us at 800-
892 7100 ext. 2248 or write us at P.O. Box 419248, Kansas City,
Mo. 64141-6248 and request a written explanation. (We will
charge you $25.00 for the explanation if we sent you another
written explanation of the amount you owe us within the last
six (6) months.)
If you need more information about the sale call us at 800-
892-7100 or write us at P.O. Box 419248, Kansas City, Mo. 64141.
We are sending this notice to the following other people who
have an interest in the 12 FORD    /FUSION
3FAHP0GA7CR415050    or who owe money under your agreement.
Names of all other debtors and obligors, if any:
REBECCA PALMER
400 W 2ND ST

NORBORNE          , MO 54552

Kate Johnson
Repo Specialist

IBM530 10/11

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

1



## Commerce Bank
KCREC-10
Post Office Box 419248
Kansas City, Missouri 64141-6248

7013 1710 0002 3070 6703

Hasler
02/11/2014
US POSTAGE    $06.48⁰

FIRST-CLASS MAIL

ZIP 64105
011D12602690

KCREC/REPO

Beverly Williamson

have an interest in the 12 FORD    /FUSION    2-12-14 mb
3FAHP0GA7CR415050    or who owe money und    NIXIE    641    DE 1
Names of all other debtors and obligors,
REBECCA PALMER
400 W 2ND ST                    RETURN TO
                                UNCLAIM
                                UNABLE TO
NORBORNE

MO 54552    BE: 5414 162 48 48

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE
KCREC/REPO

| Postage | $ | |
| Certified Fee | 3·30 | |
| Return Receipt Fee (Endorsement Required) | 2·70 | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 6.49 | |

Sent To  Rebecca Palmer
Street, Apt No.; or PO Box No.  400 W. 2nd St
City, State, ZIP+4  Norborne Mo 54552

PS Form 3800, August 2006                    See Reverse for Instructions

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X       ☐ Agent<br>         ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Rebecca Palmer<br>400 W. 2nd St<br>Norborne, MO 54552<br><br>#0092239-1 | D. Is delivery address different from item 1? ☐ Yes<br>    If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail®   ☐ Priority Mail Express™<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ Collect on Delivery<br>4. Restricted Delivery? *(Extra Fee)*     ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)*    7013 1710 0002 3070 6703 | |
| PS Form 3811, July 2013 | |

Electronically Filed - Carroll Circuit Division - May 02, 2016 - 04:46 PM

Electronically Filed - Caroll Circuit Division - May 02, 2016 - 04:46 PM

### ⊕ Commerce Bank

P.O. Box 419248 KCREC-10
Kansas City, Mo. 64141-6248
1-877-785-1393

04/18/14

```
BEVERLY J       WILLIAMSON        33900100922390001
404 GRAND AVENUE CIR              3FAHP0GA7CR415050
                                  12
CARROLLTON      MO   64633-2231   FORD    /FUSION
```

NOTICE OF SALE OR DISPOSITION OF COLLATERAL AND DEFICIENCY DUE

The above referenced unit was sold at a private sale on 03/20/14
as a result of the default on your retail contract.

Proceeds from the sale (or insurance check if deemed a total loss)
did not satisfy the balance on your account and a deficiency exists
in the amount of:    $13,334.76

THE DEFICIENCY AMOUNT HAS BEEN CALCULATED AS FOLLOWS:

| | |
|---|---:|
| Principal Balance Prior to Sale: | $26,121.74 |
| Interest/LF/PPP as of Sale Date: 03/20/14 | $356.04 |
| Less Sales Proceeds: | $11,400.00 |
| Sub-total: | $15,077.78 |
| Plus Expenses of Repossession and Sale: | |
| Title Fee: | $45.00 |
| Storage/Legal Expenses: | $ |
| Repossession Fee: | $425.00 |
| Cleanup/Detail Fee: | $75.00 |
| Sales Fee: | $105.00 |
| Transportation/Tow Fee: | $75.00 |
| Condition Report Fee: | $ |
| Resale/Repair Fee: | $90.00 |
| Notification Fee: | $12.98 |
| Less Credits: | |
| Credit Life Refund: | $ |
| Credit Disability Refund: | $ |
| Extended Warranty Refund: | $ |
| GAP Insurance Refund: | $ |
| Payments/Insurance Payments: | $2,571.00 |
| TOTAL DEFICIENCY OWED AS OF: 03/20/14 | $13,334.76 |

If applicable, future debits, credits, charges, including
additional credit service charges or interest, rebates, and
expenses may affect the amount of the deficiency.

YOU ARE RESPONSIBLE FOR THE DEFICIENCY OWED. THE DEFICIENCY SHALL
CONTINUE TO ACCRUE INTEREST UNTIL PAID. Please do not delay in
contacting the Recovery Department at either the toll free number or
the address listed above to make appropriate repayment arrangments
or for further information concerning the above stated transaction.

Sincerely,
Recovery Department

IBM530 10/11

1

33900100922390001

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Beverly Williamson
404 Friend Ave Cir
Carrollton, MO 64633

#0977239-1

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Beverly Williamson  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Beverly Williamson

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☒ No

3. Service Type
   ☒ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7013 1710 0002 3070 6710

PS Form 3811, July 2013

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OF RCR CARPEPP

| | |
|---|---|
| Postage | $ .49 |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | 2.70 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.49 |

#0977239

Sent To   Beverly Williamson
Street, Apt. No.; or PO Box No.   404 Friend Ave Cir
City, State, ZIP+4   Carrollton, MO 64633

PS Form 3800, August 2006   See Reverse for Instructions

7013 1710 0002 3070 6710

# 🌐 Commerce Bank

P.O. Box 419248 KCREC-10
Kansas City, Mo. 64141-6248
1-877-785-1393

04/18/14

REBECCA PALMER
400 W 2ND ST

NORBORNE           MO    54552

33900100922390001
3FAHP0GA7CR415050
12
FORD    /FUSION

NOTICE OF SALE OR DISPOSITION OF COLLATERAL AND DEFICIENCY DUE

The above referenced unit was sold at a private sale on 03/20/14 as a result of the default on your retail contract.

Proceeds from the sale (or insurance check if deemed a total loss) did not satisfy the balance on your account and a deficiency exists in the amount of:    $13,334.76

THE DEFICIENCY AMOUNT HAS BEEN CALCULATED AS FOLLOWS:

| | |
|---|---|
| Principal Balance Prior to Sale: | $26,121.74 |
| Interest/LF/PPP as of Sale Date: 03/20/14 | $356.04 |
| Less Sales Proceeds: | $11,400.00 |
| Sub-total: | $15,077.78 |
| Plus Expenses of Repossession and Sale: | |
| Title Fee: | $45.00 |
| Storage/Legal Expenses: | $ |
| Repossession Fee: | $425.00 |
| Cleanup/Detail Fee: | $75.00 |
| Sales Fee: | $105.00 |
| Transportation/Tow Fee: | $75.00 |
| Condition Report Fee: | $ |
| Resale/Repair Fee: | $90.00 |
| Notification Fee: | $12.98 |
| Less Credits: | |
| Credit Life Refund: | $ |
| Credit Disability Refund: | $ |
| Extended Warranty Refund: | $ |
| GAP Insurance Refund: | $ |
| Payments/Insurance Payments: | $   $2,571.00 |

TOTAL DEFICIENCY OWED AS OF: 03/20/14     $13,334.76

If applicable, future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency.

YOU ARE RESPONSIBLE FOR THE DEFICIENCY OWED. THE DEFICIENCY SHALL CONTINUE TO ACCRUE INTEREST UNTIL PAID. Please do not delay in contacting the Recovery Department at either the toll free number or the address listed above to make appropriate repayment arrangments or for further information concerning the above stated transaction.

Sincerely,
Recovery Department

fBM530 10/11



# IN THE 8TH JUDICIAL CIRCUIT COURT, CARROLL COUNTY, MISSOURI

| Judge or Division:<br>KEVIN L WALDEN | Case Number:  16CR-AC00091 |
|---|---|
| Plaintiff/Petitioner:<br>COMMERCE BANK N.A.<br><br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAVID REID GAMACHE<br>GAMACHE & MYERS PC<br>1000 CAMERA AVE   STE A<br>SAINT LOUIS, MO  63126<br>(314) 835-6600 |
| Defendant/Respondent:<br>BEVERLY J WILLIAMSON | Date, Time and Location of Court Appearance:<br>**16-JUN-2016, 09:00 AM**<br>**1st Floor Courtroom - Assoc.**<br>**CARROLL COUNTY COURTHOUSE** |
| Nature of Suit:<br>AC Breach of Contract | **CARROLLTON, MO  64633**                    (Date File Stamp) |

## Associate Division Summons

**The State of Missouri to:  BEVERLY J WILLIAMSON**
**404 GRAND AVE**
**CARRLLTON, MO  64633**

*COURT SEAL OF*

*CARROLL COUNTY*

        You are summoned to appear before this court on the date, time, and location above to answer the attached petition. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. You may be permitted to file certain responsive pleadings, pursuant to Chapter 517 RSMo. Should you have any questions regarding responsive pleadings in this case, you should consult an attorney.
        If you have a disability requiring special assistance for your court appearance, please contact the court at least 48 hours in advance of scheduled hearing.

| *May 3, 2016* | */s/ MELANIE HIGGINS* |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:**  Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name ) _____ (title).

☐ other_____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                                           Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

_____                    _____
Date                                                              Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $____10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.



# IN THE 8TH JUDICIAL CIRCUIT COURT, CARROLL COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KEVIN L WALDEN | Case Number: 16CR-AC00091 |
| Plaintiff/Petitioner:<br>COMMERCE BANK N.A.<br><br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAVID REID GAMACHE<br>GAMACHE & MYERS PC<br>1000 CAMERA AVE STE A<br>SAINT LOUIS, MO 63126<br>(314) 835-6600 |
| Defendant/Respondent:<br>BEVERLY J WILLIAMSON<br>REBECCA PALMER | Date, Time and Location of Court Appearance:<br>**16-JUN-2016, 09:00 AM<br>1st Floor Courtroom - Assoc.<br>CARROLL COUNTY COURTHOUSE<br>CARROLLTON, MO 64633** |
| Nature of Suit:<br>AC Breach of Contract | |

(Date File Stamp)

## Associate Division Summons

| | |
|---|---|
| The State of Missouri to: **REBECCA PALMER**<br>**404 GRAND AVE CIRCLE**<br>**CARROLLTON, MO 64633** | |



**COURT SEAL OF**

**CARROLL COUNTY**

You are summoned to appear before this court on the date, time, and location above to answer the attached petition. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. You may be permitted to file certain responsive pleadings, pursuant to Chapter 517 RSMo. Should you have any questions regarding responsive pleadings in this case, you should consult an attorney.

If you have a disability requiring special assistance for your court appearance, please contact the court at least 48 hours in advance of scheduled hearing.

| *May 13, 2016* | */s/ MELANIE HIGGINS* |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name ) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*      Subscribed and sworn to before me on _____ (date).

My commission expires: _____

Date _____          Notary Public _____

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-09) SM20 (ADSM20 for Court Use Only) Document ID# 16-ADSM-2010          517.041 RSMo

 **ORIGINAL**

# IN THE 8TH JUDICIAL CIRCUIT COURT, CARROLL COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KEVIN L WALDEN | Case Number: 16CR-AC00091 |
| Plaintiff/Petitioner:<br>COMMERCE BANK N.A.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAVID REID GAMACHE<br>GAMACHE & MYERS PC<br>1000 CAMERA AVE STE A<br>SAINT LOUIS, MO 63126<br>(314) 835-6600 |
| Defendant/Respondent:<br>BEVERLY J WILLIAMSON<br>REBECCA PALMER | Date, Time and Location of Court Appearance:<br>16-JUN-2016, 09:00 AM<br>1st Floor Courtroom - Assoc.<br>CARROLL COUNTY COURTHOUSE<br>CARROLLTON, MO 64633 |
| Nature of Suit:<br>AC Breach of Contract | (Date File Stamp) |

*RECEIVED MAY 19 2016*

*RECEIVED*

## Associate Division Summons

### The State of Missouri to: REBECCA PALMER
**404 GRAND AVE CIRCLE**
**CARROLLTON, MO 64633**

*COURT SEAL OF*
*CIRCUIT COURT OF MISSOURI*
*CARROLL COUNTY*

You are summoned to appear before this court on the date, time, and location above to answer the attached petition. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. You may be permitted to file certain responsive pleadings, pursuant to Chapter 517 RSMo. Should you have any questions regarding responsive pleadings in this case, you should consult an attorney.

If you have a disability requiring special assistance for your court appearance, please contact the court at least 48 hours in advance of scheduled hearing.

| | |
|---|---|
| *May 13, 2016* | */s/ MELANIE HIGGINS* |
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☒ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with Beverly Williamson a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name ) _____ (title).

☐ other _____

Served at 404 Grand Ave Cir _____ (address)

in Carroll (County/City of St. Louis), MO, on 5-24-16 (date) at 1314 (time).

Owens, Jason P, 788
Printed Name of Sheriff or Server       Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*    Subscribed and sworn to before me on _____ (date).

My commission expires: _____

Date            Notary Public

*FILED*

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $ 20.00 |
| Non Est | $ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ ( miles @ $. per mile) |
| Total | $ 20.00 |

*MAY 24 2011*
*CHERYL A. MANSUR*
*CIRCUIT CLERK*
*CARROLL COUNTY, MO*

*Pd 30.00*

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-09) SM20 (ADSM) *For Court Use Only:* **Document ID# 16-ADSM-290**      1      517.041 RSMo



# *ORIGINAL*

## IN THE 8TH JUDICIAL CIRCUIT COURT, CARROLL COUNTY, MISSOURI

| Judge or Division:<br>KEVIN L WALDEN | Case Number: 16CR-AC00091 |
|---|---|
| Plaintiff/Petitioner:<br>COMMERCE BANK N.A.<br><br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAVID REID GAMACHE<br>GAMACHE & MYERS PC<br>1000 CAMERA AVE STE A<br>SAINT LOUIS, MO 63126<br>(314) 835-6600     RECEIVED<br>MAY ... |
| Defendant/Respondent:<br>BEVERLY J WILLIAMSON | Date, Time and Location of Court Appearance:<br>16-JUN-2016, 09:00 AM<br>1st Floor Courtroom - Assoc. |
| Nature of Suit:<br>AC Breach of Contract | CARROLL COUNTY COURTHOUSE<br>CARROLLTON, MO 64633      (Date File Stamp) |

### Associate Division Summons

The State of Missouri to: **BEVERLY J WILLIAMSON**
**404 GRAND AVE**
**CARRLLTON, MO 64633**

*COURT SEAL OF*

*(court seal image)*

*CARROLL COUNTY*

       You are summoned to appear before this court on the date, time, and location above to answer the attached petition. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. You may be permitted to file certain responsive pleadings, pursuant to Chapter 517 RSMo. Should you have any questions regarding responsive pleadings in this case, you should consult an attorney.

       If you have a disability requiring special assistance for your court appearance, please contact the court at least 48 hours in advance of scheduled hearing.

| *May 3, 2016* | */s/ MELANIE HIGGINS* |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.

I certify that I have served the above summons by: (check one)

[X] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

[ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

[ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

[ ] other _____

Served at _Carrolt 404 Grand Ave Cir_ (address)

in _Carroll_ (County/City of St. Louis), MO, on _5-24-16_ (date) at _1314_ (time).

_Owens, Jason P_        _788_
Printed Name of Sheriff or Server      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*     Subscribed and sworn to before me on _____ (date).

My commission expires: _____
      Date          Notary Public

**F I L E D**

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $ _20.00_ | |
| Non Est | $ _____ | MAY 24 2016 |
| Sheriff's Deputy Salary | | CHERYL A. MANSUR |
| Supplemental Surcharge | $ _10.00_ | CIRCUIT CLERK |
| Mileage | $ _____ ( ___ miles @ $___ per mile) | CARROLL COUNTY, MO |
| Total | $ _30.00_ | Pd $30.00 |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**IN THE  8TH JUDICIAL CIRCUIT  COURT,  CARROLL COUNTY , MISSOURI**

Commerce Bank N.a.,

       Plaintiff,

               vs.

Beverly Williamson Et Al,

       Defendant.

Case Number:  16CR-AC00091

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Rebecca Ann Palmer, Defendant, in the above-styled cause.

/s/ Jesse B. Rochman
Jesse Barrett Rochman
Mo Bar Number: 60712
Attorney for Defendant
110 E. Lockwood
St. Louis, MO 63119
Phone Number: (314) 963-9000
rochman@onderlaw.com

### Certificate of Service

I hereby certify that on _____ June 14th, 2016 _____, a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Jesse B. Rochman
Jesse Barrett Rochman

**IN THE** __8TH JUDICIAL CIRCUIT__ **COURT,** _____CARROLL COUNTY_____ **, MISSOURI**

| |
|---|
| Commerce Bank N.a., |
| Plaintiff, |
| vs. |
| Beverly Williamson Et Al, |
| Defendant. |

| |
|---|
| Case Number: 16CR-AC00091 |

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Beverly J Williamson, Defendant, in the above-styled cause.

/s/ Jesse B. Rochman
Jesse Barrett Rochman
Mo Bar Number: 60712
Attorney for Defendant
110 E. Lockwood
St. Louis, MO 63119
Phone Number: (314) 963-9000
rochman@onderlaw.com

### Certificate of Service

I hereby certify that on _____ June 14th, 2016 _____, a copy of the foregoing was sent through the

Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery,

electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Jesse B. Rochman
Jesse Barrett Rochman

**IN THE  8TH JUDICIAL CIRCUIT  COURT,  CARROLL COUNTY , MISSOURI**

Commerce Bank N.a.,

       Plaintiff,

                  vs.

Beverly Williamson Et Al,

       Defendant.

Case Number:  16CR-AC00091

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Beverly J Williamson, Defendant, in the above-styled cause.

/s/ Martin L. Daesch
Martin L. Daesch
Mo Bar Number: 40494
Attorney for Defendant
The Onder Law Firm
110 E. Lockwood
St. Louis, MO 63119
Phone Number: (314) 963-9000 ext 144
daesch@onderlaw.com

### Certificate of Service

I hereby certify that on _____ June 14th, 2016 _____, a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Martin L. Daesch
Martin L. Daesch

Electronically Filed - Carroll Circuit Division - June 14, 2016 - 03:16 PM

**IN THE  8TH JUDICIAL CIRCUIT  COURT,       CARROLL COUNTY       , MISSOURI**

Commerce Bank N.a.,

      Plaintiff,

                vs.

Beverly Williamson Et Al,

      Defendant.

Case Number:  16CR-AC00091

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Rebecca Ann Palmer, Defendant, in the above-styled cause.

/s/ Martin L. Daesch
Martin L. Daesch
Mo Bar Number: 40494
Attorney for Defendant
The Onder Law Firm
110 E. Lockwood
St. Louis, MO 63119
Phone Number: (314) 963-9000 ext 144
daesch@onderlaw.com

## Certificate of Service

I hereby certify that on _____ June 14th, 2016 _____, a copy of the foregoing was sent through the

Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery,

electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Martin L. Daesch
Martin L. Daesch

# EIGHTH JUDICIAL CIRCUIT COURT
# CARROLL COUNTY, MISSOURI

Commerce Bank,

      Plaintiff,

v.

Beverly J. Williamson and
Rebecca Palmer,

      Defendants.

Case No. 15CR-AC00091

Associate Division

## Answer and Counterclaim to Amended Petition

Defendants, through the undersigned attorneys, answers Plaintiff's Petition and counterclaims against Plaintiff:

## Answer

1.    Admitted.

2.    Defendants are without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore, deny same.

3.    The Contract and Security Agreement speaks for itself, and therefore, Defendants deny the allegations in this Paragraph.

4.    Defendants admit they made payments to Plaintiff, but the remaining allegations contain legal conclusions to which no response is required. If a response is required, the remaining allegations are denied.

5.    Defendants admit Plaintiff's form right to cure notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

6.      Defendant admits Plaintiff repossessed the collateral, but the remaining allegations contain legal conclusions to which no response is required. If a response is required, the remaining allegations are denied.

7.      Defendants admit Plaintiff's form presale notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

8.      Defendants admit Plaintiff sold the collateral, but Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

9.      Denied.

10.     Defendants admit Plaintiff's form post-sale notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Defendants are without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore, deny same.

15.     Denied.

WHEREFORE, having fully answered Plaintiff's Amended Petition, Defendant prays for an order dismissing all claims against Defendant with prejudice and costs expended taxed to Plaintiff; and awarding all other relief as the Court deems just or necessary under the circumstances.

## Affirmative Defenses

1.      Plaintiff's Petition fails to state a claim upon which relief can be granted because Plaintiff has failed to plead facts sufficient to show compliance with sections 400.9-601 to 400.9-629, RSMo., as required by sections 408.556.1 and 408.557, RSMo.

2.      Plaintiff's Petition is barred by the absolute bar rule because Plaintiff did not strictly comply with the Uniform Commercial Code, including sections 400.9-601 to 400.9-629, RSMo., as set forth in the counterclaim below, which is incorporated by this reference.

---

## Counterclaim
### Nature of Case

1.      Commerce Bank wrongfully accelerated Defendants' loan with Commerce Bank and wrongfully repossessed Defendants' car because Commerce Bank either failed to send the right to cure notice required by section 408.554 or sent a defective right to cure notice before repossession. Commerce Bank's form right to cure notice is attached to its Petition.

2.      Commerce Bank violated section 408.553 by charging interest during the time after Defendants' alleged default and before Commerce Bank obtained a deficiency judgment.

3.      Commerce Bank failed to send or sent Defendants a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by Missouri. Commerce Bank's form presale notice is attached to its Petition.

4.      Commerce Bank failed to send or sent Defendants a post-sale notice, which did not comply with the UCC. Commerce Bank's form post-sale notice is attached to its Petition.

5.      Defendants seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

6.      Defendants are a resident of Carroll County, Missouri.

7.      Commerce Bank is a Missouri banking corporation with its principal place of business in Missouri.

## Jurisdiction and Venue

8.      This Associate Circuit Court of Jackson County, Missouri has jurisdiction over this matter under the Missouri Constitution and state statutes, which grant Missouri associate circuit courts original jurisdiction over all civil cases and matters. This is a civil case.

9.      Venue is proper in this Court under § 508.010 because Defendants are residents of Carroll County and Commerce Bank may be found in Carroll County, Missouri. Venue is also proper in this Court under Rule 55.32 because Defendants are counterclaiming on Commerce Bank's Petition originally brought in Carroll County, Missouri.

## General Allegations

10.      Defendants signed a consumer credit contract for the purchase of a motor vehicle ("Property").

11.      The Property was bought for use primarily for personal or family purposes.

12.      Defendants are each a debtor or obligor in a consumer-goods transaction as those terms are defined under the UCC.

13.      After Defendants were late in making a payment, Commerce Bank either failed to send a right to cure notice or sent a right to cure that was defective because it failed to comply with section 408.554.

14.      Commerce Bank accelerated the balance due on Defendants' consumer credit contract without giving the required right to cure notice.

15.     Commerce Bank or someone at Commerce Bank's direction repossessed the Property without giving the required right to cure notice.

16.     Under section 408.555, Commerce Bank wrongfully accelerated Defendants' consumer credit contract by failing to give the required right to cure notice before acceleration.

17.     Under section 408.555, Commerce Bank wrongfully repossessed Defendants' Property by failing to give the required right to cure notice before repossession.

18.     After repossessing the Property, Commerce Bank failed to send a presale notice to each Defendant. Alternatively, Commerce Bank sent a presale notice to Defendants, advising Defendants of Commerce Bank's intent to dispose of the Property in purported compliance with the UCC.

19.     If the presale notice was sent to Defendants, it was not sent to an address reasonable under the circumstances.

20.     If the presale notice was sent to Defendants, it was not reasonable as required by section 400.9-611(b) because, among other reasons, it failed to inform Defendants, specifically and unambiguously, the intended method of disposition and the timing of the sale.

21.     If the presale notice was sent to Defendants, it was not reasonable as required by section 400.9-611(b) because the presale notice was misleading because, among other reasons, it was misleading in its statement that Defendants could attend the sale and bring bidders.

22.     Commerce Bank failed to send Defendants reasonable authenticated notice of disposition as required by section 400.9-611.

23.     Commerce Bank or someone at Commerce Bank's direction disposed of the Property ("Disposition") after failing to send a proper presale notice.

24. After Disposition, Commerce Bank failed to send a post-sale notice to Defendants. Alternatively, Commerce Bank or someone at Commerce Bank's direction sent Defendants the post-sale notice explaining how Commerce Bank calculated the deficiency balance.

25. If the post-sale notice was sent to Defendants, it was not sent to an address reasonable under the circumstances.

26. If the post-sale notice was sent to Defendants, it failed to comply with section 400.9-616 because it:

   a. Did not provide all the information, in the requisite order, as required by § 400.9-616(c)(3).

   b. Did not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 400.9-616(a)(1)(C).

   c. Misstated the aggregate amount of obligation (as required by § 400.9-616(c)(1)) and the amount of the deficiency (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances or interest that had not become due.

27. Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the amount of the surplus or deficiency for Defendants.

28. Commerce Bank's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

29. Commerce Bank sued Defendants without giving the notice required by section 408.557.

30. Commerce Bank's deficiency action against Defendants sought charges and expenses that affected Defendants' deficiency balance, including interest and attorney's fees.

31.     Commerce Bank or someone at Commerce Bank's direction has unlawfully collected or attempted to collect deficiency balances from Defendants.

32.     Commerce Bank or someone at Commerce Bank's direction has unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Defendants.

33.     Besides the unlawful repossession of collateral and collection or attempt to collect deficiency balances, time price differentials, and delinquency and collection charges from Defendants, Commerce Bank has maintained, a practice and policy of reporting derogatory information regarding the consumers to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the right to cure, presale and post-sale notice requirements.

### Count I

34.     Defendants repeat the allegations set forth above as if set forth in Count I.

35.     Section 408.555 prohibits Commerce Bank from accelerating the maturity of the unpaid balance, taking possession of the collateral or otherwise enforcing its security interest until the notice required by section 408.554 is given.

36.     Commerce Bank failed to give Defendants the notice required by section 408.554 before it accelerated the maturity of the unpaid balances under her consumer credit contract.

37.     Commerce Bank failed to give Defendants the notice required by section 408.554 before it repossessed the Property secured by the consumer credit contract.

38.     Commerce Bank wrongfully accelerated the maturity of the unpaid balance under the consumer credit contract.

39.     Commerce Bank wrongfully repossessed the Property secured by the consumer credit contract and deprived Defendants the loss of use of tangible property.

40.     Under section 408.553, interest on Defendants' consumer credit contract stopped accruing at the time of default and did not begin to accrue again until the date of a "final judgment" and then only at the "simple interest equivalent of the rate provided in the contract."

41.     Commerce Bank wrongfully charges interest that accrued between the time of the alleged default on the consumer credit contract and before entry of a judgment against Defendants.

42.     Commerce Bank's failure to provide a notice sufficient under §§ 408.554 and 408.555 before acceleration and repossession and the wrongful charge of interest violates § 365.145.

43.     Commerce Bank's wrongful acceleration of the maturity of the unpaid balance under the consumer credit contract, wrongful repossession of the Property secured by the consumer credit contract, and wrongful charge of interest renders the presale notice unreasonable and misleading in violation of §§ 400.9-611 and 9-614.

44.     Commerce Bank violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of the Property.

45.     Commerce Bank did not use the form of notification provided in § 9-614(3) of the UCC for its presale notice.

46.     Commerce Bank's presale notice included additional language or content not authorized or allowed by law, rendering the presale notice misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

47.     As required under § 9-611 of the UCC, Commerce Bank failed to send "reasonable authenticated notice of disposition" to Defendants.

48.     Commerce Bank's wrongful acceleration of the maturity of the unpaid balance under the consumer credit contract and wrongful charge of interest renders the post-sale notice unreasonable and misleading in violation of § 9-616.

49.     Commerce Bank did not send a post-sale notice, or any other explanation or writing, to Defendants providing all the information, in the requisite order, as required by § 400.9-616.

50.     Commerce Bank's failure to send a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

51.     Commerce Bank's failure to send notices sufficient under §§ 400.9-611, 9-614 and 9-616 before commencing its claim for a deficiency judgment violates sections §§ 408.556, 408.557, and 365.145.

52.     Under § 365.150.2, Commerce Bank's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contract that it collected from Defendants.

53.     As a direct and proximate result of Commerce Bank's wrongful acceleration, repossession, and charge of interest; and failure to send the requisite notices, Defendants suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

    a.      loss of use of tangible property and cost of alternative transportation;

    b.      the surplus after disposition of the collateral that would be equal to the proceeds of disposition less the unaccelerated balance due on the consumer loan contract and less the improperly accrued interest;

    c.      all monies paid to Commerce Bank by Defendants for the time price differential and delinquency and collection charges on the consumer credit contracts; and

    d.      other uncertain and hard-to-quantify actual damages.

54.     Defendants are entitled to attorney's fees under section 408.562.

55.     Defendants are entitled to punitive damages under section 408.562.

56.     Commerce Bank's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of Defendants' consumer rights.

WHEREFORE, Defendants pray this Court enter a judgment for them and against Commerce Bank:

a.  awarding actual damages not less than the minimum damages provided by § 400.9-625(c)(2);

b.  statutory damages of $500 for each defective post-sale notice sent or that Commerce Bank failed to send;

c.  prejudgment and post-judgment interest;

d.  punitive damages;

e.  attorney's fees;

f.  a declaration that the right to cure notice, presale notice and post-sale notice sent by Commerce Bank to Defendants fail to comport with the statutory requirements; and

g.  for such other and further relief as this Court deems just and proper.

THE ONDER LAW FIRM


By:  _____
     Martin L. Daesch, #40494
     Jesse B. Rochman, #60712
     110 E. Lockwood Ave.
     St. Louis, MO 63119
     (314) 963-9000 (telephone)
     (314) 963-1700 (facsimile)
     daesch@onderlaw.com
     rochman@onderlaw.com

*Attorneys for Defendants/Counterclaimantc*

**Certificate of Service**

  I certify on June 14, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

Electronically Filed - Carroll Circuit Division - July 11, 2016 - 03:07 PM

#16600072

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

| | | |
|---|---|---|
| COMMERCE BANK | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 16CR-AC00091 |
| vs. | ) | |
| | ) | Div/Team No. |
| BEVERLY J WILLIAMSON | ) | |
| and | ) | |
| REBECCA PALMER | ) | |
| | ) | |
| Defendant(s). | ) | |

REQUEST FOR EXTENSION OF TIME

     Comes Now Plaintiff, with consent of Defendant and requests an additional 30 days up to and including August 14, 2016 to answer or otherwise plead to Defendant's Counterclaim.

GAMACHE & MYERS, P.C.

BY: __/s/ Donald A. Horowitz_____
      DONALD A. HOROWITZ, MBE 42340
      Attorneys for Plaintiff
      1000 CAMERA AVE SUITE A
      CRESTWOOD (ST LOUIS) MO 63126
      (314) 835-6602
      FAX (314) 835-6604

     A copy of the foregoing was served through e-filing this July 11, 2016, to: JESSE BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO 60712.

                    _/s/ Donald A. Horowitz_____
                    DONALD A. HOROWITZ

SO ORDERED

_____
JUDGE, DIVISION

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

#16600072



IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

COMMERCE BANK                    )
                                 )
                    Plaintiff,   )        Cause No. 16CR-AC00091
vs.                              )
                                 )        Div/Team No.
BEVERLY J WILLIAMSON             )
and                              )
REBECCA PALMER                   )
                                 )
              Defendant(s).      )

<u>REQUEST FOR EXTENSION OF TIME</u>

Comes Now Plaintiff, with consent of Defendant and requests an additional 30 days up to and including August 14, 2016 to answer or otherwise plead to Defendant's Counterclaim.

GAMACHE & MYERS, P.C.


BY: __*/s/ Donald A. Horowitz*_____
DONALD A. HOROWITZ, MBE 42340
Attorneys for Plaintiff
1000 CAMERA AVE SUITE A
CRESTWOOD (ST LOUIS) MO 63126
(314) 835-6602
FAX (314) 835-6604


A copy of the foregoing was served through e-filing this July 11, 2016, to: JESSE BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO 60712.

*/s/ Donald A. Horowitz*_____
DONALD A. HOROWITZ

SO ORDERED
JUDGE, DIVISION

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

#16600072

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

COMMERCE BANK )
A MISSOURI BANKING CORPORATION )
)
)
)
Plaintiff, )      Cause No. 16CR-AC00091
vs. )
)      Div/Team No.
BEVERLY J WILLIAMSON )
)
REBECCA PALMER )
)
)
Defendant(s). )

COMES NOW Plaintiff, with mutual consent, respectfully request the above entitled matter be continued to the August 18, 2016 court date,

GAMACHE & MYERS, P.C.

BY: _____
DAVID R. GAMACHE, MBE 34112
Attorneys for Plaintiff
1000 CAMERA AVENUE STE A
CRESTWOOD (ST LOUIS) MO 63126
(314) 835-6602
FAX (314) 835-6604

A copy of the foregoing mailed this July 14, 2016, to: JESSE BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO 60712.

_____
DAVID R. GAMACHE

SO ORDERED

_____
JUDGE, DIVISION

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

G:\CLSINC\WORD\P148

#16600072

| | | |
|---|---|---|
| COMMERCE BANK | ) | |
| A MISSOURI BANKING CORPORATION | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 16CR-AC00091 |
| vs. | ) | |
| | ) | Div/Team No. |
| BEVERLY J WILLIAMSON | ) | |
| | ) | |
| REBECCA PALMER | ) | |
| | ) | |
| | ) | |
| Defendant(s). | ) | |

COMES NOW Plaintiff, with mutual consent, respectfully request the above entitled matter be continued to the August 18, 2016 court date,

GAMACHE & MYERS, P.C.

BY: _David R Gamache_

DAVID R. GAMACHE, MBE 34112
Attorneys for Plaintiff
1000 CAMERA AVENUE STE A
CRESTWOOD (ST LOUIS) MO 63126
(314) 835-6602
FAX (314) 835-6604

A copy of the foregoing mailed this July 14, 2016, to: JESSE BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO 60712.

_David R Gamache_

DAVID R. GAMACHE

SO ORDERED

_____

JUDGE, DIVISION

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

Electronically Filed - Carroll Circuit Division - July 18, 2016 - 11:21 AM

**EIGHTH JUDICIAL CIRCUIT COURT**
**CARROLL COUNTY, MISSOURI**

Commerce Bank,

     Plaintiff/Counterclaim-Defendant,

v.

Beverly J. Williamson and
Rebecca Palmer,

     Defendants/Counterclaim-Plaintiffs.

Case No. 16CR-AC00091

Associate Division

## Amended Answer and Counterclaim

Defendants/Counterclaim-Plaintiffs Beverly J. Williamson and Rebecca Palmer ("Defendants"), through their undersigned attorneys, answer Plaintiff's Petition and counterclaim against Counterclaim-Defendant Commerce Bank:

### Answer

1.    Admitted.

2.    Defendants are without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore, deny same.

3.    The Contract and Security Agreement speaks for itself, and therefore, Defendants deny the allegations in this Paragraph.

4.    Defendants admit they made payments to Plaintiff, but the remaining allegations contain legal conclusions to which no response is required. If a response is required, the remaining allegations are denied.

5.      Defendants admit Plaintiff's form right to cure notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

6.      Defendant admits Plaintiff repossessed the collateral, but the remaining allegations contain legal conclusions to which no response is required. If a response is required, the remaining allegations are denied.

7.      Defendants admit Plaintiff's form presale notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

8.      Defendants admit Plaintiff sold the collateral, but Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

9.      Denied.

10.     Defendants admit Plaintiff's form post-sale notice addressed to each defendant is attached to Plaintiff's Petition. Defendants are without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore, deny same.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Defendants are without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore, deny same.

15.     Denied.

2

WHEREFORE, having fully answered Plaintiff's Petition, Defendants pray for an order dismissing all claims against Defendants with prejudice and costs expended taxed to Plaintiff; and awarding all other relief as the Court deems just or necessary under the circumstances.

## Affirmative Defenses

1.    Plaintiff's Petition fails to state a claim upon which relief can be granted because Plaintiff has failed to plead facts sufficient to show compliance with sections 400.9-601 to 400.9-629, RSMo., as required by sections 408.556.1 and 408.557, RSMo.

2.    Plaintiff's Petition is barred by the absolute bar rule because Plaintiff did not strictly comply with the Uniform Commercial Code, including sections 400.9-601 to 400.9-629, RSMo..

3.    Plaintiff's Petition is barred as set forth in the counterclaim below, which is incorporated by this reference.

4.    Count II of Plaintiff's Petition is barred by set-off due to the counterclaim below, which is incorporated by this reference.

---

## Counterclaim
## Nature of Case

1.    This is a consumer class action against Commerce Bank, and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by Commerce Bank regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies.

2.    Commerce Bank violated section 408.553 by charging interest during the time after Defendants' and numerous other Missouri consumers' alleged defaults and before Commerce Bank obtained deficiency judgments against them.

3.     Commerce Bank sent Defendants and many other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by each state.[1] Commerce Bank's form presale notice is attached to its Petition.

4.     Commerce Bank sent Defendants and numerous other consumers a post-sale notice, which did not comply with the UCC. Commerce Bank's form post-sale notice is attached to its Petition.

5.     Defendants sue individually and for all other similarly situated consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

6.     Defendants are residents of Carroll County, Missouri.

7.     Commerce Banks is a Missouri banking corporation with its principle place of business in Missouri.

8.     All allegations of acts or omissions by Commerce Bank include, but are not limited to, acts and omissions of Commerce Bank's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were made with Commerce Bank's express and/or implied authority, or were ratified or otherwise approved by Commerce Bank; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Commerce Bank's

---

[1]     Defendants cite to the sections of the official text of the UCC. The sections of the UCC cited by Defendants have been adopted by all 50 states with no material variation that would affect the claims of the putative class members, regardless of where the putative class member resides, the loan originated, or the repossession took place. Article 9 of the UCC has been adopted in Missouri at § 400.9-101, *et seq*. Missouri's statutory scheme for its version of the UCC adds the prefix of 400 to the UCC numbering scheme. For example, § 9-614 of the UCC is denominated § 400.9-614 in Missouri's statutes.

officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

## Jurisdiction and Venue

9.      This is a civil case, so this Court has jurisdiction.

10.     Defendants and the classes seek over $25,000.

11.     Venue is proper in this Court under § 508.010 because Defendants are residents of Carroll County, Missouri and Commerce Bank may be found in Carroll County, Missouri. Venue is also proper in this Court under Rule 55.32 because Defendants are counterclaiming on Commerce Bank's Petition originally brought in Carroll County, Missouri.

## General Allegations

12.     Defendants signed a consumer credit contract for the purchase of a motor vehicle ("Property").

13.     The Property was bought for use primarily for personal, family or household purposes.

14.     The consumer credit contract was for the sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments

15.     Defendants and each class member were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

16.     Commerce Bank never obtained Defendants' written consent to repossess the Property.

17.     Commerce Bank never obtained the written consent from the members of the Missouri Subclass (defined below) to repossess their property.

18.    Commerce Bank sent presale notices to Defendants and the Class, advising of Commerce Bank's intent to dispose of the Property in purported compliance with the UCC.

19.    The presale notices sent to Defendants and the Class were not reasonable as required by § 9-611(b) because, among other reasons, they failed to inform consumers, specifically and unambiguously, the intended method of disposition and the timing of the sale.

20.    The presale notices sent to Defendants and the Class were not reasonable as required by § 9-611(b) because they were misleading in that, among other reasons, they stated the consumers could attend the sale and bring bidders when this was not true.

21.    Commerce Bank failed to send Defendants and the Class reasonable authenticated notices of disposition as required by § 9-611.

22.    Commerce Bank or someone at Commerce Bank's direction disposed of the Property ("Disposition") after sending the presale notice.

23.    After Disposition, Commerce Bank or someone at Commerce Bank's direction sent post-sale notices to Defendants and each member of the Class explaining how it calculated their deficiency balances.

24.    The post-sale notices sent to Defendants and the Class failed to comply with § 9-616 because they:

    a.    Did not provide all the information, in the requisite order, as required by § 9-616(c)(3).

    b.    Did not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 9-616(a)(1)(C).

25.     The post-sale notices sent to Defendants and the Missouri Subclass failed to comply with § 9-616 because they misstated the aggregate amount of obligation (as required by § 400.9-616(c)(1)) and the amount of the deficiency (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances or interest that had not become due.

26.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the amount of the surplus or deficiency for Defendants and the Class.

27.     Commerce Bank's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

28.     Commerce Bank sued Defendants and the Missouri Subclass without giving the notice required by RSMo § 408.557.

29.     Commerce Bank's deficiency actions against Defendants and the Class sought interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

30.     Commerce Bank's deficiency judgments against many members of the Class included interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

31.     Commerce Bank or someone at Commerce Bank's direction has unlawfully collected or attempted to collect interest accruing after default and before judgment from Defendants and Missouri consumers.

32.     Commerce Bank or someone at Commerce Bank's direction has unlawfully collected or attempted to collect deficiency balances from Defendants and other consumers issued defective presale and post-sale notices.

7

33.     Commerce Bank or someone at Commerce Bank's direction has unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Defendants and other Missouri consumers issued defective presale and post-sale notices.

34.     Commerce Bank has maintained a practice and policy of reporting derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the presale and post-sale notice requirements.

35.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

36.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

37.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

**Class Allegations**

38.     Defendants counterclaim individually and for classes designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

39.     The Class comprises all persons ("Class") within the applicable statute of limitations:

    a.   who are named as borrowers or buyers on a loan or financing agreement with

        Commerce Bank, assigned to Commerce Bank or owned by Commerce Bank;

    b.   whose loan or financing agreement was secured by collateral;

    c.   whose collateral was repossessed, voluntarily or involuntarily; and

    d.   whose collateral was disposed.

40.    Alternatively, the Class comprises all persons ("Class") within the applicable statute of limitations:

    a.   who Commerce Bank failed to send a presale notice; or

    b.   who Commerce Bank sent a presale notice identical or substantially similar to

        the one attached to its Petition.

41.    The Missouri Subclass comprises all persons within the Class ("Missouri Subclass"):

    a.   who obtained a Missouri Certificate of Title for a motor vehicle identifying

        Commerce Bank as the lienholder, or who are named as borrowers or buyers

        with a Missouri address on a loan or financing agreement with Commerce

        Bank, assigned to Commerce Bank or owned by Commerce Bank;

    b.   whose loan or financing agreement was secured by a motor vehicle or other

        collateral;

    c.   whose motor vehicle or other collateral was repossessed, involuntarily or

        voluntarily; and

    d.   whose motor vehicle or other collateral was disposed.

42.    Alternatively, the Missouri Subclass comprises all persons within the Class ("Missouri Subclass") who obtained a Missouri Certificate of Title for a motor vehicle identifying

Commerce Bank as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with Commerce Bank, assigned to Commerce Bank or owned by Commerce Bank; and:

      a.   who Commerce Bank failed to send a presale notice;

      c.   who Commerce Bank sent a presale notice identical or substantially similar to the one attached to its Petition;

      d.   who Commerce Bank failed to send a post-sale notice; or

      e.   who Commerce Bank sent a post-sale notice after disposing the collateral or receiving insurance proceeds for the same.

43.     Members of the classes are so numerous their individual joinder is impracticable. Defendants is informed and believes the proposed classes each contain over 1,000 individuals who had their motor vehicles or other collateral repossessed, involuntarily or voluntarily, and disposed. The classes are sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown.

44.     There are questions of law and fact common to the classes, which predominate over any issues involving individual class members.

45.     The principal legal question common to Defendants and each class member is whether the presale and post-sale notices sent by Commerce Bank, or someone at its direction, complied with the UCC.

46.     The principal legal question common to Defendants and each Missouri Subclass member is whether RSMo § 408.553 precludes interest from accruing after default until a judgment is obtained, and if so, whether the presale and post-sale notices are defective by including or discussing interest Commerce Bank was precluded from charging.

47.     Defendants' claims are typical of the claims of the class members.

48.     Defendants' and the classes' claims are based on the same factual and legal theories.

49.     Defendants' and the Class's rights derive from written, form contracts and a uniform statute adopted by all 50 states with no material variation for the claims asserted here.

50.     All presale notices and post-sale notices sent to the Class are substantively identical to the presale notice sent to Defendants.

51.     The violations alleged by Defendants and the Class derive from written, form presale and post-sale notices that violate the UCC adopted by each state.

52.     The violations alleged by Defendants and the Missouri Subclass derive from written, form presale and post-sale notices that violate RSMo § 408.553 and the UCC.

53.     Defendants and each class member were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to Commerce Bank's failure to provide proper presale notices and post-sale notices.

54.     Defendants will fairly and adequately represent and protect the interests of the classes.

55.     The class members and Defendants have no antagonistic interests.

56.     Defendants' counsel is competent and experienced in consumer and class litigation.

57.     Defendants and all class members have an interest in determining the adequacy of the presale notices and post-sale notices sent by Commerce Bank and to recover damages due to the statutorily defective presale notices and post-sale notices.

58.     The questions of law or fact common to the classes predominate over questions affecting only individual members.

59.     Defendants and each class member will rely on the same basic evidence (i.e., the form notices).

60.     Determining the deficiency of the presale notices and post-sale notices resolves all class members' claims because each notice sent to the class members suffers from at least one of the same deficiencies as Defendants' notices.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

62.     The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

63.     Most class members are probably unaware Commerce Bank violated their rights and the law.

64.     If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

65.     Concentrating the litigation of Defendants' and the class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

66.     The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

67.     Defendants also seeks a declaration that the form right to cure notices, presale notices and post-sale notices used by Commerce Bank violate Missouri or other applicable law.

### Count I – Class's Claim

68.     Defendants repeat the allegations set forth above as if set forth in Count I.

Electronically Filed - Carroll Circuit Division - July 21, 2016 - 10:31 PM

69.     Commerce Bank violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by Commerce Bank.

70.     Commerce Bank did not properly complete the form of notification provided in § 9-614(3) of the UCC when sending presale notices to Defendants and the Class.

71.     Commerce Bank's presale notice to Defendants and the Class included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

72.     As required under § 9-611 of the UCC, Commerce Bank failed to provide "reasonable authenticated notice of disposition" to Defendants and the Class.

73.     Commerce Bank did not send post-sale notices, or any other explanation or writing, to Defendants and the Class providing all the information, in the requisite order, as required by § 9-616 of the UCC.

74.     Commerce Bank's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because Commerce Bank sent the same noncompliant post-sale notice to Defendants and the Class.

75.     As a direct and proximate result of failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Defendants and the Class suffered actual damages not less than the minimum damages provided by § 9-625(c)(2), including:

    a.  loss of use of tangible property and cost of alternative transportation;

    b.  loss resulting from the inability to obtain, or increased costs of, alternative financing;

c. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

d. harm caused by defamation, slander and libel;

e. harm caused by invasion of privacy; and

f. other uncertain and hard-to-quantify actual damages.

WHEREFORE, Defendants pray this Court certify the Class and enter a judgment for Defendants and the Class against Commerce Bank:

a. awarding actual damages not less than the minimum damages provided by § 9-625(c)(2);

b. statutory damages of $500 for each defective post-sale notice sent or that Commerce Bank failed to send;

c. prejudgment and post-judgment interest;

d. a preliminary and permanent injunction enjoining Commerce Bank from engaging in the practices alleged, including without limitation, enjoining Commerce Bank from collecting deficiency judgments, time price differential, delinquency and collection charges from Defendants and the Class;

e. a mandatory injunction compelling Commerce Bank to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Defendants and the Class;

f. a mandatory injunction compelling Commerce Bank to remove any adverse credit information wrongfully reported on Defendants' and the Class' consumer credit reports;

g.  a declaration that the presale and post-sale notices sent by Commerce Bank to Defendants and the Class fail to comport with the statutory requirements; and

h.  for such other and further relief as this Court deems just and proper.

## Count II – Missouri Subclass' Claim

76.     Defendants repeat the allegations set forth above as if set forth in Count II.

77.     Commerce Bank wrongfully charged interest after default but before a final judgment in violation of RSMo § 408.553, which also violates RSMo § 365.145.

78.     Commerce Bank's wrongful charge of interest renders the presale notices unreasonable and misleading in violation of RSMo §§ 400.9-611 and 9-614(5).

79.     Commerce Bank's wrongful charge of interest renders the post-sale notices unreasonable and misleading in violation of RSMo § 400.9-616 because, among other reasons, it misstates the amount of the obligation and the deficiency balances owed by including unpaid balances or interest that had not become due.

80.     Commerce Bank did not send post-sale notices, or any other explanation or writing, to Defendants and the Missouri Subclass providing all the information, in the requisite order, as required by RSMo § 400.9-616.

81.     Commerce Bank's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because Commerce Bank sent the same noncompliant post-sale notice to Defendants and the Missouri Subclass.

82.     Commerce Bank's failure to provide notices sufficient under RSMo §§ 400.9-611, 9-614 and 9-616 before commencing its claim for a deficiency judgment violates sections §§ 408.556, 408.557, and 365.145.

83.     Under § 365.150.2, Commerce Bank's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contracts that it collected from Defendants and the Missouri Subclass.

84.     As a direct and proximate result of Commerce Bank's wrongful acceleration and repossession, and failure to send the requisite notices, Defendants and the Missouri Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

   a.   loss of use of tangible property and cost of alternative transportation;

   b.   loss resulting from the inability to obtain, or increased costs of, alternative financing;

   c.   the surplus after disposition of the collateral that would be equal to the proceeds of disposition less the unaccelerated balance due on the consumer loan contracts and less any wrongfully charged interest;

   d.   all monies paid to Commerce Bank by Defendants and the Missouri Subclass for the time price differential and delinquency and collection charges on the consumer credit contracts;

   e.   harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

   f.   harm caused by defamation, slander and libel;

   g.   harm caused by invasion of privacy; and

   h.   other uncertain and hard-to-quantify actual damages.

85.     Commerce Bank did not intend to violate RSMo § 408.553 or any of the statutes under the UCC.

86. Defendants and the Missouri Subclass are entitled to attorney's fees under RSMo § 408.562.

87. Defendants and the Missouri Subclass are entitled to punitive damages under RSMo § 408.562.

88. Commerce Bank's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Defendants and the Missouri Subclass.

WHEREFORE, Defendants pray this Court certify the Missouri Subclass and enter a judgment for Defendants and the Missouri Subclass against Commerce Bank:

a. awarding actual damages not less than the minimum damages provided by RSMo § 400.9-625(c)(2);

b. statutory damages of $500 for each defective post-sale notice sent;

c. prejudgment and post-judgment interest;

d. attorney's fees;

e. punitive damages;

f. a preliminary and permanent injunction enjoining Commerce Bank from engaging in the practices alleged, including without limitation, enjoining Commerce Bank from collecting deficiency judgments, time price differential, delinquency and collection charges from Defendants and the Missouri Subclass;

g. a mandatory injunction compelling Commerce Bank to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Defendants and the Missouri Subclass;

17

h. a mandatory injunction compelling Commerce Bank to remove any adverse credit information wrongfully reported on Defendants' and the Missouri Subclass's consumer credit reports;

i. a declaration that the right to cure, presale, and post-sale notices sent by Commerce Bank to Defendants and the Missouri Subclass fail to comport with the statutory requirements; and

j. for such other and further relief as this Court deems just and proper.

THE ONDER LAW FIRM

By: _____

Martin L. Daesch, #40494
Jesse B. Rochman, #60712
Evan C. Murphy #58386
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
murphy@onderlaw.com

*Attorneys for Defendant/Counterclaim-Plaintiff*

## Certificate of Service

I certify on July 21, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

_____

#16600072

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

COMMERCE BANK                    )
                                 )
                    Plaintiff,   )        Cause No. 16CR-AC00091
vs.                              )
                                 )        Div/Team  No.
BEVERLY J WILLIAMSON             )
and                              )
REBECCA PALMER                   )
                                 )
                    Defendant(s).)

REQUEST FOR EXTENSION OF TIME

        Comes Now Plaintiff, with consent of Defendant and requests an additional time up to
and including August 26, 2016 to answer or otherwise plead to Defendant's Amended
Counterclaim filed July 222, 2016

                    GAMACHE & MYERS, P.C.


        BY:   /s/ Donald A. Horowitz
                    DONALD A. HOROWITZ, MBE 42340
                    Attorneys for Plaintiff
                    1000 CAMERA AVE SUITE A
                    CRESTWOOD (ST LOUIS) MO 63126
                    (314) 835-6602
                    FAX (314) 835-6604

        A copy of the foregoing was served through e-filing this July 27, 2016, to:  JESSE
BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO
60712.


                    /s/ Donald A. Horowitz
                    DONALD A. HOROWITZ

SO ORDERED

_____
JUDGE, DIVISION


**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO
COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE."**

#16600072

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

| | | |
|---|---|---|
| COMMERCE BANK | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 16CR-AC00091 |
| vs. | ) | |
| | ) | Div/Team No. |
| BEVERLY J WILLIAMSON | ) | |
| and | ) | |
| REBECCA PALMER | ) | |
| | ) | |
| Defendant(s). | ) | |

REQUEST FOR EXTENSION OF TIME

Comes Now Plaintiff, with consent of Defendant and requests an additional time up to and including August 26, 2016 to answer or otherwise plead to Defendant's Amended Counterclaim filed July 222, 2016

GAMACHE & MYERS, P.C.

BY: _/s/ Donald A. Horowitz_____

DONALD A. HOROWITZ, MBE 42340
Attorneys for Plaintiff
1000 CAMERA AVE SUITE A
CRESTWOOD (ST LOUIS) MO 63126
(314) 835-6602
FAX (314) 835-6604

A copy of the foregoing was served through e-filing this July 27, 2016, to: JESSE BARRETT ROCHMAN, Attorney for Defendant(s), 110 E LOCKWOOD, ST LOUIS MO 60712.

_/s/ Donald A. Horowitz_____
DONALD A. HOROWITZ

COURT SEAL OF
CARROLL COUNTY

SO ORDERED   *Kevin L. Walden*
_____
JUDGE, DIVISION

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

Electronically Filed - Carroll Circuit Division - August 15, 2016 - 04:22 PM

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

| | |
|---|---|
| COMMERCE BANK, )<br>)<br>            Plaintiff, )<br>)<br>   vs. )<br>)<br>BEVERLY J. WILLIAMSON )<br>)<br>and )<br>)<br>REBECCA PALMER )<br>)<br>         Defendants. ) | Case No. 16CR-AC00091 |

## ENTRY OF APPEARANCE

COME NOW Edwin G. Harvey and David M. Mangian of Thompson Coburn LLP and hereby enter their appearance as counsel of record for Plaintiff Commerce Bank in the above-captioned matter.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
    Edwin G. Harvey, #30565
    David M. Mangian, #61728
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

<u>   /s/ David M. Mangian      </u>

IN THE CIRCUIT COURT OF CARROLL COUNTY
ASSOCIATE JUDGE DIVISION
STATE OF MISSOURI

| | |
|---|---|
| COMMERCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )     Case No. 16CR-AC00091 |
| BEVERLY J. WILLIAMSON | ) |
| | ) |
| and | ) |
| | ) |
| REBECCA PALMER | ) |
| | ) |
| Defendants. | ) |

**CONSENT MOTION FOR CERTIFICATION TO CIRCUIT COURT AND
MOTION TO CONTINUE HEARING DATE AND
RESPONSIVE PLEADING DEADLINE**

COMES NOW Plaintiff Commerce Bank ("Commerce"), by and through its counsel, Thompson Coburn LLP, and with consent of Defendants' counsel, moves pursuant to RSMo. § 517.081 for certification of this case for assignment to the Circuit Court by the presiding judge because Defendants' Amended Counterclaim seeks an amount that exceeds the jurisdiction of cases triable under Chapter 517. Commerce additionally moves, with consent of Defendants' counsel, to vacate or continue the August 18, 2016 hearing date, and to extend Commerce's August 26, 2016 responsive pleading deadline to thirty (30) days following certification of this case to the Circuit Court by the presiding judge. In support of its Motion, Commerce states:

1. On May 2, 2016, Commerce filed its Petition against Defendants Beverly J. Williamson and Rebecca Palmer ("Defendants") for a deficiency judgment on a loan. *See, generally* Petition.

2.　　　The Petition initially requested relief in the amount of "$13,023.15, together with reasonable attorney fees, together with interest continuing at the contract rate of 3.39% and for Court costs incurred…" *Id.*, *ad damnum* clause.

3.　　　On June 14, 2016, Defendants filed their Answer and Counterclaim to Petition. On July 21, 2016, Defendants filed their Amended Answer and Counterclaim, seeking certification of a multistate class action arising out of alleged violations of various provisions set forth in the Uniform Commercial Code. *See generally* Amended Answer and Counterclaim. In their current Counterclaim, Defendants allege that "**Defendants and the classes seek over $25,000**." *Id.* at ¶ 10 (emphasis added).

4.　　　Chapter 517 of the Missouri Revised Statutes applies to "the practice and procedure in civil cases originally filed before associate circuit judges in hearing and determining . . . all civil actions and proceedings for the recovery of money . . . when the sum demanded, exclusive of interest and costs, **does not exceed twenty-five thousand dollars**." RSMo. § 517.011.1(1) (emphasis added).

5.　　　The relief requested in Defendants' Amended Counterclaim clearly exceeds the jurisdictional maximum for Associate Circuit Court. Defendants' claims for declaratory and injunctive relief are also outside the cases or classes of cases provided for under RSMO § 517.011.1(1).

6.　　　Under RSMo. § 517.081(1), "[a] case **shall** be certified for assignment by the presiding judge of the circuit or in accordance with local rules when . . . (1) A party files a petition, **a counterclaim**, cross claim or third party petition . . . **that independently exceeds the jurisdiction of cases triable under [Chapter 517]**." RSMo. § 517.081(1) (emphasis added).

- 2 -

7.      Because Defendants' Amended Counterclaim independently exceeds the jurisdiction of the Associate Circuit Court, Commerce respectfully requests that this case be certified to the presiding judge for assignment to a regular Circuit Division pursuant to RSMo. § 517.081.

8.      This case is currently set for a hearing before the Court on August 18, 2016. Commerce's responsive pleading to Defendants' Amended Counterclaim is due on August 26, 2016 per this Court's July 28, 2016 Order granting Commerce's request for extension of time to respond to the Amended Counterclaim.

9.      With consent of Defendants, Commerce also respectfully requests that the Court vacate or continue the August 18, 2016 hearing date and extend the August 26, 2016 responsive pleading deadline to thirty (30) days after the date the presiding judge certifies this case to the Circuit Court pursuant to RSMo. § 517.081(1).  In addition to the certification to the Circuit Court, the undersigned has also only recently been retained as counsel and needs additional time to become familiar with the case and prepare to answer or otherwise respond to the Amended Counterclaim.

10.     Counsel for Commerce spoke with Counsel for Defendants on August 12, 2016. Counsel for Defendants stated that Defendants consent to this Motion.

WHEREFORE Plaintiff Commerce Bank respectfully requests the Court grant its Motion and enter an order certifying this case to the presiding judge for assignment to a regular Circuit Division, vacating/continuing the August 18, 2016 hearing date, and extending Plaintiff's August 26, 2016 responsive pleading deadline to thirty (30) days following certification of this case for assignment by the presiding judge, and for such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
     Edwin G. Harvey, #30565
     David M. Mangian, #61728
     One US Bank Plaza
     St. Louis, Missouri 63101
     314-552-6000
     FAX 314-552-7000
     eharvey@thompsoncoburn.com
     dmangian@thompsoncoburn.com

     *Attorneys for Plaintiff Commerce Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

       /s/ David M. Mangian

**Mock, Laura A.**

| | |
|---|---|
| **From:** | Missouri Courts eFiling System <mocourts.efiling@courts.mo.gov> |
| **Sent:** | Tuesday, August 16, 2016 5:36 PM |
| **To:** | Missouri Courts eFiling Subscriber |
| **Cc:** | dmangian@thompsoncoburn.com; 8th Judicial Circuit (Carroll County) |
| **Subject:** | eNotice - 16CR-AC00091 - COMMERCE BANK  V BEVERLY J WILLIAMSON ET AL, Carroll County - Circuit Court |

## ELECTRONIC NOTICE OF ENTRY
### (Supreme Court Rule 74.03)
### Carroll County - Circuit Court
### CARROLL COUNTY COURTHOUSE, CARROLLTON, MO

## CASE NO: 16CR-AC00091 - COMMERCE BANK V BEVERLY J WILLIAMSON ET AL

MOBAR: 61728
TO: David Michael Mangian
YOU ARE HEREBY NOTIFIED that the court duly entered the following:

| Filing Date | Description | Text * | Last Activity |
|---|---|---|---|
| 8/16/16 2:20 PM | Hearing Continued/Rescheduled | Joint Motion for continance granted. Case continued generally pending motion for certification to Circuit Court and motion for extension on responsive pleading deadline. | 8/16/16 2:26 PM |
| | **Hearing Continued From** | | |
| | • 8/18/16 9:00 AM - Hearing | | |

NOTE: **You MUST be a registered user in order to view the documents. If you have not registered for eFiling click here.** If the case or document contains confidential information, you may not be able to view the case or document through the links provided. In the event you are unable to view information electronically, the court will provide a paper copy for your records.

* If *"None entered at this time"* displays in the text field, the court has not entered any text on this entry. The first 2000 characters of text is provided in this eNotice. To see additional information about the entry made by the court, see Case.net.

Click to access the Missouri eFiling System

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the court.** If you need technical assistance, please contact the Office of State Courts Administrator

1

Help Desk by e-mail at osca.help.desk@courts.mo.gov or toll-free by phone at at 1(888)541-4894, 7:30 a.m. to 5:00 p.m., Monday through Friday, excluding state holidays.

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

COMMERCE BANK,                    )
                                  )
            Plaintiff,            )
                                  )
    vs.                           )
                                  )   Case No. 16CR-AC00091-01
BEVERLY J. WILLIAMSON             )
                                  )
and                               )
                                  )
REBECCA PALMER                    )
                                  )
            Defendants.           )

**PLAINTIFF COMMERCE BANK'S**
**MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM**

COMES NOW Plaintiff Commerce Bank ("Commerce"), through counsel, pursuant to Supreme Court Rule 55.27(1)(6) and moves to dismiss Counts I and II of the Amended Counterclaim of Defendants Beverly J. Williamson and Rebecca Palmer ("Defendants") with prejudice. In support of its Motion, Commerce states:

1.      On July 21, 2016, Defendants filed an Amended Answer and Counterclaim (the "Counterclaim" or "CC") alleging that Commerce's Pre-Sale and Post-Sale Notices failed to comply with Article 9 of Missouri's adoptions of the Uniform Commercial Code ("UCC").

2.      In Count I, Defendants allege that Commerce's Pre-Sale and Post-Sale Notices do not comply with the UCC. Defendants allege the <u>Pre</u>-Sale Notice is not a "reasonable authenticated notification of disposition" as required by RSMo. § 400.9-611(b) because it allegedly (i) "failed to inform [Defendants], specifically and unambiguously, the intended method of disposition and the timing of the sale" (CC ¶ 19), and (ii) "stated [Defendants] could attend the sale and bring bidders when this was not true." ¶ 20. Defendants allege the <u>Post</u>-Sale

Electronically Filed - Carroll Circuit Division - September 28, 2016 - 03:11 PM

Notice does not comply with RSMo. § 400.9-616(c)(3) because it allegedly (i) "[d]id not provide all the information, in the requisite order, as required by § 9-616(c)(3)" (CC ¶ 24(a)); (ii) "[d]id not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 9-616(a)(1)(C)" (CC ¶ 24(b)); and (iii) "misstate[s] the aggregate amount of obligation . . . and the amount of the deficiency . . . by including unpaid balances or interest that had not become due." CC ¶ 25.

3.    In Count II, Defendants allege Commerce violated RSMo. § 408.553 by "wrongfully charg[ing] interest after default but before a final judgment." CC ¶ 77.  According to Defendants, this alleged conduct renders the Pre-Sale and Post-Sale Notices "unreasonable and misleading" in violation of RSMo. §§ 400.9-611, 614(5), and 616.  CC at ¶¶ 78-79. Defendants also re-allege their allegations regarding the validity of the Post-Sale Notice.  CC ¶¶ 80-81.

4.    The sufficiency of Defendants' allegations regarding the Pre-Sale Notice and Post-Sale Notice should be determined as a matter of law.  *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 90 (Mo. App. W.D. 2008) ("[W]here there is no dispute as to the notice given … the reasonableness of the notice may be decided as a matter of law.") (citing *City Nat'l Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1311–12 (8th Cir. 1991)); *First Community Credit Union v. Levison*, 395 S.W.3d 571, 584-587 (Mo. App. E.D. 2013) (reversing dismissal of petition because pre-sale notice was sufficient as a matter of law). *See also* Anderson's Uniform Commercial Code sec. 9–504:170 (3d ed.) ("Where there is no dispute as to what notice was given, the court may determine as a question of law whether the notice was in substantial compliance with the requirements of the Code.").

5.    Defendants' Counterclaim fails as a matter of law and should be dismissed with prejudice because the Pre-Sale and Post-Sale Notices unequivocally comply with the requirements of Missouri law.

6.    Defendants' claim based on the <u>Pre</u>-Sale Notice should be dismissed because the supposedly offending language regarding public sales was taken verbatim from the statutory "safe harbor form" that "when **completed**" provides legally sufficient notice as a matter of law. *See* Exhibit B; RSMo. § 400.9-614(3).  The Pre-Sale Notice was completed and accurately and unequivocally informs Defendants that the Vehicle would be sold at a private sale on or after March 3, 2014.  *See id.*

7.    Defendants' claims based on the <u>Post</u>-Sale Notice should be dismissed because the information Defendants allege is missing is in fact contained in the Notice, in the "required order," and that the Notice includes *verbatim* the language required by statute regarding surplus or deficiency.  *See* Exhibit C; RSMo. § 400.9-616.

8.    Defendants also claim in Count II that Commerce violated RSMo. § 408.553 by charging interest between default and the date of judgment.  This claim should be dismissed because as a matter of law Section 408.553 does not eliminate a lender's ability to recover interest between default and judgment; rather it limits the amount of interest charged during that time to the amount of interest allowed by the parties' contract.  *See* RSMo. § 408.553.

9.    Commerce files contemporaneously herewith its Memorandum in Support and, for the Court's convenience, accompanying Exhibits A – C, which were Exhibits attached to Commerce's Petition and relied upon in Defendants' Counterclaim.  For all of the reasons stated herein and in Commerce's Memorandum in Support, the Court should dismiss Counts I and II of Defendants' Counterclaim with prejudice.

WHEREFORE Plaintiff Commerce Bank respectfully requests that the Court enter an order dismissing Counts I and II of Defendants' Counterclaim with prejudice for the reasons set forth herein and in Commerce's Memorandum in Support, and grant any and all other relief the Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By:   /s/ Edwin G. Harvey
      Edwin G. Harvey, #30565
      David M. Mangian, #61728
      One US Bank Plaza
      St. Louis, Missouri  63101
      314-552-6000
      FAX 314-552-7000
      eharvey@thompsoncoburn.com
      dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

     /s/ Edwin G. Harvey

- 4 -

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

COMMERCE BANK, )
)
                Plaintiff, )
)
     vs. )
)    Case No. 16CR-AC00091-01
BEVERLY J. WILLIAMSON )
)
and )
)
REBECCA PALMER )
)
           Defendants. )

**PLAINTIFF COMMERCE BANK'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM**

## I.      INTRODUCTION

Defendants Beverly J. Williamson and Rebecca Palmer ("Defendants") defaulted on an automobile loan with Plaintiff Commerce Bank ("Commerce"). Commerce then repossessed the vehicle, sold it, and sued Defendants for the deficiency. In response, Defendants filed an Amended Answer and Counterclaim (the "Counterclaim") alleging that Commerce's Pre-Sale and Post-Sale Notices failed to comply with Article 9 of Missouri's adoptions of the Uniform Commercial Code ("UCC"). Defendants' Counterclaim fails as a matter of law and should be dismissed with prejudice because the Pre-Sale and Post-Sale Notices unequivocally comply with the requirements of Missouri law. Indeed, the provisions in Commerce's Pre-Sale Notice that Defendants allege are insufficient, use the *exact* language taken verbatim from the statutory safe harbor form which the legislature has determined provides sufficient notice as a matter of law. Commerce's Post-Sale Notice includes all of the information required by the statute in the proper order. It also clearly contains the *exact* language taken verbatim from the statute regarding

future debits, credits, and charges that could affect the amount of the surplus or deficiency—the same language which Defendants curiously allege is not present.

The Pre-Sale Notice.  Defendants allege Commerce's Pre-Sale Notice violated the UCC because it included form language regarding a public sale (in addition to the proper private sale language) when the collateral was sold at a private sale.  A simple comparison of the Pre-Sale Notice to the statute, however, reveals that the supposedly offending language regarding public sales was taken verbatim from the statutory safe harbor form that "when **completed**" provides legally sufficient notice as a matter of law.  Commerce completed the Pre-Sale Notice form by unequivocally informing Defendants that the Vehicle would be sold at a private sale on or after March 3, 2014.  It specifically identified the public sale portion of the safe harbor form as "not applicable."  Defendants cannot maintain a claim that Commerce somehow violated the UCC by *accurately* using and completing the safe harbor form language.

The Post-Sale Notice.  Defendants allege the Post-Sale Notice is deficient because it did not include information required by the UCC in the proper order and did not include statutory language that future debits, credits, and charges may affect the amount of the surplus or deficiency required by the UCC.  These allegations are specious.  A comparison of Commerce's Post-Sale Notice to the statute shows that the information Defendants allege is missing is in fact contained in the Notice, in the "required order," and that the Notice includes *verbatim* the language required by statute regarding surplus or deficiency.

The Pre-Judgment Interest Claim.  Defendants also allege that Commerce violated RSMo. § 408.553, because Commerce charged Defendants *contractual* interest (i.e., interest allowed by the parties' Installment Agreement) after default and before judgment in this case, and that this supposedly unallowable interest renders the Pre-Sale and Post-Sale Notices

deficient. This claim also fails as a matter of law. Section 408.553 does not restrict Commerce's ability to recover interest between default and judgment; rather it restricts a lender's ability to charge interest during that time to the amount of interest allowed by the parties' contract. Defendants' novel reading of Section 408.553 is wholly unsupported and untenable.

There is no question that Commerce's notices comply with all applicable Missouri statutes as matter of law. Because the contents of the Pre-Sale and Post-Sale Notices are not in dispute and the law is clear, dismissal of the Counterclaim with prejudice is proper. Additionally, resolution at this stage avoids prolonged litigation of a putative class action unsupported by any cognizable claims. As Defendants themselves admit: "Determining the deficiency of the presale notices and post-sale notices resolves all class members' claims." CC ¶ 60.[1]

## II.  SUMMARY OF DEFENDANTS' COUNTERCLAIMS

The Counterclaim alleges that Defendants signed a "consumer credit contract" with Commerce on July 31, 2012 (the "Installment Agreement") for the purchase of a motor vehicle ("the Vehicle"). *See* CC ¶¶ 12-15.[2] In late 2013, Defendants defaulted on their obligations under the Installment Agreement, and Commerce repossessed the Vehicle. CC ¶¶ 2, 16-17. On February 11, 2014, Commerce sent Defendants a notice pursuant to RSMo. § 400.9-611(b) and

---

[1] Citations to the Counterclaim are abbreviated "CC" herein.

[2] A true and accurate copy of the Installment Agreement attached as an exhibit to Commerce's Petition is attached here for convenience as Exhibit A. The Court may consider the Installment Agreement at the motion to dismiss stage because it was attached to Commerce's Petition and relied on by Defendants in their Counterclaim, and obviously neither party disputes its authenticity. *See* Mo. Sup. Ct. R. 55.12 ("An exhibit to a pleading is part thereof for all purposes."); *Bride v. City of Slater*, 263 S.W.2d 22, 23, 25 (Mo. 1953) (proper to consider contents of contract attached to petition when determining whether petition stated a cause of action); *K.O. Real Estate, LLC v. O'Toole*, 291 S.W.3d 780, 789 (Mo. App. E.D. 2009) (same); *Garbo v. Hilleary Franchise Sys., Inc.*, 479 S.W.2d 491, 494 (Mo. App. 1972) ("Certificate of Limited Partnership" attached to petition "must be considered in passing upon the sufficiency of the petition").

614 "advising of Commerce Bank's intent to dispose of" the Vehicle (the "Pre-Sale Notice").[3] CC ¶ 18.  The Pre-Sale Notice stated the intended method of disposition:  "We will sell the 12 FORD/FUSION 3FAHP0GA7CR415050 at a private sale sometime after 03/03/14."  Exhibit B. The notice explained, as required by statute, that Defendants could "get the property back at any time before we sell it by paying us the full amount you owe," and provided a telephone number for that purpose, along with offering to explain in writing if requested.  *Id.*

Defendants did not redeem the property, and as per the Pre-Sale Notice, Commerce then sold the Vehicle at a private sale on March 20, 2014.  On April 18, 2014, Commerce sent Defendants a notice pursuant to RSMo. § 400.9-616 and RSMo. § 408.557 "explaining how [Commerce] calculated their deficiency balances" (the "Post-Sale Notice").[4]  CC ¶¶ 18, 22-23; *see* Exhibit C.  The Post-Sale Notice contains all of the information required by RSMo. § 400.9-616 in the order required by statute.  *Compare* Post-Sale Notice, Exhibit C, *with* RSMo. § 400.9-616(c).

Defendants allege two Counterclaims against Commerce.  In Count I, Defendants allege that Commerce's Pre-Sale and Post-Sale Notices do not comply with the UCC.  Defendants allege the Pre-Sale Notice is not a "reasonable authenticated notification of disposition" as required by RSMo. § 400.9-611(b) because it allegedly (i) "failed to inform [Defendants], specifically and unambiguously, the intended method of disposition and the timing of the sale" (CC ¶ 19), and (ii) "stated [Defendants] could attend the sale and bring bidders when this was not true." CC ¶ 20.  Defendants allege the Post-Sale Notice does not comply with RSMo. § 400.9-

---

[3] A true and accurate copy of the Pre-Sale Notice is attached here for convenience as Exhibit B.  The Pre-Sale Notice is properly considered in adjudicating this motion because it is attached to Commerce's Petition and is central to Defendants' Counterclaims.  *See* Note 2, *supra*; CC ¶ 3.

[4] A true and accurate copy of the Post-Sale Notice is attached here for convenience as Exhibit C.  It is proper for the Court to consider the Pre-Sale Notice in adjudicating this motion.  *See* Note 2, *supra*; CC ¶ 4.

616(c)(3) because it allegedly (i) "[d]id not provide all the information, in the requisite order, as required by § 9-616(c)(3)" (CC ¶ 24(a)); (ii) "[d]id not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 9-616(a)(1)(C)" (CC ¶ 24(b)); and (iii) "misstate[s] the aggregate amount of obligation . . . and the amount of the deficiency . . . by including unpaid balances or interest that had not become due." CC ¶ 25.[5]

In Count II, Defendants allege Commerce violated RSMo. § 408.553 by "wrongfully charg[ing] interest after default but before a final judgment." CC ¶ 77. According to Defendants, this alleged conduct renders the Pre-Sale and Post-Sale Notices "unreasonable and misleading" in violation of RSMo. §§ 400.9-611, 614(5), and 616. CC at ¶¶ 78-79. Defendants also re-allege their allegations regarding the validity of the Post-Sale Notice. CC ¶¶ 80-81.[6]

Defendants seek statutory damages pursuant to RSMo. § 400.9-625, punitives damages, attorneys' fees, and injunctive relief. *See* CC at *ad damnum* clauses. Defendants also allege Commerce damaged their "credit worthiness, credit standing, credit capacity, character, and general reputation" by reporting "false or inaccurate derogatory information on the class members' credit reports" to consumer credit reporting agencies. CC ¶¶ 34-37.

### III.   LEGAL STANDARD

Pursuant to Missouri Rule 55.27(a)(6), a court may dismiss a counterclaim, like a petition, if it fails to state claims upon which relief can be granted. To survive a motion to

---

[5] Defendants also generally allege that "Commerce Bank sued Defendants and the Missouri Subclass without giving the notice required by RSMo § 408.557." CC ¶ 28. Section 408.557 requires that lenders provide notice pursuant to RSMo. § 400.9-613 and § 400.9-614 (i.e., the Pre-Sale Notice requirements) before bringing deficiency actions. To the extent this allegation is a "claim," it wholly depends upon the validity of Defendants' underlying claims about the sufficiency of the Pre-Sale Notice. As discussed below, the Pre-Sale Notice complied with all applicable statutes, and therefore Commerce did not violate § 408.557.

[6] Count II is explicitly limited to the alleged "Missouri Subclass." *See* CC, Count II.

dismiss, counterclaimants must invoke substantive principles of law supported by sufficient facts that would entitle them to relief. *See In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. 2012). When reviewing the legal sufficiency of a counterclaim, a court will construe the allegations in a light most favorable to the counterclaimant, and will accept all well-pleaded facts as true. *See State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009).

The sufficiency of Defendants' allegations regarding the Pre-Sale Notice and Post-Sale Notice should be determined as a matter of law. *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 90 (Mo. App. W.D. 2008) ("[W]here there is no dispute as to the notice given … the reasonableness of the notice may be decided as a matter of law.") (citing *City Nat'l Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1311–12 (8th Cir. 1991)); *First Community Credit Union v. Levison*, 395 S.W.3d 571, 584-587 (Mo. App. E.D. 2013) (reversing dismissal of petition because pre-sale notice was sufficient as a matter of law). *See also* Anderson's Uniform Commercial Code sec. 9–504:170 (3d ed.) ("Where there is no dispute as to what notice was given, the court may determine as a question of law whether the notice was in substantial compliance with the requirements of the Code."). Here, Defendants' claims are premised on allegations that Commerce's Pre-Sale and Post-Sale Notices do not comply with the requirements of the UCC. There is no dispute between the parties as to the particular notices that were given to Defendants, and the issue before the Court is simply whether the terms set forth in the Pre-Sale and Post-Sale Notices provide the information required by Missouri law.

## IV.    ARGUMENT

### A.    Defendants' Counterclaim Should Be Dismissed with Prejudice Because Commerce's Pre-Sale and Post-Sale Notices Comply with Missouri Law.

Defendants' allegations regarding defects in Commerce's Pre-Sale and Post-Sale Notices fail to state a claim, and Commerce is entitled to dismissal of Defendants' Counterclaim with

prejudice, because: (1) the Pre-Sale Notice provision at issue tracks the language of the safe harbor form in RSMo. § 400.9-614(3); (2) the Post-Sale Notice provides all the required information in the proper order; and (3) under Missouri law, Commerce is entitled to recover contractual interest provided by the Installment Agreement after default and before judgment.

1.  Commerce's Pre-Sale Notice Complies with Missouri Law.

Section 400.9-611(b) requires secured parties in consumer-goods transactions[7] to provide debtors with "reasonable authenticated notification of disposition" prior to selling the debtor's collateral. Pursuant to Section 400.9-614 and 9-613(1),[8] that notice of disposition must include the following eight items of information:

(1)  A description of any liability for a deficiency of the person to which the notification is sent [9-614(1)(B)];

(2)  A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9-623 is available [9-614(1)(C)];

(3)  A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available [9-614(1)(D)];

(4)  A description of the debtor and the secured party [9-613(1)(A)];

(5)  A description of the collateral that is the subject of the intended disposition [9-613(1)(B)];

(6)  **The method of intended disposition** [9-613(1)(C)];

(7)  States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting [9-613(1)(D)]; and

(8)  States the time and place of a public disposition **or the time after which any other disposition is to be made** [9-613(1)(E)].

RSMo. §§ 400.9-614(1)(A)-(D); RSMo. §§ 400.9-613(1)(A)-(E) (emphasis added to the two items Defendants allege were omitted).

---

[7]  Defendants allege the financing of the Vehicle is a "consumer goods transaction" under the UCC. CC ¶¶ 12-15.

[8]  Section 400.914(A) incorporates the notice requirements set out in § 400.9-613(1), i.e., items (4) – (8) in the list below.

So long as a pre-sale notice includes these eight requirements, RSMo. § 400.9-614(2) declares that a "particular phrasing of the notification is not required." Section 9-614(3) nevertheless includes a "safe harbor form" with suggested language that "when **completed**, provides sufficient information." RSMo. § 400.9-614(3) (emphasis added). A notice tracking the safe harbor form is reasonable as a matter of law. *See, e.g., Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 98 (Mo. App. W.D. 2008) ("The legislature, in the midst of a statutory scheme designed to protect debtors from overreaching creditors, also codified what *is reasonable as a matter of law.*").[9]

Defendants' allegations that the Pre-Sale Notice is deficient because it does not state (i) "**the method of intended disposition**" (Item 6 above), and (ii) the time and place of a public disposition **or the time after which any other disposition is to be made**" (Item 8 above) (*see* CC ¶¶ 19-20) (emphasis added)) is incorrect as a matter of law. The Pre-Sale Notice unequivocally states that Commerce will "*sell the 12 FORD/FUSION 3FAHP0GA7CR415050 at a private sale sometime after 03/03/14.*" This language is sufficient as a matter of law because it is taken directly from the safe harbor form in RSMo. § 400.9-614(3) that when "completed" provides sufficient notice. *See First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 582 (Mo. Ct. App. 2013) (analyzing pre-sale notice and holding in multiple instances that a form that tracks the language of the safe harbor form provides sufficient notice as a matter of law).

_____

[9] If a notice is *not* "in the form of paragraph (3) [i.e., the 'safe harbor form'], law other than this article determines the effect of including information not required by paragraph (1)." RSMo. § 400.9-614(6). In such cases, courts turn to the general principles of statutory interpretation. *First Cmty. Credit Union*, 395 S.W.3d at 583. Statutory interpretation focuses on determining "the legislature's intent in enacting the statute and to give effect to that intent, as expressed in the words of the statute." *Id.* (citing *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909–10 (Mo. banc 2006)). "The intent of Section 400.9-614 is to 'apprise' the debtor receiving the notice of the details of the disposition so that the debtor may take appropriate action." *Id.* at 584. Here, even if the safe harbor form were to be disregarded, there is no question that Defendants were apprised of the method of disposition and the time after which disposition would be made, in accord with RSMo. § 400.9-613(1)(C), (E), and that is sufficient and "reasonable as a matter of law." *See Mancuso*, 254 S.W.3d at 98.

The statutory safe harbor form provides, in pertinent part, as follows:

> We have your (*describe collateral*), because you broke promises in our agreement.
> (*For a public disposition:*)
> We will sell (*describe collateral*) at public sale.  A sale could include a lease or license.  The sale will be held as follows:
> Date: _____
> Time: _____
> Place: _____
> You may attend the sale and bring bidders if you want.
> (*For a private disposition:*)
> We will sell (*describe collateral*) at private sale sometime after (*date*).

RSMo. § 400.9-614(3).  Commerce's Pre-Sale Notice contains the same language—Commerce completed the form to advise Defendants of the method of disposition (private sale) and the time after which the sale would be held:

```
    We have your 12 FORD    /FUSION        3FAHP0GA7CR415050
because of your broken promises in our agreement.
    For public disposition: N/A
We will sell the above described collateral at a public sale.
A sale could include a lease or license. The sale will be held
as follows:
Day and Date:
Time:
Place:
You may attend the sale and bring bidders if you want.
    For a private disposition:
We will sell the 12 FORD    /FUSION
3FAHP0GA7CR415050      at a private sale sometime after 03/03/14
```

Exhibit B (highlighting added).

Defendants also contend that the Pre-Sale Notice is deficient because it includes the statement:  "You may attend the sale and bring bidders if you want."  CC ¶ 20.  This allegation is meritless on its face because the complained of language is the *exact language* approved by the safe harbor form.  *See* RSMo. § 400.9-614(3); Exhibit B.  Nothing in Section 614, the Official Commentary, or Missouri law instructs or requires Commerce to remove the public sale portion of the safe harbor form from its notice when disposing of collateral through a private sale.  To the contrary, RSMo. § 400.9-614(3) specifically states that the safe harbor form is sufficient

"**when completed**." Moreover, Commerce's Pre-Sale Notice clearly informs Defendants that the public sale section of the notice does not apply to Defendants by including "N/A"—the common abbreviation for "not applicable"—after the section heading: "For public disposition." *See* Exhibit B.[10] Commerce also did not fill out the section related to public disposition of the Vehicle, but in contrast, did properly complete the subsequent section about selling the vehicle by private sale. *Id.* In short, this is not a case where Commerce provided ambiguous information as to whether the collateral would be sold at a public or private sale. *See Boulevard Bank v. Malott*, 397 S.W.3d 458, 464 (Mo. Ct. App. 2013) (bank's pre-sale notice stating that debtor's car would be sold at a "public/private sale" meant that "the Bank intended to sell his car in *either* a public or a private sale," and therefore "failed to identify the specific method by which it intended to dispose of the collateral.").

The Pre-Sale Notice provided all of the details of the private sale (including the method of sale and time after which the sale would occur) so that Defendants could take whatever action they deemed necessary to protect their interest in the Vehicle. That's all that's required under Missouri law. *See id.* at 463 ("The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner.") (citing *States Res. Corp. v. Gregory,* 339 S.W.3d 591, 596 (Mo. Ct. App. 2011)). The legislature has decreed what is sufficient, and whether there might be "better" ways

---

[10] Even if "N/A" had not been included after the Public Sale portion and instead left blank, the Notice clearly stated the method and time of disposition—a Private Sale to occur on or after March 3, 2014. The inclusion of "N/A" after the Public Sale heading only bolsters that clarity. *See, e.g., Meyhoeffer v. Wallace,* 792 So. 2d 851, 854 (La. App. 2 Cir. 7/11/01) (inclusion of "N/A" by section of lease agreement indicated that the section was "not applicable to the parties' intentions or agreement"); *Wiggam v. Assocs. Fin. Servs. of Ind., Inc.,* 677 N.E.2d 87, 92 (Ind. App. 1997) ("N/A" is "the universal shorthand rendition of the phrase 'not applicable'").

to state the notice is irrelevant. As indicated by the Court of Appeals for the Western District, the Court should not substitute its judgment (or that of Defendants) for what the legislature has already codified as reasonable as a matter of law. *See Mancuso*, 254 S.W.3d at 98 ("The legislature, in the midst of a statutory scheme designed to protect debtors from overreaching creditors, also codified what *is reasonable* as *a matter of law*. The trial court resisted the temptation to impose its own view of reasonableness on [the lender].").[11]

Defendants' Counterclaim premised on the Pre-Sale Notice fails as a matter of law and should be dismissed with prejudice.

2. Commerce's Post-Sale Notice Complies with Missouri Law.

Section 9-616(b) requires secured parties in consumer-goods transactions to send an "explanation" (i.e., a notice) to the debtors after selling their collateral. RSMo. § 400.9-616(b). This "explanation" must be in writing and include, *inter alia,* an explanation of "how the secured party calculated the surplus or deficiency." RSMo. § 400.9-616(a)(1). Section 9-616(c) provides that the "explanation" must also include the following six additional items in the following order: (1) the aggregate amount of obligations secured by the security interest; (2) the amount of proceeds of the disposition; (3) the aggregate amount of the obligations after deducting the amount of proceeds; (4) the amount and types of expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral, and attorneys' fees known to the secured party; (5) the amount of any credits, including rebates of interest or credit service charges; and (6) the amount of the surplus or deficiency. RSMo. § 400.9-616(c).

---

[11] Although "[a] notification that *lacks* any of the information set forth in [§ 400.9–614(1) ] is insufficient as a matter of law," § 400.9–614, cmt. 2 (emphasis added), and "[a] creditor is held to the requirement of strict compliance with these notice provisions," so that "[a]ny doubt about what constitutes strict compliance is resolved in the debtor's favor," *Mancuso*, 254 S.W.3d at 92 (citations omitted), Commerce's Pre-Sale Notice does not lack any information required. Indeed if "safe harbor" has any meaning at all, Commerce's compliance with the form inoculates it from attack.

Defendants' allegations that Commerce failed to fulfill the requirements of Section 616(a), (b) and (c) are simply (and inexplicably) false. *See* CC ¶ 24(a)-(b).[12] The Post-Sale Notice contains all of the information required by RSMo. § 400.9-616(c), and lists them in the proper order:



*See* Exhibit C. It also includes the *exact words* required by RSMo. § 400.9-616(a)(1)(C):



*See* Exhibit C; RSMo. § 400.9-616(a)(1)(C) ("'Explanation' means a writing that: . . . (C) States, **if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency**.") (emphasis added).

---

[12] Defendants' allegations regarding the inclusion of interest in the Post-Sale Notice are addressed in Section I.A.3., *infra*.

For these reasons, Defendants' Counterclaim based on allegations that the Post-Sale Notice did not include the required information, did not include that information in the correct sequence, or failed to include specific language regarding a surplus or deficiency, fails as a matter of law and should be dismissed with prejudice.

3.     Defendants' "Section 408.553 Improper Interest" Claim Fails.

Defendants also allege that Commerce violated RSMo. § 408.553 "by charging interest during the time after Defendants' . . . alleged defaults and before Commerce . . . obtained deficiency judgments against them," and based on this premise, they claim that the Pre-Sale and Post-Sale Notices were defective because the Notices included this supposedly improper interest. *See* CC ¶¶ 2, 25, 77-79.   These claims are not only legally deficient; Defendants' novel construction of Section 408.553 is absurd.   Defendants are effectively claiming that an event of default halts a lender's right to charge interest.   If that were the law, all defaulting borrowers on all loans in Missouri would be better off than non-defaulting borrowers, *and,* according to Defendants' view, all defaulting borrowers would have a claim against their lenders. Fortunately, this is not the law.

Section 408.553 restricts a lender's right to recover pre-judgment interest in consumer-loan transactions.   It limits a lender's right to recover interest in the period between default and judgment to the amount *allowed by the note* at the time judgment is entered—*i.e.,* contractual interest.  *See* RSMo. § 408.553 ("Upon default the lender shall be entitled to recover **no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment** together with interest thereafter at the simple interest equivalent of the rate provided in the contract.")  (emphasis added).  Section 408.553 does not, as Defendants' contend, eliminate a lender's ability to recover *any interest* (or charge

- 13 -

any interest) between the date of default and the date of judgment.

Commerce did not expand its recovery beyond its contractual entitlements and did not improperly charge pre-judgment interest in this case. The Installment Agreement signed by Defendants requires them to pay "$25,252.98 plus finance charges *accruing on the unpaid balance at the rate of 3.39% per year from the date of this Contract until paid in full.*" *See* Exhibit A (under heading "Sales Agreement") (emphasis added). The charge of $356.04 for interest accrued as of the sale date, as shown in the Post-Sale Notice, is based on the contractual interest rate of 3.39%. *See* Exhibit C. Likewise, the Notice properly reminds Defendants that "THE DEFICIENCY SHALL CONTINUE TO ACCRUE INTEREST UNTIL PAID." *See id*. Commerce is allowed to charge and recover those *contractual interest* amounts under Section 408.553.

Commerce anticipates Defendants will argue that Judge Dowd's concurring opinion in *Hollins v. Capital Sols. Investments I, Inc.* supports their interpretation of Section 408.553. *See* 477 S.W.3d 19, 27 (Mo. App. E.D. 2015) (J. Robert Dowd, concurring opinion). It does not. In *Hollins*, the loan documents required the plaintiff to pay a *total* (i.e., *inclusive* of interest) of $155 in five monthly installments. *Id.* at 21. After the plaintiff defaulted, the defendant filed a collection suit and obtained a default judgment in the amount of $912.50 ($124 in principal, a $40 late fee, and $729.90 in additional interest *not allowed by the loan documents*) plus costs. *Id.* at 21.[13] On appeal, the Court of Appeals for the Eastern District held that the debtor had delayed too long to set aside the default judgment. *Id.* at 26. Judge Dowd wrote a concurring

---

[13] The court of appeals noted that the interest rate (199.71%) appears "obscene and usurious"; it "acknowledged the seemingly hopeless situation in Hollins now finds herself as a result of the unlimited rates of interest allowed on a small unsecured consumer loans," and "while very sympathetic" as Ms. Hollins "now faces obscenely high repayment obligations from a $100 loan," the court found no legal basis to set aside a default judgment against Ms. Hollins. *Id.* at 21, 25-26.

opinion, stating in dicta that if the challenge to the default judgment had been timely it could have been successful—the award of $729.90 in interest from the date of default to the date of final judgment in the default judgment violated Section 405.553 because it constituted improper pre-judgment interest "on these types of loans."[14]  *Id.* at 29.  Not only is Commerce's loan not the type of loan at issue in *Hollins* (as discussed in footnote 14 below), Judge Dowd's dicta is not applicable to this case because—unlike the loan documents in *Hollins* which capped the total repayment obligation at $155—the Installment Agreement signed by Defendants specifically allows Commerce to charge and recover *contractual* interest at the rate of 3.39% per year on all unpaid balances until paid in full (which is about one-third the statutory pre-judgment interest rate provided in RSMo. § 408.020).[15]  *See* Exhibit A (under heading "Sales Agreement").

In short, Commerce did not violate Section 408.553 by seeking to recover *contractual* interest after default and before judgment that it is entitled to charge and recover on unpaid

---

[14] The "these types of loans" referred to by Judge Dowd were the small consumer loans governed by RSMo. § 408.500.  Characterizing the case as a "clear example of predatory lending," Judge Dowd's concurrence was expressly written "to express my concern that Section 408.500, which was designed for unsecured loans of five hundred dollars or less, has through the allowance of practically unlimited interest rates charged on these loans allowed the companies that provide these loans to use the court system to collect amounts from debtors far beyond anything that could be deemed consistent with the statute's original purpose."  477 S.W. 2d. at 27.  As Judge Dowd noted, the lender had sat on its hands for two years, garnishing Ms. Hollins before pursuing legal action, and "[a]t the time Hollins filed her brief, **she had paid $3,592.35 on a $100 loan**."  *Id.* at 28-29 (emphasis added).  And other putative class members had fared even worse: "Class member, S.S., took out an $80 loan from CSI.  A judgment was entered against her for $2137.68; the garnishment is still pending.  So far, $5346.41 has been collected, and a balance of $19,643.48 remains."  *Id.* at 27.

After reviewing the history of § 408.500, Judge Dowd concluded with a direct attack on that statute:

> I believe Section 408.500 has … been gutted of its original intended purpose…. Currently, a person, who seeks relief in the form of a loan under Section 408.500, assumes a small debt that, in a relatively short period of time, can become an insurmountable debt. … [A]s can be seen at the beginning of this concurrence, the amount the lenders are collecting or are attempting to collect on these types of loans shocks the conscience.

477 S.W. 2d at 28-29 (Dowd, J., concurring).  Even if the motion to set aside the default had been timely, and the post-default/pre-judgment interest limited by the loan cap of $155, Judge Dowd observed that the *post-judgment* rate would apply thereafter, and "debtors still may have ended up owing insurmountable amounts…."  *Id.* at 29, n. 1.

[15] Section 408.020 provides:  "Creditors shall be allowed to receive interest at the rate of nine percent per annum, *when no other rate is agreed upon*, for all moneys after they become due and payable, on written contracts…."  RSMo. § 408.020 (emphasis added).  Harmonizing § 408.020 with § 408.553, Commerce could not charge the statutory 9% interest after default, but is limited to its contractual amount.

balances under the express terms of the Installment Agreement. To hold otherwise, would be contrary to the plain and unambiguous terms of Section 408.553, contrary to basic principles of contract law, and would turn lending practices on their head. It would also—ironically—result in a Court-approved post-sale notice procedure that fails to accurately inform consumers of their contractual liability (i.e., where secured parties are not allowed to set forth the amount of contractual interest accruing on the deficiency), which would directly contravene the stated policy and purpose behind the UCC post-sale notice requirement. *See* RSMo. § 400.9-616 cmt. 2 ("This section reflects the view that, in every consumer-goods transaction, the debtor or obligor **is entitled to know the amount of a surplus or deficiency and the basis upon which the surplus or deficiency was calculated**.") (emphasis added). As a matter of law, Commerce did not violate Section 408.553, and Commerce's Pre-Sale and Post-Sale Notices are not deficient. Count II, and the portion of Count I based on these allegations, should be dismissed with prejudice.

> **B.** **Defendants' Credit Damage Claims Should Be Dismissed Because (1) They Are Dependent Upon the Pre-Sale and Post-Sale Notice Claims, and (2) In Any Event They Are Preempted by the Fair Credit Reporting Act.**

Defendants' claim for damage to their credit is wholly dependent on their claims regarding the Pre-Sale and Post-Sale Notices, and therefore fails for the same reasons those claims are flawed, as discussed above.

Defendants' claims for credit damage based on alleged inaccurate reporting by Commerce should also be dismissed because they are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Section 1681h(e) and Section 1681t(b)(1)(F) of the FCRA preempt *all* state causes of action (statutory and common law) that are premised on the reporting on inaccurate information (i.e., the subject matter covered by Section 1681s-2(a)(1)). *See, e.g., Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011); *Macpherson v. JPMorgan*

*Chase Bank, N.A.*, 665 F.3d 45, 47 (2nd Cir. 2011) (holding that "[the plaintiff's] basic premise is false: the 1996 provision, § 1681t(b)(1)(F), is not in conflict with § 1681h(e), and § 1681h(e) does not insulate state tort actions from preemption."); *Cathcart v. Am. Express*, No. 4:11CV2125 JAR, 2012 WL 5258820, *4-5 (E.D. Mo. Oct. 23, 2012); *Drew v. Capital One Bank (USA) N.A.*, No. 1:16CV00095 SNLJ, 2016 WL 3402540, at *2 (E.D. Mo. June 21, 2016) ("Thus, because Plaintiff's claim is based on his assertion that Capital One furnished inaccurate information about him to certain credit reporting agencies, it is preempted and governed by the FCRA.").

Here, Defendants allege they were damaged because Commerce allegedly reported inaccurate information about them to consumer and credit reporting agencies that was defamatory, slanderous, libelous, and an invasion of privacy. CC ¶¶ 34-37. These allegations clearly implicate the subject matter covered by Section 1681s-2(a)(1) of the FCRA and are therefore explicitly preempted and should be dismissed with prejudice. *See* 15 U.S.C. § 1681h(e); 15 U.S.C. § 1681t(b)(1)(F); *Purcell*, 659 F.3d at 623; *Macpherson*, 665 F.3d at 47; *Cathcart*, 2012 WL 5258820 at *4-5; *Drew*, 2016 WL 3402540 at *2. [16]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Commerce Bank respectfully requests the Court enter its Order dismissing Defendants' Counterclaim with prejudice and granting such other and further relief as the Court deems necessary and proper.

---

[16] Preemption is important because there is no private right of action for violations of Section 1681s-2(a). *See Drew*, 2016 WL 3402540 at *6 ("The FCRA does not provide an individual with a private right of action against a furnisher of credit information for reporting inaccurate credit information.") In fact, Section 1681s-2(c)(1) specifically bars private claims for violation of Section 1681s-2(a).

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Edwin G. Harvey
      Edwin G. Harvey, #30565
      David M. Mangian, #61728
      One US Bank Plaza
      St. Louis, Missouri 63101
      314-552-6000
      FAX 314-552-7000
      eharvey@thompsoncoburn.com
      dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

      /s/ Edwin G. Harvey

Electronically Filed - Carroll Circuit Division - September 28, 2016 - 03:14 PM

3017989　　　92239-1

MO-102 10/31/2010

## Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CHUCK ANDERSON FORD INC<br>1910 W. JESSE JAMES RD<br>EXCELSIOR SPRINGS MO 64024 | BEVERLY J WILLIAMSON<br>484 GRAND AVE<br>CARROLLTON MO 64633<br><br>REBECCA PALMER<br>484 GRAND AVE<br>CARROLLTON MO 64633 | No.<br>Date | 07/31/2012 |

☐ Business, commercial or agricultural purpose Contract.

### Truth-In-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $2500.00 |
|---|---|---|---|---|
| 3.39 % | $ 2788.38 | $ 25252.98 | $ 37981.36 | $ 30481.36 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 388.63 | MONTHLY BEGINNING 09/14/2012 |
| N/A | $ N/A | N/A |
| N/A | $ N/A | N/A |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If you fail to pay your scheduled payment, in full, within 15 days of its due date, you agree to pay: 1. a late charge of $5.00, if the amount of your scheduled payment is $25.00 or less; 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

Prepayment. If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2013 FORD | | FUSION | 4DR SDN S FWD | 3FA6P0G67DR415058 | 214 |

☒ New ☐ Used ☐ Demo　　Other: N/A

### Description of Trade-in

N/A

### Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: ___N/A___

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

### Itemization of Amount Financed

| | |
|---|---|
| a. Price of Vehicle, etc. (incl. extras tax of | $ 22259.73 |
| b. Service Contract, paid to: | |
| CENTURY AUTOMOTIVE SER | $ 1695.00 |
| c. Cash Price (a+b) | $ 23954.73 |
| d. Trade-in Allowance | $ 0000.00 |
| e. Less: Amount owing, paid to (includes m): | |
| BOONE COUNTY NATIONAL | $ 10938.25 |
| f. Net trade-in (d-e; if negative, enter $0 here and enter the amount on line n) | $ 0.00 |
| g. Cash payment | $ 1500.00 |
| h. Manufacturer's rebate | $ 1000.00 |
| i. Deferred down payment | $ N/A |
| j. Other down payment (describe) | |
| N/A | $ N/A |
| k. Down Payment (f+g+h+i+j) | $ 2500.00 |
| l. Unpaid balance of Cash Price (c-k) | $ 21454.73 |
| m. Financed Trade-in balance (see line f) | $ 2998.25 |
| n. Paid to public officials, including filing fees | $ N/A |
| o. Insurance premiums paid to insurance company (incl ) | $ N/A |
| p. Administrative Fee | $ 100.00 |

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS ADMINISTRATIVE FEE IS NOT REQUIRED BY LAW.

| | | |
|---|---|---|
| q. | N/A | $ N/A |
| r. | AMERICAN HERITAGE INS CO | $ 700.00 |
| s. | N/A | $ N/A |
| t. | N/A | $ N/A |
| u. | N/A | $ N/A |
| w. Total Other Charges/Amts Paid (n thru v) | $ 3798.25 |
| y. Amount Financed (l+w) | $ 25252.98 |

We may retain or receive a portion of any amounts paid to others.

### Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

| Credit Life | | |
|---|---|---|
| ☐ Single ☐ Joint ☐ None | | |
| Premium $ | N/A | Term N/A |
| Insured | N/A | |

| Credit Disability | | |
|---|---|---|
| ☐ Single ☐ Joint ☐ None | | |
| Premium $ | N/A | Term N/A |
| Insured | N/A | |

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A _____ DOB _____
By: _____

N/A _____ DOB _____
By: _____

N/A _____ DOB _____
By: _____

You have the right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.

Property Insurance. You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose; that you may do so at any time after the date of this loan; that you have not cancelled any existing insurance on your Property (if you owned it before this loan; and that it has not been cancelled). If you simply because you did not purchase your insurance through us, YOU ARE NOT REQUIRED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Add'l and Cov. $ N/A

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

☐ Single-Interest Insurance. You must purchase single-interest insurance as part of this sale transaction. You must purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from us through us, you will pay $ N/A for N/A of coverage.

### Sales Agreement

Payment. You promise to pay us the principal amount of $ 25252.98 plus finance charge accruing on the unpaid balance at the rate of 3.39 % per year from the date of this Contract until paid in full. Finance charges accrue on a 365 day basis.

You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Down Payment. You also agree to pay or apply to this Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the itemization of Amount Financed.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

Returned Payment Charge. If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $ N/A.

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described items and that you have received and reviewed a copy of the contract(s) for the product(s), if no coverage or charge is given for an item, you have declined any such coverage we offered.

| ☒ Service Contract | |
|---|---|
| Term | 60 MONTHS / 75000 MILES |
| Price | $ 1695.00 |
| Coverage | |

| ☒ Gap Waiver or Gap Coverage | |
|---|---|
| Term | 72 MONTHS |
| Price | $ 700.00 |
| Coverage | |

| ☐ N/A | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

*Beverly J. Williamson* 07/31/2012
*Rebecca J. Palmer* 07/31/2012

### Signature Notices

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

### Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

*Beverly J. Williamson* 07/31/2012
BEVERLY J WILLIAMSON　Date

*Rebecca Palmer* 07/31/2012
REBECCA PALMER　Date

Notice to the Buyer. Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the time price differential.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer
*Beverly J. Williamson* 07/31/2012
BEVERLY J WILLIAMSON　Date

*Rebecca Palmer* 07/31/2012
REBECCA PALMER　Date

Seller
By: _____ 07/31/2012　Date

*[This area intentionally left blank.]*

### Assignment

Assignment. This Contract and Security Agreement is assigned to COMMERCE BANK _____ the Assignee, under ☐ _____ . This assignment is made ☐ under the terms of a separate agreement made between the Seller and Assignee. ☐ under the terms of the Assignment by Seller section on page 2. ☐ This Assignment is made with recourse.

Seller
By: _____ 07/31/2012　Date

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 2010, 2010

**EXHIBIT A**

## Additional Terms of the Sales Agreement

Definitions. "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the *Description of Property* section. "Property" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

Purchase of Property. You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

General Terms. The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

Prepayment. You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

Governing Law and Interpretation. This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

Name and Location. Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

Telephone Monitoring and Calling. From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

Default. You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to make a payment as required by this Contract.
- We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Remedies. If you default on this Contract, we may exercise the remedies provided by law and this Contract after we have given you any notice and opportunity to cure your default that the law requires. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such *other period of time* as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

Obligations Independent. Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

*Warranty.* Warranty information is provided to you separately.

## Security Agreement

Security. To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

Duties Toward Property. By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

Agreement to Provide Insurance. You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

Gap Waiver or Gap Coverage. In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

Emissions Inspection Notice. If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the Vehicle within 10 days, provided it has no more than 1,000 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

By: Date

## Assignment by Seller

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract.

(Separate Agreement. If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

- This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
- The statements contained in this Contract are true and correct.
- The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
- This sale was completed in accordance with all applicable federal and state laws and regulations.
- This Contract is valid and enforceable in accordance with its terms.
- The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
- This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
- A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
- The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
- Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of nonpayment or nonperformance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compromise or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

Unless otherwise indicated on page 1, this Assignment is without recourse.

With recourse. If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Case 4:18-cv-00513-DGK Document 1-2 Filed 07/06/18 Page 94 of 222

Electronically Filed - Carroll Circuit Division - September 28, 2016 - 03:14 PM

# 🌐 Commerce Bank

P.O. Box 419248   KCREC
Kansas City, Mo. 64141-6248

02/11/14

BEVERLY J      WILLIAMSON
404 GRAND AVENUE CIR

CARROLLTON        MO    64633-2231

### NOTICE OF OUR PLAN TO SELL PROPERTY

Subject:  33900100922390001

   We have your 12 FORD    /FUSION        3FAHP0GA7CR415050
because of your broken promises in our agreement.
   For public disposition: N/A
We will sell the above described collateral at a public sale.
A sale could include a lease or license. The sale will be held
as follows:
Day and Date:
Time:
Place:
You may attend the sale and bring bidders if you want.
   For a private disposition:
We will sell the 12 FORD    /FUSION
3FAHP0GA7CR415050    at a private sale sometime after 03/03/14
We will file for a repossession title 10 days from the date of
this letter. A sale could include a lease or license.
   The money that we get from the sale (after paying our costs)
may reduce the amount you owe. If we get less money than you
owe, you may still owe us the difference. If we get more money
than you owe, you will get the extra money, unless we must pay
it to someone else.
   You can get the property back at any time before we sell it
by paying us the full amount you owe (not just the past-due
payments), including our expenses. To learn the exact amount
you must pay, call us at 800-892-7100.
   If you want us to explain to you in writing how we have
figured the amount that you owe us, you may call us at 800-
892 7100 ext. 2248 or write us at P.O. Box 419248, Kansas City,
Mo. 64141-6248 and request a written explanation. (We will
charge you $25.00 for the explanation if we sent you another
written explanation of the amount you owe us within the last
six (6) months.)
   If you need more information about the sale call us at 800-
892-7100 or write us at P.O. Box 419248, Kansas City, Mo. 64141.
   We are sending this notice to the following other people who
have an interest in the 12 FORD    /FUSION
3FAHP0GA7CR415050    or who owe money under your agreement.
Names of all other debtors and obligors, if any:
   REBECCA PALMER
   400 W 2ND ST

   NORBORNE           , MO 54552

Kate Johnson
Repo Specialist

EXHIBIT
B

IBM530 10/11

**⊕ Commerce Bank**

P.O. Box 419248 KCREC-10
Kansas City, Mo. 64141-6248
1-877-785-1393

04/18/14

BEVERLY J        WILLIAMSON              33900100922390001
404 GRAND AVENUE CIR                     3FAHP0GA7CR415050
                                         12
CARROLLTON      MO    64633-2231         FORD    /FUSION

NOTICE OF SALE OR DISPOSITION OF COLLATERAL AND DEFICIENCY DUE

The above referenced unit was sold at a private sale on 03/20/14
as a result of the default on your retail contract.

Proceeds from the sale (or insurance check if deemed a total loss)
did not satisfy the balance on your account and a deficiency exists
in the amount of:      $13,334.76

THE DEFICIENCY AMOUNT HAS BEEN CALCULATED AS FOLLOWS:
Principal Balance Prior to Sale:          $26,121.74
Interest/LF/PPP as of Sale Date: 03/20/14     $356.04
Less Sales Proceeds:                      $11,400.00
Sub-total:                                $15,077.78
Plus Expenses of Repossession and Sale:
Title Fee:                                $45.00
Storage/Legal Expenses:                   $
Repossession Fee:                         $425.00
Cleanup/Detail Fee:                       $75.00
Sales Fee:                                $105.00
Transportation/Tow Fee:                   $75.00
Condition Report Fee:                     $
Resale/Repair Fee:                        $90.00
Notification Fee:                         $12.98
Less Credits:
Credit Life Refund:                       $
Credit Disability Refund:                 $
Extended Warranty Refund:                 $
GAP Insurance Refund:                     $
Payments/Insurance Payments:               $2,571.00

TOTAL DEFICIENCY OWED AS OF: 03/20/14      $13,334.76

If applicable, future debits, credits, charges, including
additional credit service charges or interest, rebates, and
expenses may affect the amount of the deficiency.

YOU ARE RESPONSIBLE FOR THE DEFICIENCY OWED. THE DEFICIENCY SHALL
CONTINUE TO ACCRUE INTEREST UNTIL PAID. Please do not delay in
contacting the Recovery Department at either the toll free number or
the address listed above to make appropriate repayment arrangments
or for further information concerning the above stated transaction.

Sincerely,
Recovery Department

EXHIBIT C

IBM530 10/11

Electronically Filed - Carroll Circuit Division - September 28, 2016 - 03:14 PM

**IN THE  8TH JUDICIAL CIRCUIT  COURT,  CARROLL COUNTY  , MISSOURI**

Commerce Bank N.a.,

   Plaintiff,

        vs.

Beverly Williamson Et Al,

   Defendant.

Case Number:  16CR-AC00091-01

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Beverly J Williamson, Defendant, in the above-styled cause.

/s/ Evan C. Murphy

Evan Chouteau Murphy
Mo Bar Number: 58386
Attorney for Defendant
110 E. Lockwood
St. Louis, MO 63119
Phone Number: (314) 963-9000
murphy@onderlaw.com

### Certificate of Service

I hereby certify that on  September 30th, 2016  , a copy of the foregoing was sent through the

Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery,

electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Evan C. Murphy

Evan Chouteau Murphy

**IN THE  8TH JUDICIAL CIRCUIT  COURT,      CARROLL COUNTY      , MISSOURI**

Commerce Bank N.a.,

      Plaintiff,

                vs.

Beverly Williamson Et Al,

      Defendant.

Case Number:  16CR-AC00091-01

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Rebecca Ann Palmer, Defendant, in the above-styled cause.

        /s/ Evan C. Murphy
        Evan Chouteau Murphy
        Mo Bar Number: 58386
        Attorney for Defendant
        110 E. Lockwood
        St. Louis, MO 63119
        Phone Number: (314) 963-9000
        murphy@onderlaw.com

### Certificate of Service

I hereby certify that on _____September 30th, 2016_____, a copy of the foregoing was sent through the

Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery,

electronic mail or U.S. mail postage prepaid to their last known address.

        /s/ Evan C. Murphy
        Evan Chouteau Murphy

## EIGHTH JUDICIAL CIRCUIT COURT
## CARROLL COUNTY, MISSOURI

Commerce Bank,

      Plaintiff/Counterclaim-Defendant,

v.

Beverly J. Williamson and
Rebecca Palmer,

      Defendants/Counterclaim-Plaintiffs.

Case No. 16CR-AC00091-01

Division 1

### Response to Oppose Commerce Bank's
### Motion to Dismiss the Amended Counterclaim

Counterclaim-Plaintiffs ("Counterclaimants"), through their under-signed counsel, oppose Commerce Bank's ("Commerce") motion to dismiss their amended counterclaim:

### I. Introduction

The parties agree that "determining the deficiency of the presale notices and post-sale notices resolves all class members' claims." *See* Commerce's Memo, p. 3. The parties also agree the ***facial*** sufficiency of the presale and post-sale notices may be determined on a motion to dismiss because there is no dispute on the notices given. *Id.* at 6. The Court should deny Commerce's motion to dismiss because the notices are insufficient as a matter of law on their face, and even if they were not, Commerce cannot show on a motion to dismiss that everything stated in its notice is accurate. *Boulevard Bank v. Malott*, 397 S.W.3d 458, 466 (Mo. App. 2013) ("The notice must be correct in all the required information.").

1

## II. Legal Standard

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the [counterclaim]." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). The allegations in the counterclaim are treated as true and construed liberally for the counterclaimant. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). If the counterclaim "sets forth any set of facts that, if proven, would entitle the [counterclaimant] to relief, then the [counterclaim] states a claim." *Id.* A counterclaim "cannot be dismissed for failure to state a claim unless it appears that the [counterclaimant] can prove no set of facts in support of the claim that would give a right to relief." *Thomas v. B.K.S. Development Corp.*, 77 S.W.3d 53, 58 (Mo. App. 2002).

Counterclaimants are entitled to relief if they can show the notice provisions of the UCC were violated. *Boulevard Bank*, 397 S.W.3d at 467 ("§ 400.9-625(c)(2) provides a minimum, statutory, damage recovery for a debtor independent of a showing of damage. It is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.") (internal quotes omitted); *Saving v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated…."); *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 385-86, 534 S.E.2d 688 (2000) ("In light of the undisputed fact that Creditor failed to give the required notice to Debtor, the trial judge erred in denying Debtor's

2

motion for partial summary judgment on liability in the Article 9 cause of action."); *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F.Supp.2d 1343, 1352-53 (S.D.Fla. 2007) (granting summary judgment because "Defendant's notification lacks some of the required elements of [the UCC], it fails as a matter of law and Plaintiff is entitled to statutory damages."). Here, dismissal is improper because Commerce cannot show Counterclaimants can prove no set of facts to support a claim that would give a right to relief.

### III. Analysis

Missouri has for over 100 years looked upon repossessions and deficiency judgments with disfavor, and requires strict compliance with the statutes. Under the common law established in Missouri, when a buyer defaulted on his or her agreement with a seller, the seller could elect from two remedies: (1) let the debtor keep the collateral and sue for breach of contract; or (2) repossess the collateral, rescind the agreement and keep what has already been paid. *Laclede Power Co. v. Estate of Ennis Stationery Co.*, 79 Mo. App. 302, 307 (Mo.App.1899); *see also Keystone Press v. Bovard*, 153 S.W.2d 130, 131 (Mo.App.1941). The remedies for a creditor changed when Missouri adopted the UCC in 1963. In derogation of the long standing common law, the UCC allowed deficiency judgments after repossession of collateral. *Gateway Aviation, Inc. v. Cessna Aircraft*, 577 S.W.2d 860, 863 (Mo.App.1978) ("Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the

3

relevant statutes"). Since *Gateway*, the Missouri courts have uniformly required "strict compliance with statutory requirements" and have held that "[a]ny doubt as to whether there has been compliance is to be resolved in favor of the debtor." *States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. App. 2011). Commerce's motion to dismiss must be denied because it has failed to strictly comply with the statutory requirements when resolving all doubts about compliance in Counterclaimants' favor.

### A. Commerce is not entitled to dismissal because its presale notice fails to strictly comply with the UCC when resolving all doubts in Counterclaimants' favor.

Commerce argues dismissal is appropriate because "the Pre-Sale Notice provision at issue tracks the language of the safe harbor form in RSMo. § 400.9-614(3)[.]" *See* Commerce's Memo, p. 7. This is untrue. Commerce failed to use the safe-harbor form language for the requirement it provide a "description of any liability for a deficiency of the person to which the notification is sent," § 400.9-614(1)(B), and deviated again when stating money from the sale "may" only reduce the amount owed. Although the public sale language used by Commerce is from the safe-harbor form, Commerce failed to properly complete the safe-harbor form when it included public sale language despite purportedly selling the vehicle by private sale. *See* § 400.9-614, comment 3 ("paragraph (3) specifies a safe-harbor form that, ***when properly completed***, satisfies paragraph (1)"). Commerce's deviation from the safe-harbor form and failure to properly complete it renders its presale notice insufficient as a matter of law and forecloses Commerce's motion to dismiss.

4

1. ***Commerce is not entitled to dismissal because its presale notice fails to specifically and unambiguously describe a consumer's liability for a deficiency.***

Under section 400.9-614(1)(B), Commerce's presale notice had to provide a "description of any liability for a deficiency of the person to which the notification is sent." *See* Commerce's Memo, p. 7. The safe-harbor form suggests the presale notice provide one of two alternatives:

> a. If we get less money than you owe, you ***will*** still owe us the difference.
>
> b. If we get less money than you owe, you ***will not*** still owe us the difference.

*See* § 400.9-614(3). Commerce's presale notice states: "If we get less money than you owe, you ***may*** still owe us the difference." *See* Exhibit B to Commerce's Memo. "May" is a word of many meanings, but in this context, it was "used to indicate possibility." *See* http://www.merriam-webster.com/dictionary/may. The two possibilities are the consumer: (1) ***will*** still owe the difference; or (2) ***will not*** still owe the difference. *See, e.g.,* § 400.9-614(3). By using "may," Commerce's presale notice failed to inform Counterclaimants of their liability for a deficiency.

The Court in *Boulevard Bank* dealt with a similar defect in a presale notice. The presale notice requirement at issue in *Boulevard Bank* was that the presale notice "must 'state the method of intended disposition' of the collateral securing a loan." 397 S.W.3d at 463 [brackets omitted]. The bank's presale notice stated "[t]he collateral will be sold at a public/private sale if the Total

Amount Due is not received by April 9, 2009." *Id.* The Court of Appeals held "by referring to a 'public/private sale,' the Bank told [Defendant] nothing more than that the property would be sold. The phrase 'public/private' added nothing, because it excluded nothing." *Id.* at 465. The Court of Appeals noted even if all the required information was in the presale notice, "the notice failed to inform Malott, *specifically and unambiguously*, that a private sale would in fact be conducted." *Id.* at 464 fn. 5 (emphasis added). "By failing to inform [Defendant] whether it intended to sell the repossessed car by way of a public sale, or instead by means of a private sale, the Bank failed to notify him of 'the method of intended disposition' of the vehicle, as required by §§ 400.9-613(1)(C) and .9-614(1)(A)." *Id.* at 466.

The same logic used in *Boulevard Bank* applies here. Commerce's presale notice states Counterclaimants "may" be liable for a deficiency. The phrase "may" added nothing because it excluded nothing and provided no basis for Counterclaimants to determine whether they would be liable for a deficiency. The law here requires specificity if consumers are to be clearly alerted of the need to protect their interests. Consumers cannot be left guessing. *Id.* at 465 n. 6 ("the law will not put the debtor in the perilous position of interpreting a vague notice"). By failing to inform Counterclaimants whether Commerce would hold them liable for a deficiency if the sale of the car netted less than Counterclaimants owed, Commerce failed to notify Counterclaimants of the

6

"description of any liability for a deficiency of the person to which the notification is sent," as required by section 400.9-614(1)(B). *See, e.g., Gregory*, 339 S.W.3d at 598 ("the October 20 Letter failed to provide a 'description of any liability for a deficiency' as required by section 400.9-614(1)(B). The letter merely states, 'The proceeds from the sale will be applied to your loan.'"). The Court should deny Commerce's motion to dismiss because its presale notice is defective.

### 2. Commerce is not entitled to dismissal because its presale notice misleads consumers by stating money received from the sale "may" reduce the amount owed.

Paragraph (5) of section 400.9-614 provides that

> [a] notification in the form of paragraph (3) is sufficient, even if it includes errors in information not required by paragraph (1), *unless the error is misleading with respect to rights arising under this article* [.]

(Emphasis added.). Even if Commerce's presale notice was in the safe-harbor form provided in 400.9-614(3)—it is not—the presale notice misleads consumers by stating "The money that we get from the sale (after paying our costs) *may* reduce the amount you owe." *See* Exhibit B to Commerce's Memo. The safe-harbor form suggests the presale notice state: "The money that we get from the sale (after paying our costs) *will* reduce the amount you owe." That is because money from the sale will always reduce the amount owed and cannot increase it. Section 400.9-615. The Court should deny Commerce's motion to dismiss because its presale notice is defective.

7

### 3. Commerce is not entitled to dismissal because its presale notice fails to specifically and unambiguously state the intended method of disposition.

Commerce argues it has complied with the requirement that its presale notice "state the method of intended disposition" (9-613(1)(C)) because the presale notice states Commerce will "sell the 12 FORD/FUSION 3FAHP0GA7CR415050 at a private sale sometime after 03/03/14." Counterclaimants agree this language tracks the safe-harbor form and would be sufficient in isolation, but Commerce's problem is that its presale notice also states Commerce "will sell the above described collateral at a public sale." By doing so, Commerce failed to properly complete and invoke the safe-harbor form. *See* § 400.9-614, comment 3 ("paragraph (3) specifies a safe-harbor form that, **when properly completed**, satisfies paragraph (1)"). The *Boulevard Bank* court already found a presale notice legally insufficient by including public sale language even if had all the required information for a private sale. 397 S.W.3d at 463–66.

Commerce suggests its presale notice "clearly informs [Counterclaimants] that the public sale section of the notice does not apply to [Counterclaimants] by including 'N/A'—the common abbreviation for 'not applicable'—after the section heading: 'For public disposition.'" Although Commerce and its attorney's might think the notice is clear, the notice must be viewed through an unsophisticated consumer: "A creditor is held to the requirement of strict compliance with these notice provisions. Any doubt about what constitutes strict

compliance is resolved in the debtor's favor." *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo. App. 2008). Viewed in that light, it is doubtful that an unsophisticated consumer would know "For public disposition" was a "header" because the font and typeface are the same as the rest of the notice, which would also make it unclear that "N/A" applied to everything following it until the next inconspicuous "header" for a private disposition.

The "Uniform Commercial Code does not permit the creditor to leave the debtor guessing regarding the type of sale contemplated." *Boulevard Bank*, 397 S.W.3d at 465. The formatting and inclusion of the public sale language does just that, it leaves consumers guessing regarding the type of sale contemplated, especially when resolving all doubts in their favor. The Court should deny Commerce's motion to dismiss because its presale notice is defective.

### B. Commerce is not entitled to dismissal because its post-sale notice violates the UCC when resolving all doubts in Counterclaimants' favor.

Under the UCC a post-sale notice must be sent to consumers that "States, if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency." Section 400.9-616(a)(1)(C). If the deficiency would not be affected by future interest, rebates and expenses, then there would be no need to make this disclosure because it would be inapplicable. However, if the deficiency might be affected by future interest, rebates and expenses, a secured party could comply with the statute by stating:

9

> Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency.

Commerce argues it has complied with this requirement because its post-sale notice states:

> "If applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency."

*See* Commerce's Memo, p. 12. Commerce's interpretation ignores the primary rule of statutory construction: "to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011). Several syntactic and grammatical reasons belie Commerce's interpretation that the legislature intended for a secured party to send a post-sale notice that states "if applicable" before the disclosure.

First, if the legislature put "if applicable" inside parentheses, it would be absurd to assume the legislature would have intended for a secured party to state "(If applicable) that future debits, credits…." Although the legislature did not use parentheses, they used commas for the same purpose: to create a parenthetical. Chicago Manual of Style § 6.24 (16th ed. 2010) ("If only a slight break is intended, commas should be used to set off a parenthetical element inserted into a sentence as an explanation or comment."). The parenthetical "if

10

applicable" was a conditional clause that modified the word preceding it: "states" (i.e., if applicable, state that).

The use of "if applicable" to modify the verb "states" is seen in common usage and shows why Commerce's interpretation of § 400.9-616(a)(1)(C) is flawed:

- "This Court also instructed the jury that: 'If you reach a certain point in the verdict, there is a line for you to state, if applicable, the amount of compensatory damages that you have found.'" *US Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, No. 13-CV-215 (N.D.W. Va. Feb. 9, 2016). Using Commerce's interpretation would yield the absurd result that the court was instructing the jury to literally state something like this: "If applicable, $1,000 in compensatory damages."

- "The Third Substituted Complaint must state, if applicable, each Plaintiff's place of incarceration and institutional number." *Edwards v. Byrd*, No. 10-CV-02042 (E.D. Ark. June 21, 2011). The court was not instructing the plaintiffs to literally plead "If applicable, Plaintiff was incarcerated in Smith Prison with institutional number 5," but Commerce's flawed statutory construction would suggest that interpretation.

The use of "if applicable" as a parenthetical, denoted with commas, that modifies the preceding word or phrase is also seen throughout Missouri statutes and opinions and bolsters the flaws in Commerce's post-sale notice:

An identification of any business, including, if applicable, the state of incorporation or registration in which an applicant or licensee or an applicant's or licensee's spouse or children have an equity interest. § 313.945.1(3) (if applicable modifies "including").

Number of gallons purchased and charged sales tax, if applicable, as a separate item. § 142.824.1(6) (if applicable modifies "charged sales tax").

> A person commits the crime of leaving the scene of a shooting when, being in possession of a firearm or projectile weapon as defined in section 571.010, such person discharges such firearm or projectile weapon and causes injury or death to another person and such person, knowing that he has caused such injury or death, leaves the place of the shooting without giving his name, address, and driver's license number, if applicable, to a law enforcement officer. § 577.068.1 (if applicable modifies "driver's license number").

> That act, if applicable, would supersede any right plaintiff might otherwise have had to maintain an action at common law. *Walton v. United States Steel Corporation*, 362 S.W.2d 617, 620 (Mo. Banc 1962) (if applicable modifies "act").

> In *Bloemer,* we stated that the compliance with contract specifications defense, if applicable, acts as 'a complete defense to strict liability and negligence claims based on defective design.'" *Hopfer v. Neenah Foundry Co.*, 477 S.W.3d 116, 125 (Mo. App. 2015) (if applicable modifies "contract specifications defense").

> We assume any such request, if applicable, must be made before the hearing commences, as in Rule 73.01. *State v. Triplett*, 355 S.W.3d 543, 550 (Mo. App. 2011) (if applicable modifies "request").

Second, if the legislature intended for a secured party to send a post-sale notice that states "if applicable" before the requisite disclosure, it would have deleted the word "that" before "future debits," so the disclosure would read "If applicable, future debits…" instead of "If applicable, that future debits…." However, because "if applicable" was a parenthetical conditional clause to be omitted from the disclosure, it makes sense the statute included the word "that" where it did: a post-sale notice is "a writing that: … States [] ***that*** future debits, credits…."

Finally, Commerce's interpretation would defy the purpose of the post-sale notice statute. The legislature intended for the post-sale notice to disclose

whether a deficiency would be affected by future interest, rebates and expenses. § 400.9-616(a)(1)(C). Commerce's post-sale notice discloses nothing because it leaves a consumer guessing when it would be applicable that a deficiency might be affected by future interest, rebates and expenses. The "law will not put the debtor in the perilous position of interpreting a vague notice." *Boulevard Bank,* 397 S.W.3d at 465 n. 6. The Court should deny Commerce's motion to dismiss because its post-sale notice is legally insufficient.

### C. Commerce's improper interest rendered its presale and post-sale notices defective because it caused amounts stated in the notices to be artificially inflated.

Commerce does not dispute that if § 408.553 halted the accrual of interest from the time of default until a judgment was entered that its presale and post-sale notices were defective. Rather, Commerce argues Counterclaimants construction of § 408.553 is absurd because it would allow non-defaulting borrowers to be in a better position that defaulting borrowers. Even if this speculative policy argument were true, Counterclaimants' construction comports with the aim of § 408.553 to protect consumers: it would prevent lenders from abusing consumers by sitting on their hands until closer to the expiration of the statute of limitations before pursuing legal action, so an unknowing consumer racks up more debt through accrued interest. *Hollins v. Capital Sols. Investments I, Inc.*, 477 S.W.3d 19, 28–29 (Mo. App. June 2, 2015) (Dowd, J. and Gaertner, J., concurring).[1]

---

[1] Although called a concurring opinion, it was an opinion by two of the three judges on the panel (i.e., a majority) and the "decision of the majority of the judges of a division of this Court shall be the decision of the court[.]" Rule 84.15.

13

Commerce is correct Counterclaimants rely on *Hollins* to support their interpretation of the statute because the *Hollins* court could not have been more clear about the meaning of § 408.553 and is the only court to opine on the statute: "This statute indicates interest on these types of loans ***does not begin to accrue*** until the date of a 'final judgment' and then only at the 'simple interest equivalent of the rate provided in the contract.' Therefore, the trial court's judgment, which includes $729.90 in ***interest from the date the debtor defaulted*** until the date of the default judgment is in violation of the statute" *Id.* at 29 (emphasis added).

Commerce tries to distinguish *Hollins* by asserting it was limited to the "types of loans" at issue in *Hollins* and its loan is different. The reference to "these types of loans" in *Hollins* was to loans covered by § 408.553. Commerce concedes its loan is covered by § 408.553. *See* Commerce's Memo, p. 13. Under *Hollins*, Commerce violated § 408.553 by charging interest after default but before judgment, and the numbers stated in its presale and post-sale notices would be artificially inflated. *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 95 (Mo. App. 2008) (collecting cases). The Court should deny Commerce's motion to dismiss because the interest it charged was improper.

### D. Commerce's motion to dismiss should be denied because it cannot show Counterclaimant can prove no set of facts to support a claim that would give a right to relief.

A counterclaim "cannot be dismissed for failure to state a claim unless it appears that the [counterclaimant] can prove no set of facts in support of the

claim that would give a right to relief." *Thomas*, 77 S.W.3d at 58. Even if Commerce was correct that its notices had all the required information, that information must still be correct for its notices to be legally sufficient. *Boulevard Bank*, 397 S.W.3d at 466 ("The notice must be correct in all the required information."). It cannot be told from the face of the notices whether everything stated was accurate. For example, "it is impossible to discern from the record whether the sale was public or private, and therefore, whether the notice was sufficient." *First Missouri Bank & Trust Co. v. Newman*, 680 S.W.2d 767, 769 (Mo. App. 1984). Discovery might reveal other inaccuracies, but *Newman* shows dismissal would be improper at the pleading stage.

## IV. Conclusion

Counterclaimants respectfully request the Court deny Commerce's motion to dismiss. The presale and post-sale notices are legally insufficient but even if they were not, it cannot be determined from the pleadings that everything in the notices are correct.

ONDER, SHELTON, O'LEARY & PETERSON, LLC

By: */s/ Jesse B. Rochman*
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
Evan C. Murphy #58386
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
murphy@onderlaw.com
*Attorneys for Counterclaimants*

15

Electronically Filed - Carroll Circuit Division - November 02, 2016 - 02:28 PM

## Certificate of Service

I certify on November 2, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ Jesse B. Rochman

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

| | |
|---|---|
| COMMERCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 16CR-AC00091-01 |
| BEVERLY J. WILLIAMSON | ) |
| | ) |
| and | ) |
| | ) |
| REBECCA PALMER | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF COMMERCE BANK'S REPLY IN FURTHER SUPPORT OF
OF ITS MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM**

## I.  INTRODUCTION

Defendants attempt to avoid dismissal by raising new claims never pleaded in their Counterclaim and by obscuring straightforward application of the UCC to the Pre-Sale and Post-Sale Notices at issue through contrived, hypertechnical arguments that find no support in Missouri law.  Defendants also fail to respond to many of the substantive points addressed in Commerce's Memorandum in Support of its Motion to Dismiss.  Defendants' arguments lack merit and should be rejected.

### Summary of the Statutory Framework

There are two notices at issue in this dispute:  the Pre-Sale Notice and the Post-Sale Notice.  For Pre-Sale Notices, the UCC provides *optional* "safe harbor" language.  Where the safe harbor language *is* used, the Pre-Sale Notice—or portions thereof—is reasonable as a matter of law.  But failure to use the safe harbor language does not render the Pre-Sale Notice deficient or unreasonable.  Rather, the language of

the Pre-Sale Notice is judged by whether it includes the eight items required by Sections 9-614 and 9-613(1). No "particular phrasing" of the eight items is required; so long as this information is included, the Pre-Sale Notice is sufficient and "reasonable as a matter of law." *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 98 (Mo. App. W.D. 2008).

For <u>Post</u>-Sale Notices, the UCC provides no "safe harbor" suggested language but instead simply requires an "explanation" of how the deficiency is calculated. An explanation includes four items in Section 9-616(a)(1) and six items in Section 9-616(c) that must be included in a specific sequence. Here too, the statute makes clear that "a particular phrasing of the explanation is *not* required" and that an explanation that substantially complies with the requirements of 9-616(a) is sufficient, even if it includes minor errors that are not seriously misleading.

<div align="center">Summary of the Flaws in Defendants' Opposition</div>

<u>Pre</u>-Sale Notice: Defendants' Opposition raises two arguments, one which is based on their Counterclaim, and the other which is based on claims not found anywhere in the Counterclaim. Their first argument, which *is* in the Counterclaim, is that the Pre-Sale Notice does not state the method of intended disposition because Commerce was supposedly obligated to *remove the safe harbor language* relating to a public sale from the Pre-Sale Notice. Unsurprisingly, Defendants' novel and half-hearted[1] argument on this point cites no authority—there is none. Instead, they focus on font size and typeface and argue that the inclusion of "N/A" after the safe harbor "public sale heading" could

---

[1] The sequencing of Defendants' arguments in their Opposition is revealing. They relegate this argument to the last of their points on the Pre-Sale Notice.

not be understood to apply to the public sale portion of the Pre-Sale Notice. This is a red herring. Nothing required Commerce to *delete* the safe harbor public sale portion that was left blank (as it is in the safe harbor statute). Commerce's addition of the "N/A" after the public sale heading only further clarified the obvious—that there would be no public sale. Even without the "N/A," anyone reading the form would conclude that: (1) there was no information regarding a "public sale," but (2) there was (as Defendants concede) sufficient and unambiguous information regarding the private sale that was actually held ("We will sell the [vehicle] at a private sale…." (Exhibit B to Commerce Mem. in Supp.) (emphasis added)).

Defendants' other Pre-Sale Notice argument is that by using "may" instead of "will" in two sentences in the Pre-Sale Notice, Commerce somehow failed to provide a "description of any liability for a deficiency," as required by Section 9-614(1)(B). First, Missouri is a "fact pleading" state, and Defendants cannot raise such unpleaded claims for the first time in an Opposition brief. But even if Defendants moved for leave to amend their Counterclaim, such a motion should be denied as futile, because there is no substance to Defendants' "may vs. will" argument. This is not an exercise in comparing the safe harbor language to the Pre-Sale Notice; rather, the standard is whether the information required by Section 9-614(1)(B) is included (and no particular phrasing is required). Commerce's Pre-Sale Notice clearly contains a "description of any liability for deficiency," and as a matter of law that is sufficient.

Post-Sale Notice: Defendants contend that the Post-Sale Notice is deficient because Commerce supposedly deviated from the requirements of Section 9-616(a)(1)(C) by including "if applicable" before stating that "future debits, credits, charges … *may*

affect the amount of the surplus or deficiency." There is no need to undertake the "syntactic and grammatical" dissection or the legislative and case law analysis that Defendants employ to argue that "if applicable" should not be included. Regardless of whether "if applicable" is included, the meaning of the sentence remains the same—i.e., inclusion of "if applicable" does not make the Post-Sale Notice misleading, let alone "seriously misleading." The explanation required under Section 9-616(a)(1)(c) is with respect to *future* debits and credits, which means that *whether* such debits/credits will exist and in what amounts is not yet known. If such future adjustments occur, then (depending on their relative amounts) the statute (and Commerce's Post-Sale Notice) discloses that such debits and charges "*may*" (i.e., "might") affect "the amount of surplus or deficiency." The point of Section 9-616((a)(1)(c) is simply to advise the debtor of the *possibility* of future adjustments, and Commerce's Notice clearly does that.

Defendants' argument regarding Section 408.553 teeters on a dicta snippet *taken out of context* from a concurrence in the *Hollins* case. The Opposition fails to address the plain and unambiguous language of the statute itself and ignores that Judge Dowd was indicating that Section 408.553 would apply *in that case* because the interest amount of the loan *in that case* was **capped**. Defendants also ignore that the focus of Judge Dowd's concurrence was on a particular type of loan under Section 408.500 that had brazenly abused consumers with loan shark rates of almost 200% interest, and it was "these types of loans" which were the subject of the snippet upon which Defendants attempt to hang their argument.

For these reasons, and those set forth in Commerce's Memorandum in Support, the Court should dismiss Defendants' Counterclaim with prejudice.

- 4 -

## II.    ARGUMENT

### A.    Commerce's Pre-Sale Notice Complies With Missouri Law And Defendants' Arguments To The Contrary Are Meritless.

      1.    Defendants provide no basis for requiring a lender to *delete* language from the safe harbor form.

As Commerce pointed out in its opening Memorandum in Support, it is undisputed that Section 9-614(3) provides a "safe harbor form" with suggested language that "when **completed**, provides sufficient information." RSMo. § 400.9-614(3) (emphasis added). There is also no dispute that a notice tracking the safe harbor form language is reasonable as a matter of law. *See Mancuso*, 254 S.W.3d at 98; *First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 583 (Mo. Ct. App. 2013). Defendants concede that Commerce's Pre-Sale Notice "tracks the safe-harbor form" language regarding the intended method of disposition. Opp. at 8. They argue, however, that Commerce did not properly "complete" the safe harbor form because Commerce did not delete the public disposition portion, which they claim rendered the Pre-Sale Notice misleading. Defendants cite no authority for this novel proposition (there is none), and they are substantively wrong.

Commerce's Pre-Sale Notice states unequivocally that Commerce will sell the Vehicle at a "private sale sometime after 03/03/14," and it denotes the public sale portion of the form language as not applicable. *See* Exhibit B to 9/28/16 Commerce Mem. in Supp. ("Exhibit B"). The Pre-Sale Notice, *like the statutory safe harbor form*, includes form language regarding both a public and private disposition of collateral. *See* RSMo. § 400.9-614(3). **There are no instructions provided in Section 9-614 or the Official Comments that require a lender to remove inapplicable form language to properly complete the form**. *See id*. All the statute says is: "The following form of notification,

- 5 -

***when completed***, provides sufficient information." *Id.* (emphasis added); *see also* RSMo. § 400.9-614 cmt. 3. Indeed, imposing rules about how creditors must edit the safe harbor form in order to fall under its protections contradicts the very purpose of the form. *See Mancuso*, 254 S.W.3d at 98 ("The legislature, in the midst of a statutory scheme designed to protect debtors from overreaching creditors, also codified what is reasonable as a matter of law.").

The public disposition section of Commerce's Pre-Sale Notice is clearly distinguished from the private disposition section through the use of indented headers followed by colons. *See* Exhibit B.[2] Commerce reinforced that the portion of the Pre-Sale Notice relating to public disposition is not applicable by (i) inserting "N/A" after the indented section heading "For public disposition," (*see, e.g., Meyhoeffer v. Wallace*, 792 So. 2d 851, 854 (La. Ct. App. 2001) (inclusion of "N/A" by section of lease agreement indicated that the section was "not applicable to the parties' intentions or agreement")), and (ii) leaving the section entirely blank— i.e., there is no day, date, time, or place set forth for a public disposition—whereas the private sale section is completed. *See* Exhibit B.

Defendants' argument that the Pre-Sale Notice is analogous to the notice found deficient in *Boulevard Bank* (*see* Opp. at 8) is misplaced. In *Boulevard Bank*, the Missouri Court of Appeals found a pre-sale notice stating that the collateral would be sold at a "public/private sale" deficient because it told the defendant "nothing more than that the property would be sold." *Boulevard Bank v. Malott*, 397 S.W.3d 458, 463 (Mo.

---

[2] In the statute, the "font and typeface" of the safe harbor form are the same throughout. *See* RSMo. § 400.9-614(3).

Ct. App. 2013). That is not the case here. Commerce's Pre-Sale Notice clearly states that the Vehicle "will" be sold at a "private sale" and specifically *excluded* the possibility of a public sale by denoting that portion of the form language not applicable and by leaving it blank. *See* Exhibit B.

In short, the Pre-Sale Notice unequivocally advised Defendants that the Vehicle would be sold via a private sale sometime after March 3, 2014, using the *exact* language codified by the legislature as reasonable as a matter of law. Defendants' attempt to conjure up a claim of defect through hypertechnical arguments regarding fonts and typefaces is not supported by Missouri law.

2. Defendants' arguments that Commerce's Pre-Sale Notice violates Section 9-614(1)(B) and 9-614(5) by using the word "may" instead of "will" were never pleaded in the Counterclaim, and, in any event, are meritless.

The Counterclaim does not contain any allegations that Commerce's Pre-Sale Notice violates Section 9-614(1)(B) or Section 9-613(5) by using the word "may" instead of "will."[3] *See generally* Counterclaim. Missouri is a fact-pleading state. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 379 (Mo. 1993); RSMo. § 509.050.1; Mo. Sup. Ct. R. 55.05. For that reason, the Court should not consider Defendants' arguments regarding Section 9-614(1)(B) or "may vs. will" because those claims were never pleaded as part of the Counterclaim and cannot be raised for the

---

[3] Defendants' Counterclaim allegations regarding the Pre-Sale Notice are limited to the claim that the Notice fails to properly state the method of intended disposition of the collateral. *See* CC ¶ 19 (The presale notices . . . were not reasonable as required by § 9-611(b) because . . . they failed to inform [Defendants], specifically and unambiguously, the intended method of disposition and the timing of the sale."); CC ¶ 20 ("The presale notices . . . were not reasonable as required by § 9-611(b) because they were misleading in that . . . they stated [Defendants] could attend the sale and bring bidders when this was not true.").

first time in this Opposition.[4]  *See ITT Commercial Fin. Corp.*, 854 S.W. 2d at 379-80 ("In Missouri, motions to dismiss for failure to state a claim have substantially more 'bite' under our 'fact pleading' rules than they have under the federal system of "'notice pleading.'""); *Naylor Senior Citizens Hous., LP v. Side Constr. Co.*, 423 S.W.3d 238, 241, n.1 (Mo. banc 2014) ("[N]either the trial court nor the appellate court on de novo review may consider matters outside the pleadings when adjudging a motion to dismiss."); *City of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) ("[A] motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition.").

Even if Defendants' "may vs. will" arguments were to be properly before the Court, they would still fail as a matter of law.  Defendants contend that where Commerce used "may" instead of "will," the safe harbor form is inapplicable (Opp. at 4),[5] but they then turn around and use the safe harbor form as if the form's language is the standard against which to measure compliance with the statute (Section 9-614(1)(B)).  Opp. at 5. This is clearly improper.  The safe harbor form is not the standard for determining compliance with Section 9-614(1)(B).  The language of the safe harbor form is optional[6]

---

[4] If Defendants want to add new allegations regarding additional alleged defects in the Pre-Sale Notice, they will need to obtain leave of Court to file an amended counterclaim that includes those allegations. Defendants have not sought leave to amend their Counterclaim.  And, even if they did, the Court should deny the request because, as discussed herein, amendment would be futile.  *See Law Offices of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 426 (Mo. App. S.D. 2006) (affirming denial of motion for leave to amend where "the proposed amendments do not cure the inadequacy of Plaintiff's original petition"); *Bratt v. Cohn*, 969 S.W.2d 277, 284 (Mo. App. W.D. 1998) (affirming denial of motion for leave to amend "where the claim asserted has no merit").

[5] For purposes of this argument only, Commerce will assume *arguendo* that the use of "may" in the notice was a departure from the safe harbor form.

[6] The safe harbor form is relevant, however, when the Pre-Sale Notice tracks the language.  In that case, use of the safe harbor form language makes the Pre-Sale Notice reasonable as a matter of law.  *See* RSMo.§ 400.9-614(3).  As observed by the court in *Levinson*, the "Safe Harbor Form" is "optional but guaranteed sufficient."  *Id.* at 584. .

- 8 -

because Section 9-614(2) makes clear that "[a] particular phrasing of the notification is *not required*." RSMo. § 400.9-614(2) (emphasis added); *see also First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 583 (Mo. Ct. App. 2013) ("This Court, in determining whether a secured creditor has met the notice requirements under Section 400.9–614(1) is guided, not by the optional Safe Harbor Form, but by the principles of statutory interpretation.").

In *Levinson*, the court rejected debtor's attempt to compare "non-safe harbor" pre-sale notice language to the safe harbor form—instead of comparing the notice *to the statute*. 395 S.W.3d at 586-87.[7] The court compared eight provisions of the lender's "non-safe harbor form" to the statute, found the notice was compliant in all eight instances, and reversed the trial court's finding that the notice was deficient. *Id.* at 584-87*; see id.* at 586-87 (court repeatedly stated: "While the Notice failed to track the Safe Harbor Form, the Notice, nevertheless, meets the requirement of [the statutory section at issue].").  Similarly, here the correct inquiry is whether Commerce's Pre-Sale Notice reasonably apprised Defendants of the information required by Section 9-614(1)(B). *Levison*, 395 S.W.3d at 586.  Commerce's Pre-Sale Notice does just that.

Section 9-614(1)(B) requires a lender to state "[a] *description* of any liability for a deficiency of the person to which the notification is sent."  RSMo. § 400.9-614(1)(B)

---

[7] For example, the appellate court stated:

> However, the plain and unambiguous language of Section 400.9–614(1)(D) does not require such a phrasing.  Rather, the **statute** only requires that a notice provide such contact information. It is the **Safe Harbor Form** that envisions the phrasing suggested by the trial court's holding and the Respondent's argument.  This Court is constrained by the language of Section 400.9–614(1)(D) when construing it and may not find a meaning that is not supported by the language of the statute.

*Levinson*, 395 S.W.3d at 587 (footnote omitted) (emphasis added).

(emphasis added). Commerce's Pre-Sale Notice *describes* Defendants' liability for a deficiency to Commerce by stating:

> The money that we get from the sale (after paying our costs) may reduce the amount you owe. If we get less money than you owe, you may still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

Exhibit B to Mem. in Supp. This language (which mirrors the safe harbor form in all material respects) uses the word "may" instead of "will" and in so doing clearly lets Defendants know that they could be liable for a deficiency. *See, e.g., Garcia v. United Auto Credit Corp*., No. 07-61503, 2008 WL 141579, at *3 (S.D. Fla. Jan. 11, 2008) (while not directly addressing the issue, the court found a notice stating "[y]ou **may** be subject to suit and liability if the amount obtained upon disposition of the vehicle is insufficient to pay the contract balance and other amounts due" sufficient as a matter of law (emphasis added)).

Defendants' argument that Commerce's use of "may" makes the notice improperly conditional (*see* Opp. at 5-6) is not supported by the plain language of the statute. Regardless of the safe harbor language, the operative focus is Section 9-614(1)(B). That provision does not require Commerce to *state* definitively whether Defendants "will" or "will not" be liable for a deficiency. To the contrary, Section 9-614(1)(B) requires only that Commerce provide Defendants with a "*description* of any liability for a deficiency." RSMo. § 400.9-614(1)(B). Had the legislature wanted to require a binary definitive statement as to a borrower's liability for deficiency, it certainly knew how. *See, e.g.,* RSMo. § 400.9-613(1)(C) ("*States* the method of intended disposition."), (D) ("*States* that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting."), (E) ("*States* the time and

- 10 -

place of a public disposition or the time after which any other disposition is to be made.") (emphasis added).[8] The Court must give effect to the legislature's clear intent in choosing to require Commerce to provide a "*description* of any liability for deficiency" instead of requiring Commerce to "*state*" whether Defendants "will" or "will not" be liable for a deficiency. *See Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. banc 2006) ("When different statutory terms are used in different subsections of a statute, appellate courts presume that the legislature intended the terms to have different meaning and effect."); *Armco Steel v. City of Kansas City, Mo.*, 883 S.W.2d 3, 7 (Mo. banc 1994) (same).

Defendants' attempt to overcome the plain language of the statute by transposing the "logic" of *Boulevard Bank* (*see* Opp. at 6) is misplaced (at best). The *Boulevard Bank* case did not deal "with a similar defect in a presale notice." Opp. at 5. Nor did *Boulevard Bank* address the requirements of § 9-614(1)(B) or the use of "may vs. will." Rather, the case focused on an entirely different UCC provision—the requirements regarding the time, place, and manner of disposition of collateral under Section 9-613(1)(c). *See Boulevard Bank*, 397 S.W.3d at 463-467. This is a critical distinction because, as explained above, Section 9-613(1)(c) requires a creditor to definitively "*[s]tate[]* the method of intended disposition" of the collateral, whereas Section 9-

---

[8] The legislature's intentional distinction between the words "state" and "describe" is further evidenced by Sections 9-613(1)(A)-(B). *See* RSMo. §§ 400.9-613(1)(A) ("*Describes* the debtor and the secured party."), (B) ("*Describes* the collateral that is subject to the intended disposition.").

- 11 -

614(1)(B) does not. Contrary to Defendants' argument, the "same logic used in *Boulevard Bank*" does not apply to the requirements of Section 9-614(1)(B).[9]

Finally, Defendants' argument that the Pre-Sale Notice is misleading under Section 9-614(5) (Opp. at 7) is also baseless. As an initial matter, Section 9-614(5) applies only where a creditor adds additional information that is "not required by paragraph 1 [of Section 9-614]." *See* RSMo. § 400.9-614(5) ("A notification in the form of paragraph (3) is sufficient, even if it includes errors in information **not required by paragraph (1)**, unless the error is misleading with respect to rights arising under this article."). There was no "additional information" added. Thus, Section 9-614(5) does not apply. In any event, the Pre-Sale Notice is not misleading when it states "[t]he money that we get from the sale (after paying our costs) may reduce the amount you owe." *See Hudson v. Eaglemark Sav. Bank*, No. 10-6994, 2011 WL 1755540 (E.D. Pa. May 9, 2011) (notice stating "[t]he money that we get from the sale (after paying our costs) **may** reduce the amount you owe" is in "full compliance with the UCC's requirements"). Indeed—and contrary to Defendants' argument—money from the sale will not always reduce the amount owed. For example, if a borrower damaged or destroyed collateral prior to repossession, its value might be less than Commerce's costs, in which case the proceeds of that sale would not reduce the amount owed.

**B.    Commerce's Post-Sale Notice Complies with Missouri Law and Defendants' Arguments to the Contrary Are Meritless.**

---

[9] The *Gregory* case is also inapposite. *See* Opp. at 7 (citing *State Res. Corp. v. Gregory*, 339 S.W.3d 591, 598 (Mo. App. S.D. 2011)). The pre-sale notice in that case did not say anything about the borrower's liability for a deficiency. Rather, the pre-sale notice merely stated: "The proceeds from the sale will be applied to your loan." *See id.*

1.    Defendants concede that the Post-Sale Notice contains all of the information required by Section 9-616(c) in the proper order.

In their Counterclaim, Defendants allege Commerce's Post-Sale Notice is deficient because it "[d]id not provide all the information, in the requisite order, as required by § 9-616(c)(3)." CC ¶ 24(a).   Commerce's Memorandum detailed (and illustrated) why this claims was false.  Mem. in Supp. at 12.  Defendants wisely abandon this claim by not mentioning it in their Opposition.  *See* Opp. at 9-13.  It should therefore be dismissed with prejudice.

2.    The inclusion of "if applicable" in the Post-Sale Notice does not render it insufficient.

Section 9-616(a)(1)(C) requires that the Post-Sale Notice:  "States, *if applicable*, that *future* debits credits, charges, including additional credit service charges or interest, rebates and expenses *may* affect the amount of the surplus or deficiency."  RSMo. § 400.9-616(a)(1)(C) (emphasis added).   Commerce's Post-Sale Notice states:  "If applicable, future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency."  *See* Exhibit C to Commerce's Mem. in Supp. ("Exhibit C").   The inclusion of "[i]f applicable" in Commerce's Post-Sale Notice does not add conditionality to the sentence or render it impermissibly vague because the Section 9-616(a)(1)(C) statement is *already conditional*:   "***Future***" debits/credits "'***may***' affect the amount of the surplus or deficiency."  *See* RSMo. § 400.9-616(a)(1)(C) (emphasis added).

Defendants incorrectly characterize Section 9-616(a)(1(C) when they contend the "legislature intended the post-sale notice to disclose *whether* a deficiency would be affected by future interest, rebates, and expenses."  Opp. at 12-13 (emphasis added).  The legislature was not requiring a definitive disclosure that the deficiency would or would

- 13 -

not be impacted, but rather **required a disclosure so the borrower was aware that such matters "may" (i.e., *might*) affect the amount of surplus or deficiency**.   Indeed, Defendants themselves argue the word "may" is "used to indicate possibility."  Opp. at 5.  A consumer is "left guessing" only because of the obvious reason that these are *future* debits or credits that might or might not occur, and the amounts of which might—or might not—net out to have an impact on the deficiency or the surplus.  For example, there might be $500 in future debits and $500 in future credits, in which case those debits and credits would be "applicable," but would not "affect the amount of surplus or deficiency."  The result is the same regardless of whether the phrase "if applicable" is included in the Notice.

Defendants' "syntactic and grammatical" dissection of Section 9-616(a)(1)(C) also ignores the plain language of the statute, which states that "[a] particular phrasing of the explanation is *not* required," and that an explanation is sufficient "even it if includes minor errors that are not seriously misleading."   RSMo. § 400.9-616(d) (emphasis added).  Commerce's inclusion of "if applicable" is not an error.  And even if it was, it is a minor one that is not the least bit misleading (and certainly not "seriously misleading") because it has no meaningful effect on the reasonableness of the Post-Sale Notice—the language remains conditional with or without the added "[i]f applicable."  *See id.*

3.  <u>Commerce did not charge improper interest under the plain and unambiguous language of Section 408.553.</u>

Defendants' argument that the Post-Sale Notice is defective because it charges improper interest under Section 408.553 presents a question of statutory interpretation.  "The purpose of statutory construction is to determine the legislature's intent in enacting the statute and to give effect to that intent, as expressed in the words of the statute."  *First*

*Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 583 (Mo. Ct. App. 2013) (citing *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy,* 208 S.W.3d 907, 909–10 (Mo. banc 2006)). The Court's "interpretation of the relevant provisions of [a] statute must be derived from the plain and ordinary language of the statute." *State v. Wilson*, 55 S.W.3d 851, 856 (Mo. App. W.D. 2001).

The language of Section 408.553 is plain and unambiguous:

> Upon default the lender shall be entitled to recover **no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment** together with interest thereafter at the simple interest equivalent of the rate provided in the contract.

RSMo. § 408.553 (emphasis added).

The first part of the statute (in bold) states that Commerce is entitled to recover "the amount which [Defendants] would have been required to pay upon prepayment of the obligation on the date of final judgment." *Id.* In this case, that amount includes *contractual interest* because the Note specifically provides that interest accrues on unpaid balances at the rate of 3.39% per year until the Note is paid in full. *See* Exhibit A to Commerce's Mem. in Supp. ("Exhibit A") (under heading "Sales Agreement"). The second part of the statute limits post-judgment interest to "the simple interest equivalent of the rate provided in the contract." RSMo. § 408.553. While the statute restricts the accrual of typical pre-judgment interest, nothing in the plain language of the statute prohibits Commerce from charging *contractual interest*—i.e., amounts owed under the terms of the Note—between the date of default and final judgment. Indeed, the statute specifically allows it by permitting Commerce to recover "the amount which the

- 15 -

borrower would have been required to pay upon prepayment of [the Note] on the date of final judgment." RSMo. § 408.553.

Defendants ignore the plain language of the statute. They argue instead that two imprecise sentences in Judge Dowd's concurring opinion in *Hollins v Capital Sols. Investments I, Inc.*, 477 S.W.3d 19, 28-29 (Mo. App. E.D. 2015) renders the Post-Sale Notice deficient. *See* Opp. at 14. Defendants' reliance on *Hollins* is misplaced. As explained in Commerce's opening Memorandum (at 15-16), the note at issue in *Hollins* **capped** the amount of the indebtedness, requiring the plaintiff to pay a total, *inclusive of contractual interest*, of $155. *See Hollins*, 477 S.W.3d at 21. Thus, the "amount which [the plaintiff] would have been required to pay upon prepayment of the obligation on the date of final judgment" (*see* RSMo. § 408.553) was only $164 ($124 in principal[10] plus a $40 late fee), not the $912.50 set forth in the default judgment. *Id.* That is why Judge Dowd stated in dicta that the default judgment, which included $729.90 in interest from the date of the defendant's default until the date of default judgment, violated Section 408.553. *See id.* at 29. It is also why the *Hollins* case is inapplicable to this case.

The Note in this case was not capped; rather, it specifically provides for the accrual of *contractual interest* at the rate of 3.39% on all unpaid balances until paid in full. *See* Exhibit A. **Defendants do not address this critical fact**. Nor do they provide any other analysis supporting their position that *Hollins*—which addressed a completely different type of loan[11]—controls the outcome here. Defendants' interpretation of

---

[10] The defendant had made one payment of $31 prior to defaulting. *See Hollins*, 477 S.W.3d at 21.

[11] There is no dispute that Section 408.553 applies to Commerce's loan to Defendants in this case. *See* RSMo. § 408.551. That does not mean, however, that *Hollins* applies to *this* case (see above) or that Judge Dowd's reference to "these types of loans" includes Commerce's loan to Defendants. Judge Dowd's

- 16 -

Section 408.553 also violates a basic tenant of statutory interpretation by rendering the first part of Section 408.553 meaningless. *See State ex rel. Unnerstall v. Berkemeyer*, 298 S.W.3d 513, 519 (Mo. banc 2009) ("It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert verbiage or superfluous language in a statute." (citing *Hyde Park Hous. P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993))).

### C. Commerce's Motion Cannot Be Denied Because "Discovery May Reveal Other Inaccuracies."

Defendants' final argument is that if their currently pleaded claims fail as a matter of law (they do), the Court should still deny Commerce's Motion to Dismiss because there *might* be other "inaccuracies" that could be revealed through discovery. *See* Opp. at 15. The Supreme Court of Missouri has made clear that such speculative argument has absolutely no merit under Missouri fact pleading rules:

> Where the federal courts now use *discovery* to identify the triable issues, such has always been the role of the *pleadings* in Missouri. Where the federal courts now use *discovery* to identify the facts upon which the plaintiff's claim rests, such has always been the role of *pleadings* in Missouri. Finally, where the federal courts rely on *summary judgment* procedures to dispose of baseless claims, such continues to be the role of *motions to dismiss* in Missouri.

*ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993) (internal citations omitted). In other words, motions to dismiss for failure to

---

opinion specifically states his reason for writing the concurrence was to express his concern with "Section 408.500, which was designed for unsecured loans of five hundred dollars or less." *Hollins*, 477 S.W.2d at 27. That is exactly the type of loan that was at issue in *Hollins* (total of $155, inclusive of interest). *See id.* at 21. It is not the type of loan at issue here, which is for a total of $25,252.98 plus interest accruing at 3.39% per year on all unpaid balances. *See* Exhibit A (Truth-In-Lending Disclosure). Judge Dowd refers to Section 408.500 **eleven times** in his concurrence, and Section 408.553 only twice. *See Hollins*, 477 S.W.2d at 27-29. It is clear that his reference to Section 408.553 was only because it is the *mechanism* that *should have applied* to bar typical post default/prejudgment interest on loans *under Section 408.500* that have a *capped* amount of interest.

state a claim have substantially more "bite" under Missouri fact pleading rules, and Defendants cannot avoid dismissal simply by providing "notice" of a potential claim that may or may not be borne out through discovery. *Id.* If Defendants believed they had additional claims for alleged inaccuracies in Commerce's Pre-Sale Notice or Post-Sale Notice, they are required to have alleged facts describing those inaccuracies in their Counterclaim. *See id.*; RSMo. § 509.050.1; Mo. Sup. Ct. R. 55.05. And those facts must be based on actual evidentiary support determined after a reasonable inquiry. *See* Mo. Sup. Ct. R. 55.03(c).

Defendants concede that they do not have any additional facts to support any additional claims against Commerce. *See* Opp. at 14-15. Accordingly, Defendants' attempt to avoid dismissal based on speculative, undefined, and unpleaded inaccuracies should be rejected.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Commerce Bank respectfully requests the Court enter its Order dismissing Defendants' Amended Counterclaim with prejudice and granting such other and further relief as the Court deems necessary and proper.

- 18 -

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Edwin G. Harvey
    Edwin G. Harvey, #30565
    David M. Mangian, #61728
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Edwin G. Harvey

# EIGHTH JUDICIAL CIRCUIT COURT
# CARROLL COUNTY, MISSOURI

Commerce Bank,

      Plaintiff/Counterclaim-Defendant,

v.

Beverly J. Williamson and
Rebecca Palmer,

      Defendants/Counterclaim-Plaintiffs.

Case No. 16CR-AC00091-01

Division 1

## Sur-Reply to Oppose Commerce Bank's
## Motion to Dismiss the Amended Counterclaim

Counterclaim-Plaintiffs ("Counterclaimants"), through their under-signed counsel, submit their sur-reply to oppose Commerce Bank's ("Commerce") motion to dismiss their amended counterclaim:

## I. Introduction

Commerce concedes it deviated from the safe-harbor form when attempting to comply with the requirement to describe the debtor's liability for a deficiency as required by § 400.9-614(1)(B). *See* Reply at 8. Although Commerce is correct the "safe harbor form is not the standard for determining compliance with Section 9-614," *id.,* "parties who fail to use the Safe Harbor Form do so at their peril." *First Community Credit Union v. Levison*, 395 S.W.3d 571, 587 (Mo. App. 2013). Commerce finds itself in peril because it deviated from the safe-harbor form in a way that fails to strictly comply with the statutory requirements when resolving all doubts about compliance in Counterclaimants' favor. *States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. App. 2011). The

1

same is true for the post-sale notice. Even if these notices were not defective, Commerce cannot show everything stated in its notices are accurate on a motion to dismiss. *Boulevard Bank v. Malott*, 397 S.W.3d 458, 466 (Mo. App. 2013) ("The notice must be correct in all the required information."). The Court should deny the motion to dismiss.

## II. Analysis

Conspicuously absent from Commerce's reply is any assertion its UCC notices "strictly comply" with the statutory requirements or there can be no "doubt" its UCC notices complied with the statutory requirements. Perhaps Commerce avoids mentioning these words, deeply rooted in Missouri jurisprudence, because it has doubts of its own about whether its UCC notices are compliant. A review of the UCC notices shows they violate the relevant statutory requirements, or at a minimum, there is at least doubt about their compliance that must be resolved in Counterclaimants' favor. Under either scenario, the Court should deny the motion to dismiss.

### A. Presale Notice

### 1. *Commerce is not entitled to dismissal because its presale notice fails to describe a consumer's liability for a deficiency specifically and unambiguously.*

Under § 400.9-614(1)(B), Commerce's presale notice had to provide a "description of any liability for a deficiency of the person to which the notification is sent." No particular phrasing is required, but § 9-614(1)(B) is only met by an unconditional statement on the consumer's liability for a deficiency, such as:

　　a. "If we get less money than you owe, you ***will*** still owe us the difference." § 400.9-614(3)

<div align="center">2</div>

b. "If we get less money than you owe, you ***will not*** still owe us the difference." *Id.*

c. "In the event that disposition or sale of the collateral brings less than the payoff balance plus costs allowed by the contract, you ***will*** be responsible for any deficiency." *Levison,* 395 S.W.3d at 586.

d. "Upon disposition of the motor vehicle, you ***will*** be liable for any deficiency balance plus interest at the contract rate from the date of disposition of the motor vehicle to the date of entry of judgment." *Garcia v. United Auto Credit Corp.*, No. 07-61503, 2008 WL 141579, at *3 (S.D. Fla. Jan. 11, 2008)

Commerce's presale notice is unlike these examples because it is conditional. It states: "If we get less money than you owe, you ***may*** still owe us the difference." Reply at 10. The dispositive issue is whether the presale notice's use of "may" strictly complied with the statutory requirement to describe a consumer's liability for a deficiency when resolving all doubts in Counterclaimants' favor. It does not.

Recognizing the weakness of its arguments, Commerce first asserts "the Court should not consider Defendants' arguments regarding Section 9-614(1)(B) or 'may vs. will' because those claims were never pleaded as part of the Counterclaim and cannot be raised for the first time in this Opposition." To reach this conclusion, Commerce asserts:

Defendants' Counterclaim allegations regarding the Pre-Sale Notice are limited to the claim that the Notice fails to properly state the method of intended disposition of the collateral. See CC ¶ 19 (The presale notices . . . were not reasonable as required by § 9-611(b) because . . . they failed to inform [Defendants], specifically and unambiguously, the intended method of disposition and the timing of the sale."); CC ¶ 20 ("The presale notices . . . were not reasonable as required by § 9-611(b) because they were misleading in that . . . they

3

stated [Defendants] could attend the sale and bring bidders when this was not true.").

*See* Reply at 7 n.3. Commerce used ellipses to obscure that those same paragraphs also alleged the presale notices were unreasonable for "other reasons" than those listed. *See* Counterclaim, ¶¶ 19-20. Commerce also ignores Counterclaimants' other allegations:

    a. Commerce Bank failed to send Defendants and the Class reasonable authenticated notices of disposition as required by § 9-611. *See* Counterclaim, ¶ 21.

    b. Commerce Bank violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by Commerce Bank. *Id.* at ¶ 69.

    c. Commerce Bank did not properly complete the form of notification provided in § 9-614(3) of the UCC when sending presale notices to Defendants and the Class. *Id.* at ¶ 70.

    d. Commerce Bank's presale notice to Defendants and the Class included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC. *Id.* at ¶ 71.

    e. As required under § 9-611 of the UCC, Commerce Bank failed to provide "reasonable authenticated notice of disposition" to Defendants and the Class. *Id.* at ¶ 72.

Section 9-611 requires the presale notice be "reasonable as to … its content," s*ee* § 400.9-611, comment 2, which means the presale notice must meet all the requirements of § 9-614, including that the presale notice describe the liability for a deficiency. These allegations with an undisputed notice mean Counterclaimants sufficiently alleged the presale notice was defective for failing to describe the liability for a deficiency.

4

Even if Counterclaimants were required to specifically plead that the pre-sale notice failed to describe the liability for a deficiency, dismissal with leave to amend would be the proper disposition. *See* Rule 67.06 ("On sustaining a motion to dismiss a claim, counterclaim or cross-claim the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed."). Commerce's argument would sacrifice substance over form and waste judicial resources because the result is that the Court would eventually rule on this argument.[1]

On the merits of the presale notice, Commerce cites one unpublished opinion from Florida to support its argument Commerce complied with the requirement to describe the liability for a deficiency. *See* Reply at 10 (citing *Garcia*, 2008 WL 141579 at \*3). Commerce's reliance on *Garcia* is misplaced because unlike Commerce's presale notice that uses "may," the *Garcia* presale notice stated "you **will** be liable for any deficiency balance plus interest at the contract rate from the date of disposition of the motor vehicle to the date of entry of judgment." *Garcia*, 2008 WL 141579 at \*3.

To overcome the lack of legal authority, Commerce suggests if the legislature wanted to require a binary statement on the borrower's liability for a deficiency, it would have used the word "states" instead of provide a "description."

---

[1] Commerce cites two cases for the proposition that a court may not consider matters outside the pleadings when adjudging a motion to dismiss to suggest it would be improper for the Court to consider Counterclaimants argument. The presale notice is part of the pleadings as it is attached to Commerce's petition, so the Court is not considering matters outside the pleadings.

5

*See* Reply at 10. The statute does not support this strained construction. *Boulevard Bank* is illustrative.

The presale notice provision at issue in *Boulevard Bank* was the requirement that "a lender's pre-sale notice must '[s]tate[] the method of intended disposition' of the collateral securing a loan." 397 S.W.3d at 464. The Court construed this language to require a definitive statement of whether the sale would be public or private, not because of the word "state," but because those are the only two options for sales: either a sale will be public or it will be private. *Id.* at 465. "Thus, by referring to a 'public/private sale,' the Bank told [the consumer] nothing more than that the property would be sold. The phrase 'public/private' added nothing, because it excluded nothing." *Id.*

Just like with public and private sales, there are only two options for a consumer's liability for a deficiency: either the consumer will or will not be liable. The safe-harbor form confirms these are the only two options for a sale. Although Commerce need not use the phrasing in the safe-harbor form, the safe-harbor form is the best evidence of what the legislature intended by requiring the lender to provide a "description" of any liability for a deficiency because the safe-harbor form is part of the same statute and drafted by the legislature. *Gash v. Lafayette County*, 245 S.W.3d 229, 232 (Mo. banc 2008) ("[A] particular statutory phrase cannot be read in isolation," and "the provisions of a legislative act are construed together and read in harmony with the entire act."). Commerce's use of the word "may" added nothing because it excluded nothing

6

and provided no basis for Counterclaimants to determine whether they would be liable for a deficiency. Commerce's presale notice suffers from the same defect Commerce claimed of the *Gregory* presale notice: neither said "anything about the borrower's liability for deficiency." *See* Reply at 12 n. 9.

Two Missouri trial courts have already rejected assertions like Commerce's that *Boulevard Bank*'s logic does not apply to the requirements of § 400.9-614(1)(B). *See, e.g., Saber Acceptance Co. v. Henderson*, No. 15AO-AC02085 (Mo. Cir. Feb. 22, 2016) (Exhibit A); *Universal Credit Acceptance, Inc., v. Myers*, No. 15JE-AC05976 (Mo. Cir. June 13, 2016) (Exhibit B).

In *Saber*, the lender relied heavily on *Levison* like Commerce does here and the consumers relied on *Boulevard Bank* like Counterclaimants do here. In rejecting the same argument Commerce makes, the court held:

> The case at bar is analogous to *Mallott* [*Boulevard Bank*]. Saber included the entire universe of possibilities (the Defendants would or would not owe a deficiency). Whether a defendant is or is not liable for a deficiency judgment are not just "significantly different" outcomes -- the results are directly opposite. If someone believes they will not be liable for a deficiency, a defendant might presumably pay no more attention to the notice than necessary to find a trash receptacle. Here, the chance that the Defendants might not owe a deficiency, even if the collateral sold for less than the amount due, was within the realm of possibilities. The law here requires specificity if the debtor is to be clearly alerted of the need to take steps to protect his or her interests. They cannot be left guessing in this regard.

*See Saber,* Exhibit A at 4.

Similarly, in *Myers* the court held:

The failure by Plaintiff to modify the language of the "(will or will not as applicable)" section, left it unclear and ambiguous as to whether Defendant would be liable to Plaintiff.

By failing to inform Defendant whether Plaintiff intended to hold him liable for a deficiency if the sale of the car netted less than Defendant owed, Plaintiff failed to notify Defendant of the "description of any liability for a deficiency of the person to which the notification is sent," as required by section 400.9-614(1)(B).

*See Myers,* Exhibit B at 2.

Just as in *Saber* and *Myers,* using the word "may" includes the entire universe of possibilities, leaving it unclear and ambiguous whether Counterclaimants' would be liable to Commerce. The law does not allow consumers to be left guessing whether Commerce intended to hold them liable for a deficiency. *See Saber,* Exhibit A at 4. Without a definitive statement on liability, a consumer "might presumably pay no more attention to the notice than necessary to find a trash receptacle," which would defeat the purpose of the statute to alert the consumer of "the need to take steps to protect his or her interests." *Id.*

The Court should deny Commerce's motion to dismiss because its presale notice is defective for this reason alone.

### 2. Commerce is not entitled to dismissal because its presale notice misleads consumers by stating money received from the sale "may" reduce the amount owed.

Commerce makes much of whether § 400.9-614(5) applies. The case law is clear that regardless of whether it applies, "a misleading notice [is] a subcategory of the concept of an unreasonable notice." *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 94 (Mo. App. 2008). Commerce suggests its presale notice is not misleading when it states "[t]he money that we get from the

8

sale (after paying our costs) may reduce the amount you owe." *See* Reply at 12 (citing *Hudson v. Eaglemark Sav. Bank*, No. 10-6994, 2011 WL 1755540 (E.D. Pa. May 9, 2011)). Commerce ignores the footnote in *Hudson,* which stated:

> any imprecision in the use of the word "may" was rectified by the next two sentences of the Notice, which stated as follows:
>
>> If we get less money than you owe, you *will* still owe us the difference. If we obtain more money that you owe at the sale, you *will* get the extra money, unless we must pay it to someone else.

*Hudson*, 2011 WL 1755540 at \*6 n. 5. However, Commerce's notice does not rectify this imprecision because it uses "may" again in the next sentence of its notice as discussed above. The UCC does not allow this imprecision in consumer presale notices. *Mancuso*, 254 S.W.3d at 92 ("A creditor is held to the requirement of strict compliance with these notice provisions. Any doubt about what constitutes strict compliance is resolved in the debtor's favor.").

Finally, Commerce used this example to suggest money from the sale will not always reduce the amount owed: "if a borrower damaged or destroyed collateral prior to repossession, its value might be less than Commerce's costs, in which case the proceeds of that sale would not reduce the amount owed." *See* Reply at 12. The problem with this example is Commerce's costs are part of the amount owed. *See* § 400.9-615. So even $1 in money received from the sale **would** reduce the amount owed. Commerce's post-sale notice confirms this. Commerce's costs were $827.98. *See* Post-Sale Notice Attached to Petition. No matter what amount of money was received from the sale, it will always reduce

the deficiency owed as listed in Commerce's post-sale notice. So, suggesting that it "may" reduce the amount owed when it "will" reduce the amount owed, is misleading and renders the presale notice unreasonable., 254 S.W.3d at 94.

### 3. Commerce is not entitled to dismissal because its presale notice fails to specifically and unambiguously state the intended method of disposition.

Commerce's primary argument is that "there are no instructions provided in Section 9-614 or the Official Comments that require a lender to remove inapplicable form language to properly complete the form" and "imposing rules about how creditors must edit the safe harbor form in order to fall under its protections contradicts the very purpose of the form." *See* Reply, pp. 5–6. Contrary to Commerce's assertion, the official comments instruct the lender to "properly complete" the form. "This form has nearly twenty parentheticals or blanks that need to be filled in, modified, *or deleted* **in order to provide accurate information in** *an understandable form* to a defendant/debtor." *See Myers*, Exhibit B at 2; *Saber*, Exhibit A at 3 (same).

By failing to delete the public sale information, Commerce's presale notice was not understandable to an unsophisticated consumer and was otherwise misleading. For example, by failing to delete the language that "you may attend the sale and bring bidders if you want," a consumer would be misled into believing it could attend the sale and bring bidders. This would not be an unreasonable belief because attending the sale would allow consumer to verify the sale was conducted in a commercially reasonable manner and bringing bidders would allow the consumer to find another purchaser; both of which are

10

primary purposes of a proper notice. *Gregory*, 339 S.W.3d at 596 ("Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner."). However, because Commerce asserts this was a private sale, the consumer could not attend and bring bidders.

The standard is strict compliance with any doubt resolve in Counterclaimants' favor. Viewed in that light, it is doubtful that Commerce's failure to delete the public sale information from the notice would constitute proper completion of the safe-harbor form, especially considering its possibility to mislead or confuse unsophisticated consumers. The Court should deny Commerce's motion to dismiss because its presale notice is defective.

### B. Commerce is not entitled to dismissal because its post-sale notice violates the UCC when resolving all doubts in Counterclaimants' favor.

Commerce suggests Counterclaimants "themselves argue the word 'may' is used to indicate possibility," so it was acceptable for Commerce to leave a consumer guessing by leaving in "if applicable" because the statutes use of the word "may" already suggests conditionality (i.e., "may" equals "might"). *See* Reply at 13–14. Counterclaimants said that "'may' is a word of many meanings, but in this context [Commerce's presale notice], it was 'used to indicate possibility.'" *See* Response at 5. In § 400.9-616, "may" denotes permission. Chicago Manual of Style § 5.146 (16th ed. 2010). By including the disclosure required by § 400.9-616, "may" denotes Commerce believes it may affect the deficiency or surplus balance by future interest, rebates, and expenses.

11

Commerce asserts a "consumer is 'left guessing'" not because of its inclusion of "if applicable," but "only because of the obvious reason that these are *future* debits or credits that might or might not occur, and the amounts of which might— or might not—net out to have an impact on the deficiency or the surplus." *See* Reply at 14. This assertion is belied by Commerce arguing it can and does increase the deficiency by additional interest. *See* Reply at 15. There is no uncertainty that Commerce will charge interest, so using "if applicable" to suggest the deficiency "might or might not" be affected by interest with other charges Commerce always includes violates § 400.9-616(a)(1)(C).[2]

The Court should deny Commerce's motion to dismiss because its post-sale notice is legally insufficient.[3]

### C. Commerce's improper interest rendered its presale and post-sale notices defective because it caused amounts stated in the notices to be artificially inflated.

Commerce repeats its arguments from its open brief in its reply. Counterclaimants will not belabor the point further other than to refer the Court back to their response explaining why the Court should deny Commerce's motion to dismiss because the interest it charged was improper under § 408.553.

---

[2]     Counterclaimants do not have to show the inclusion of "if applicable" was "seriously misleading." Counterclaimants agree that "Commerce's inclusion of 'if applicable' is not an error." *See* Reply at 14. This is because Commerce "intended to include the [if applicable language] in the notice, and apparently did so with the belief (whether legally right or wrong) that it was entitled to do so." *Mancuso*, 254 S.W.3d at 94. "If there was not an 'error,' it means only that [Counterclaimants] need not plead or show that the notice was 'misleading.'" *Id.*; § 400.9-616(d). Rather, Counterclaimants only need to show the post-sale notice failed to comply with §_400.9-616(a)(1)(C).

[3]     Commerce suggests Counterclaimants' claim that "Commerce's Post-Sale Notice is deficient because it 'did not provide all the information, in the requisite order, as required by § 9-616(c)(3)' … should … be dismissed with prejudice." *See* Reply at 13. This is an allegation, not a claim. Commerce cites no authority for dismissing an allegation with prejudice and Counterclaimants are not aware of any.

**D. Commerce's motion to dismiss should be denied because it cannot show Counterclaimant can prove no set of facts to support a claim that would give a right to relief.**

To state a claim, Counterclaimants must only allege facts showing the UCC was violated. *Boulevard Bank*, 397 S.W.3d at 467; *Saving v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated…."); *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 385-86, 534 S.E.2d 688 (2000) ("In light of the undisputed fact that Creditor failed to give the required notice to Debtor, the trial judge erred in denying Debtor's motion for partial summary judgment on liability in the Article 9 cause of action."). Commerce's reliance on *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993) is misplaced.

Counterclaimants are not suggesting discovery is necessary to identify the triable issues or the facts upon which their claim rests. Rather, they have already pled the triable issue: the sufficiency of Commerce's presale notices. They have also pled the facts upon which their claims rest by incorporating the notices (which no one disputes are the notices) and alleging they fail to include the requisite information or are otherwise misleading. Indeed, Commerce does "not argue that the manner in which Counterclaimants' pleaded [their] counterclaim is somehow defective." *Boulevard Bank*, 397 S.W.3d at 467. Rather, Commerce asks the Court to make a ruling on a "substantive element of Counterclaimants' counterclaim, and [is] tantamount to a grant of judgment on the pleadings." *Id.* at 467 n. 2.

13

Although the **_facial_** sufficiency of the presale and post-sale notices may be determined on a motion to dismiss when, like here, there is no dispute on the notices given, the accuracy of the notices cannot be determined from the face of the pleadings. Because Counterclaimants' claims cover both patent and latent defects, dismissal would be improper at the pleading stage. Even if dismissal was proper, Counterclaimants should be granted leave to amend. *See* Rule 67.06.

### III. Conclusion

Counterclaimants respectfully request the Court deny Commerce's motion to dismiss. The presale and post-sale notices are legally insufficient but even if they were not, it cannot be determined from the pleadings that everything in the notices are correct. Alternatively, Counterclaimants should be granted leave to amend under Rule 67.06.

ONDER, SHELTON, O'LEARY & PETERSON, LLC

By: _/s/ Jesse B. Rochman_____
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
Evan C. Murphy #58386
110 E. Lockwood Ave.
St. Louis, MO  63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
murphy@onderlaw.com
*Attorneys for Counterclaimants*

14

## Certificate of Service

I certify on December 1, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Jesse B. Rochman*

## IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI
## 29TH JUDICIAL CIRCUIT – Division V

SABER ACCEPTANCE COMPANY,    )
    )
       *Plaintiff,*    )
    )
    vs.    )    Case No.: <u>15AO-AC02085</u>
    )
RICKY AND JANE HENDERSON,    )
    )
       *Defendants.*    )

> **FILED**
> **Monday, February 22, 2016**
> **JASPER COUNTY**
> **CIRCUIT COURT**
> **DIVISION V**

## JUDGMENT

BE IT REMEMBERED, that on the 16th day of February, 2016, Defendants' *Motion to Dismiss* came on for hearing. Plaintiff appeared by and through its attorney, Tricia Gould. Defendants appeared by and through their attorneys, Jesse Rochman and Martin Daesch. Whereupon the Court heard argument as to the Defendants' *Motion to Dismiss*. The Court took the issues under advisement to prepare this Order.

This matter pertains to a presale notice sent by Plaintiff to the Defendants as required by § 400.9-614(1)(B) R.S.Mo. To summarize, Defendants' vehicle was repossessed and sold, resulting in a deficiency balance. Prior to the sale, both defendants were sent a "Notice of Sale," which stated, "If we get less money than you owe, you [*will or will not, as applicable*] still owe us the difference." (Brackets and italics in original). Plaintiff claims this language is not only compliant with the law, but is a "safe harbor" notice because it is reproduced verbatim from the statutory language. Defendants admit this is technically true, but because the Plaintiff failed to clarify which bracketed option applied (i.e. "will" or "will not"), the notice was fatally ambiguous.

1

Section 400.9–614(1) R.S.Mo. provides that, in a consumer-goods transaction, a notification of disposition must provide the following information:

(A) The information specified in section 400.9–613(1);

(B) A description of any liability for a deficiency of the person to which the notification is sent;

(C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available; and

(D) A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available;

Section 400.9–614(1)(A-D). The statute clarifies the required information does not have to include any "particular phrasing." Sec. 400.9–614(2). However, it also includes a "safe harbor" example that "*__when completed__, provides sufficient information.*" Sec. 400.9–614(3) (emphasis added).

(Name and address of secured party)

(Date)

NOTICE OF OUR PLAN TO SELL PROPERTY

(Name and address of any obligor who is also a debtor)

Subject: (Identification of Transaction)

We have your (describe collateral), because you broke promises in our agreement.

(For a public disposition:)

We will sell (describe collateral) at public sale. A sale could include a lease or license.

The sale will be held as follows:

Date:

Time:

Place: You may attend the sale and bring bidders if you want.

(For a private disposition:)

We will sell (describe collateral) at private sale sometime after (date). A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you (will or will not, as applicable) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

2

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at (telephone number).

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at (telephone number) (or write us at (secured party's address)) and request a written explanation. (We will charge you $ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.)

If you need more information about the sale call us at (telephone number) (or write us at (secured party's address) ).

We are sending this notice to the following other people who have an interest in (describe collateral) or who owe money under your agreement:

(Names of all other debtors and obligors, if any)

(End of Form)

In the safe harbor form reproduced above, copied verbatim from § 400.9–614(3) R.S.Mo., there are nearly 20 parentheticals or "blanks" that need to be filled in, modified or deleted for the safe harbor notice to provide accurate information in understandable form to a Defendant. In the present case, the Plaintiff added all of the necessary information to the blanks and modified nearly every parenthetical as appropriate, with the notably conspicuous exception of the one at issue.[1]

Plaintiff cited *First Community Federal Credit Union v. Levison*, 395 S.W.3d 571 (Mo. App. E.D. 2013). *Levison* is essentially the reverse factual scenario of the case at bar. In *Levison* the court determined that notice of liability for deficiency <u>was</u> sufficient when the notice specified that if the payoff balance was less than owed, the debtor would be responsible for the deficiency, but if there was surplus it would be returned to the debtor. *Levison*, 395 S.W.3d at 586. The court found this notice sufficient and tracked the safe harbor form as well. *Id.* at 586.

Defendants cite *Boulevard Bank v. Malott*, 397 S.W.3d 458 (Mo. App. W.D. 2013). In *Mallott*, the presale notice stated the collateral would "be sold at a public/private sale" if the

---

[1] Though not relevant to the Court's decision here, there is reason to believe that this was simply an oversight or typographical error. While the statute and plaintiff's "Notice of Sale" use multiple parentheses, this sentence is the only sentence in plaintiff's letter that uses "brackets" and italicized words, suggesting that this was something that was *intended* to be changed by the plaintiff's drafter, but overlooked before printing.

total due was not paid. *Id.* at 461. The *Mallott* court found this notice <u>was not</u> sufficient because "Public and private sales of collateral are significantly different methods of disposition." *Id.* at 463. The court in this case noted that the notice must be correct in all required information. *Id.* at 456. The *Mallott* court went on to note that even if all of the required information was in the presale notice, "the notice failed to inform Malott, *specifically and unambiguously*, that a private sale would in fact be conducted." Id. at 464 fn. 5 (emphasis added).

The case at bar is analogous to *Mallott*. Saber included the entire universe of possibilities (the Defendants would or would not owe a deficiency). Whether a defendant is or is not liable for a deficiency judgment are not just "significantly different" outcomes -- the results are directly opposite. If someone believes they will not be liable for a deficiency, a defendant might presumably pay no more attention to the notice than necessary to find a trash receptacle. Here, the chance that the Defendants might not owe a deficiency, even if the collateral sold for less than the amount due, was within the realm of possibilities. The law here requires specificity if the debtor is to be clearly alerted of the need to take steps to protect his or her interests. They cannot be left guessing in this regard.

"A creditor is held to the requirement of strict compliance with these notice provisions. Any doubt about what constitutes strict compliance is resolved in the debtor's favor." *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo. App. W.D. 2008) (citations omitted); see also *States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. App. S.D. 2011). In this case, the Court finds that the presale notice was deficient in a material manner, and therefore the Defendants' *Motion to Dismiss* is granted.

SO ORDERED.

Date: _____**2/22/2016**_____

_____
The Honorable Joseph L. Hensley
Case No: 15AO-AC02085

4

IN THE CIRCUIT COURT OF THE TWENTY-THIRD JUDICIAL CIRCUIT
OF MISSOURI AT HILLSBORO, JEFFERSON COUNTY, MISSOURI
ASSOCIATE DIVISION 14

FILED
JUN 13 2016
MICHAEL E. REUTER
CIRCUIT CLERK

UNIVERSAL CREDIT ACCEPTANCE, INC, )
ASSIGNEE OF INSTACREDIT AUTOMART, )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )   Cause No. 15JE-AC05976
                                   )
JONATHAN R. MYERS,                 )
                                   )
        Defendant.                 )

## JUDGMENT AND ORDER ON DEFENDANT'S MOTION TO DISMISS

On the 9th day of March, 2016, this matter was called for hearing on Defendant's "Motion To Dismiss". Plaintiff appeared by counsel, Defendant appeared by counsel, and argument was heard. The matter was thereupon taken under advisement by this Court. The Court has reviewed the pleadings, statutes, caselaw, and argument put forth by the parties in this matter.

Defendant's Motion To Dismiss is essentially based on Plaintiff's alleged failure to comply with Sections 400.9-601 to 400.9-629 RSMo (failing to plead sufficient facts to show compliance), thus failing to state a cause of action upon which relief could be granted. The point in contention here is Plaintiff's presale notice to Defendant, the third paragraph of which states, in part: "If we get less money than you owe, you (will or will not, as applicable) still owe us the difference." Defendant argues, based on *Boulevard Bank v. Malott,* 397 S.W.3d 458 (Mo. App. 2013), that this notice is not sufficient, as it tells the Defendant debtor nothing in regard to whether he will be responsible for paying anything to Plaintiff, even if the vehicle sells for less than he owes.

Plaintiff argues that Defendant had only to refer to his original sales contract, along with the "safe harbor" notice sent to him, to see that he would owe the Plaintiff money if the vehicle sold for less than what was owed. Plaintiff argues that *Mancuso v. Long Beach Acceptance Corporation,* 254 S.W.3d 88, requires Defendant to refer to his original sales contract to know his right and duties.

*Mancuso* is not instructive here, as the consumer (the Plaintiff in that case) had raised the issue of the inclusion in the notice sent to her of her duty to provide proof of insurance to the creditor in order to redeem her vehicle, claiming this raised an additional and incorrect barrier to her ability to redeem the vehicle. The Court there then looked at the contract to see if the inclusion of the insurance requirement did what was alleged.

Here, Plaintiff wants to require Defendant to read his contract along with the notice sent, in order to discern his full rights and duties. This would require a consumer to piece together various bits of information to get the whole story of his rights. Even then, with his initial sales contract stating that "…*I must pay the rest of what I owe…*" and the notice, sent much later, stating that he *"…(will or will not, as applicable) still owe…"*, the Defendant could easily still be left guessing as to what may happen. The Court does not believe this is the intent of the statute. See *States Resources Corp. v. Gregory, 339 S.W.3d 591 at 597:* "Adhering to Respondent's reasoning would permit almost any correspondence to be considered part of the requisite notification of disposition if it happened to contain some of the information required by section 400.9-614. For obvious reasons, this would defeat the purpose of the statutory notice requirement of apprising a debtor of the details of a sale so that the debtor could take whatever action he deemed necessary to protect his interest and would create significant uncertainty as to what actually constituted proper notice."

Plaintiff also seemed to argue that use of the "safe harbor" form per the statute is per se reasonable notice to a consumer. This may be true if the form is correctly and completely prepared by the creditor. This form has nearly twenty parentheticals or blanks that need to be filled in, modified, or deleted in order to provide accurate information in understandable form to a defendant/debtor. Here, the failure by Plaintiff to modify the language of the "(will or will not, as applicable)" section, left it unclear and ambiguous as to whether Defendant would be liable to Plaintiff.

By failing to inform Defendant whether Plaintiff intended to hold him liable for a deficiency if the sale of the car netted less than Defendant owed, Plaintiff failed to notify Defendant of the "description of any liability for a deficiency of the person to which the notification is sent," as required by section 400.9-614(1)(B).

Plaintiff's presale notice means it has not and cannot plead sufficient facts demonstrating compliance with section 400.9-614 as required by section 408.556, and requires "dismissal, pursuant to Rule 55.27(a)(6), for failure to state a cause of action upon which relief could be granted." *Updegraff*, 218 S.W.3d at 620. Because Plaintiff cannot cure the insufficient notice now, the dismissal should be with prejudice.

WHEREFORE, THE COURT FINDS, ORDERS, ADJUDGES, and DECREES as follows:

Defendant's Motion To Dismiss is hereby GRANTED.  For the reasons stated above, Plaintiff's cause of action is hereby dismissed with prejudice, for failure to state a cause of action upon which relief may be granted.

It is So Ordered this ___13___ day of ___June___, 2016.

Timothy S. Miller
Associate Circuit Court Judge
Division 14

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

COMMERCE BANK,              )
                                      )
              Plaintiff,     )
                                        )
        vs.               )
                                      )     Case No. 16CR-AC00091
BEVERLY J. WILLIAMSON   )
                                      )
and                    )
                                      )
REBECCA PALMER       )
                                      )
            Defendants.   )

**PLAINTIFF COMMERCE BANK'S RESPONSE TO DEFENDANTS' SUR-REPLY REGARDING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM**

### I.    Pre-Sale Notice—"Method of Intended Disposition" Claim

It is undisputed that Commerce's Pre-Sale Notice strictly complies with the safe harbor form's language in advising Defendants of the required information regarding the private sale that was the intended method of disposition—Defendants *conceded* this. Opp. at 8 ("Counterclaimant's agree this language tracks the safe harbor form...."). Defendants argue, however, that Commerce's Pre-Sale Notice is not reasonable because Commerce did not delete the safe harbor form's public disposition language. *See* Opp. at 8; Sur-Reply at 10. Defendants are wrong. Inclusion of the public disposition form language—which Commerce left *completely blank* and expressly denominated as "not applicable"—does not render Commerce's Pre-Sale Notice ambiguous, "misleading," or "not understandable" (Sur-Reply at 10) with regard to the method of intended disposition of the Vehicle. The *only* conclusion that can be drawn from reading Commerce's Pre-Sale Notice is what is stated, i.e., that Commerce "will sell the [Vehicle] at a private sale sometime after 03/03/14." *See* Exhibit B to 9/28/16 Mem. in Supp.

That's all the statute requires.  *See* RSMo. § 400.9-613(1)(C); *Boulevard Bank v. Malott*, 397 S.W.3d 458, 463 (Mo. Ct. App. 2013) ("Under § 400.9–613(1)(C), a lender's pre-sale notice must '[s]tate [ ] the method of intended disposition' of the collateral securing a loan.").  "[F]or a private sale, the notice need only inform the debtor of 'the time after which any other disposition is to be made.'"  *Id.* at 464, citing RSMo. § 400.613(1)(E).

## II.    Pre-Sale Notice—"May vs. Will" Claim

Defendants' Sur-Reply (and their earlier Opposition) focuses heavily on a claim they never pleaded.  Defendants admit they did not specifically allege in the Counterclaim that the Pre-Sale Notice is deficient because it uses the word "may" instead of "will," nor did the Counterclaim even refer to either of the statutory provisions which they raised for the first time in their Opposition.  *See* Sur-Reply at 4.  Defendants attempt to sidestep the procedural obstacle of unpleaded claims by expending nearly two pages trying to weave together an argument that the Counterclaim's generic reference to "other reasons" in ¶¶ 19-20, and the conclusory allegations in ¶¶ 21, 69, 70, 71, and 72, are sufficient.  Sur-Reply at 4.  Those allegations, however, are a far cry from the fact pleading required by Missouri law.  Indeed, those paragraphs provide no hint of the "may vs. will" claim, nor even a passing reference to the two statutory provisions (Sections 9-614(1)(B) and 613(5)) now relied on by Defendants.[1]

---

[1] Defendants' argument is further undermined by the specific allegations **Defendants' counsel** made in their *Saber* case (a pending trial court case on which they rely in their Sur-Reply).  In their Amended Counterclaim and putative class action in *Saber,* the Defendants' counsel alleged in ¶ 20:

> The Presale Notice sent to the Hendersons and the presale notices sent to the Class (defined below) were not reasonable as required by § 9-611(b) because, among other reasons, the presale notice failed to provide a description of any liability for a deficiency of the person to which the notification was sent **as required by sections § 9-614(1)(B) in that the presale notice stated the consumer "will or will not, as applicable"** owe the deficiency.

*See Saber*, Amended Counterclaim at ¶20, attached hereto as Exhibit 1(emphasis added).

- 2 -

The Court may elect to address the "may vs. will" claim now, but procedurally it would only be proper to do so *in the context of **denying** Counterclaimant's request* (Sur-Reply at 5) *for dismissal with leave to amend*.  Indeed, as discussed in Commerce's Reply, the Court should find that leave to amend would be futile, because even if the "may vs. will" claim were to be sufficiently pleaded, it would fail as it is based on a misconstruction of Section 9-614(1)(B).  Contrary to Defendants' assertions, Section 9-614(1)(B) does not require an "unconditional statement on the consumer's liability for a deficiency."  *See* Sur-Reply at 2-3, 6-8.  Rather, Section 9-614(1)(B) only requires Commerce to provide a "***description** of any liability for a deficiency.*"  RSMo. § 400.9-614(1)(B) (emphasis added).  And, the statute is clear that "[a] particular phrasing of the [description] is not required."  RSMo. § 400.9-614(2).  If the legislature intended to require a definitive statement of deficiency it would have so stated (*see, e.g.,* RSMo. § 400.9-613(1)(C)-(E); 11/18/16 Reply at 10-11), and this Court cannot adopt an interpretation of Section 9-614(1)(B) that ignores the legislature's intentional choice to use the verb "describe" instead of "state."  *See Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. banc 2006).

Defendants improperly attempt to infer the legislature's intent from the safe harbor form (Sur-Reply at 6); the safe harbor form is *not* the standard for interpreting Section 9-614(1)(B).[2] *See First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 583 (Mo. Ct. App. 2013).  Regardless of whatever relevance the trial courts in two other cases (where Defendants' counsel are also attempting class actions) may have placed on *Boulevard Bank,* Defendants' reliance on that case *here* is misplaced.  *Boulevard Bank* involved compliance with Section 9-613(1)(C), which— unlike Section 9-614(1)(B)—explicitly requires a lender to definitively "***[s]tate[]*** the method of

---

[2] Contrary to Defendants' assertion, Commerce did not "concede" it deviated from the safe harbor form (Sur-Reply at 1); rather it clearly stated it was assuming *arguendo* for purposes of addressing Defendants' newly minted "may vs. will" contention raised in their Opposition.  11/18/16 Reply at 8, n.5.

intended disposition of the collateral." *See Boulevard Bank*, 397 S.W.3d at 466. The notices at issue in the non-binding trial court orders in *Saber* and *Myers* were found unreasonable because the creditor simply left the bracketed option in the safe harbor form (including the italics)— "describing the liability" as two binary and polar opposite possibilities. *See* Sur-Reply, Exhibit A (notice stated: "If we get less money than you owe, you **[will or will not, as applicable]** still owe us the difference.") (emphasis added); Sur-Reply, Exhibit B at 1 (same). Defendants' attempt to "cut and paste" their earlier arguments from those two cases in order to shoehorn Commerce's notice into the paradigm presented in *Saber* and *Myers* is also meritless. (Sur-Reply at 8). As noted in *Saber*: "If someone believes they will *not* be liable for a deficiency" they "might presumably pay no more attention to the notice than necessary to find a trash receptacle" (*Saber* Opinion at 4 (emphasis added)). In stark contrast, Commerce's notice clearly alerts the Defendants that they could be liable for a deficiency and puts them on notice of the need to take steps to protect their interests. Indeed, it is implausible to imagine borrowers who receive Commerce's notice [credibly] claiming that they "believed they will *not* liable for a deficiency," and that they therefore "threw the notice in the trash." The orders from *Saber* and *Myers* are also inapplicable to the extent those opinions suggest or are premised on a conclusion that Section 9-614(1)(B) requires a definitive statement (i.e., "will" or "will not" as the only alternatives) of a consumer's liability for a deficiency.[3]

In fact, Commerce's notice is accurate when it warned Defendants of their liability. Future credits such as credit life refunds, credit disability refunds, GAP insurance refunds, prepaid insurance payments, etc. (*see, e.g.,* Post-Sale Notice, Ex. C to 9/28/16 Mem. in Supp.)

---

[3] It is worth noting that the docket sheet reflects that lender's counsel in *Saber* did not even submit an opposition memorandum to defendants' motion to dismiss. *See Saber* docket sheet, attached hereto as Exhibit 2. In *Myers*, the lender's focus was arguing the borrower should be "require[d]...to read his contract along with the notice sent, in order to discern his full rights and duties." *Myers* Opinion, Sur-Reply Exhibit B at 2.

might be added to the sale price and exceed the amount due on the loan. Similarly, if applicable, the bank may apply for rebates of pre-paid extended service contracts. Thus, the later addition of these credits/rebates to the sale price might well equal or exceed the amount due on the loan. Obviously the Bank would not be able to complete these calculations until after the sale. Accordingly, it could well be a misleading/inaccurate description to tell Defendants that a sale amount alone "will" or "will not" result in liability, as there are additional factors that affect the final tally and outcome. "May" is the most accurate phrase to put Defendants on notice of their potential liability and to "'alert [Defendants] of the need to take steps to protect [their] interests,'" which in a private sale means giving "'notice of the date after which [the sale] will occur provides a minimum deadline for curing the default.'" *Boulevard Bank*, 397 S.W.3d at 465, *quoting Union Safe Deposit Bank v. Floyd*, 90 Cal. Rptr.2d 36, 40-41 (1999). Thus, Commerce used the description of liability for deficiency as required for strict compliance with Section 9-614(1)(B).

Defendants argue that the use of the word "may" also renders Commerce's Pre-Sale Notice misleading under Section 9-614(5) because "Commerce's costs are part of the amount owed." Sur-Reply at 9. This argument is meritless because Commerce's "costs" are clearly not part of "the amount owed" by Defendants. "Costs" and the "amount you owe" in the Pre-Sale Notice are necessarily distinct because the lender is required to treat them differently under Section 9-615.[4] As Commerce accurately stated in its Reply, there may be situations in which

---

[4] The Safe Harbor Form (and Commerce's Pre-Sale Notice) clearly differentiates between "costs" and the "amount you owe": "The money that we get from the sale **(after paying our costs)** will reduce the **amount you owe**." RSMo. § 400.9-614(3) (emphasis added). If, as Defendants argue, "costs are part of the amount owed" (Sur-Reply at 9), the parenthetical included in the Safe Harbor Form would be superfluous because the "amount you owe" would *already* reflect payment of costs by the lender. The distinction between "costs" and "amount owed" is further reflected in Section 9-615, which Defendants curiously cite (without explanation) for the exact opposite proposition. Section 9-615 requires that lenders apply the proceeds of a disposition in a certain order. Only *after* the payment of "reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing . . . [the collateral]" (i.e., the **costs**) may the lender satisfy "obligations secured by the security interest . . . under which the disposition

the costs will exceed the proceeds of the sale, which thereby will not reduce the balance of the loan (i.e., "the amount you owe").

### III.    <u>Post</u>-Sale Notice—"Order of Required Information" Claim

Defendants have abandoned their Counterclaim allegations that Commerce's Post-Sale Notice does not contains all of the information required by Section 9-616(c) in the proper order. *See* Opp. at 9-13 and Sur-Reply at 11-12 (not addressing the "proper order" argument).  In any event, there is no question that Commerce's Post-Sale Notice contains all of the required information in the required order.  *See* 9/28/16 Mem. in Supp. at 11-12.

### IV.    Post-Sale Notice—"If Applicable" Claim

Defendants argue Commerce's Post-Sale Notice is deficient because Commerce inserted the words "[i]f applicable" in the following sentence in the Post-Sale Notice:

> If applicable, future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency.

*See* Exhibit C to Commerce's 9/28/16 Mem. in Supp.  Defendants' argument fails because the statute does not require specific words, and even if using "if applicable" was an "error," it was a minor one that did not make the Post-Sale Notice "seriously misleading."[5]   The statutory language, which Defendants advocate as correct, is already conditional through the reference to "future" debits/credits and the use of the word "may."  *See* RSMo. § 400.9-616(a)(1)(C).

---

is made" (i.e., the remaining contractual balance of principal plus interest— the "**amount you owe**").  RSMo. § 400.9-615(a)(1), (2).

[5] Commerce's Reply stated (p. 14) that "Commerce's inclusion of 'if applicable' is not an error," meaning that it was acceptable and Commerce strictly complied with the statute by using that same terminology in the Post-Sale Notice.  But, as Commerce went on to point out, if it was an error (e.g., if the Court determines that "if applicable" was an overinclusive transposition of the statutory language used in Section 9-616(a)(1)(C)), then it is not "seriously misleading," which is the standard under RSMo. §400.9-616(d).  Regardless, there is no doubt that the provision in question in Commerce's Post-Sale Notice strictly complies with Section 9-616(a)(1)(C).

Defendants argue that the legislature intended "may" to mean "permission." Sur-Reply at 11. That construction, of course, is contrary to a common-sense reading of the statute,[6] and inconsistent with the use of "may" in the Pre-Sale Notice section just discussed, where "may" clearly means "might." Defendants also argue that because Commerce knows it is charging interest, this somehow belies Commerce's assertion regarding the future nature and conditionality of the statement in question. That is nonsense. Interest is only one of the litanies of debits and credits that go on the tally sheet to affect the amount of the deficiency/final tabulation. *See, e.g.,* Post-Sale Notice, Exhibit C to Commerce's 9/28/16 Mem. in Supp.

### V.  <u>Post</u>-Sale Notice—"Interest" Argument

Defendants' elected to not further respond to Commerce's Reply regarding Defendants' argument that Commerce's Post-Sale Notice is deficient because it includes contractual interest from the date of default that Defendants claim is not allowed under RSMo. § 408.553.  *See* CC at ¶¶ 2, 25, 77-79.  This election is fatal because, as pointed out in Commerce's Reply, Defendants failed to address the plain and unambiguous language of Section 408.553, which allows Commerce to charge contractual interest.  Nor do they explain how *Hollins*—which involved a loan under Section 408.500 where the interest was *capped* (*see Hollins v Capital Sols. Investments I, Inc.*, 477 S.W.3d 19, 21 (Mo. Ct. App. 2015))—is applicable to the Note at issue in this case, which specifically provides for the accrual of contractual interest at the rate of 3.39% on all unpaid balances until paid in full.  *See* Exhibit A.  Defendants' failure to address these critical points, despite two opportunities to do so, should be dispositive of this claim.

### V.    Pre-Sale and Post-Sale Notice—Defendants' Speculative "Inaccuracies" Claim

---

[6] The language in question is not telling the borrower that the lender "has permission" to apply future credits and debits.  It is telling them that future credits and debits might exist and if so might affect the amount of the deficiency.

Defendants argue that Commerce's Motion to Dismiss should be denied because there might be inaccuracies in the information contained in Commerce's Post-Sale Notice and "discovery might reveal" more defects. Opp. at 15; Sur-Reply at 13-14. However, neither the Counterclaim, nor Defendants' two briefs, assert *any* inaccuracies—much less *specific* inaccuracies—in the information in either the Pre-Sale or Post-Sale Notice. *See generally* Counterclaim. It is not Commerce's burden to show an unpleaded claim is legally deficient. Missouri is a fact-pleading jurisdiction, and the Supreme Court has explicitly held that Defendants cannot rely on discovery to identify the facts upon which their claims rest. *See ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc. 1993). Simply incorporating the relevant notices and concluding they fail to include the requisite information is insufficient to state a claim against Commerce under Missouri law.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Edwin G. Harvey
    Edwin G. Harvey, #30565
    David M. Mangian, #61728
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on December 6, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

            /s/ David M. Mangian

| | |
|---|---|
| **Description** | 16CR-AC00091-01 COMMERCE BANK v BEVERLY J. WILLIAMSON PLAINTIFF: COMMERCE BANK ATTORNEY FOR PLAINTIFF: EDWIN G. HARVEY AND DAVID M. MANGIAN<br><br>DEFENDANTS: BEVERLY J. WILLIAMSON AND REBECCA ANN PALMER ATTORNEY FOR DEFENDANTS: JESSE B. ROCHMAN<br><br>JUDGE: KEVIN L. WALDEN RECORDING CLERK: MELANIE HIGGINS 660-542-1818<br><br>HEARING ON MOTION TO DISMISS |
| **Date** | 12/9/2016 **Location** [CRLWC00004] |

| Time | Speaker | Note |
|------|---------|------|
| 1:10:08 PM | JUDGE KEVIN WALDEN | Calling Case Number 16CR-AC00091-01 |
| 1:10:51 PM | Plaintiff's Attorney Edwin Harvey | |
| 1:10:56 PM | Plaintiff's Attorney David Mangian | |
| 1:10:59 PM | Defendant's Attorney Jesse Rochman | |
| 1:11:06 PM | JUDGE | |
| 1:11:31 PM | Plaintiff's Attorney Edwin Harvey | Argument |
| 1:32:33 PM | JUDGE | |
| 1:32:35 PM | Plaintiff's Attorney Edwin Harvey | |
| 1:40:57 PM | Plaintiff's Attorney Edwin Harvey | Nothing Further |
| 1:40:59 PM | Defendant's Attorney Jesse Rochman | Argument |
| 2:06:49 PM | JUDGE | |
| 2:09:57 PM | Defendant's Attorney Jesse Rochman | |
| 2:15:17 PM | Defendant's Attorney Jesse Rochman | Northing Further |
| 2:15:20 PM | Plaintiff's Attorney Edwin Harvey | Response |
| 2:26:13 PM | JUDGE | |
| 2:27:47 PM | Plaintiff's Attorney Edwin Harvey | |
| 2:34:58 PM | Plaintiff's Attorney Edwin Harvey | Nothing Further |
| 2:35:01 PM | Defendant's Attorney Jesse Rochman | Response |
| 2:43:47 PM | Defendant's Attorney Jesse Rochman | Nothing Further |
| 2:43:52 PM | Plaintiff's Attorney Edwin Harvey | Response |
| 2:45:36 PM | Plaintiff's Attorney Edwin Harvey | Nothing Further |
| 2:45:40 PM | Defendant's Attorney Jesse Rochman | |

12/9/2016

| | | |
|---|---|---|
| 2:46:02 PM | Plaintiff's Attorney Edwin Harvey | |
| 2:46:18 PM | JUDGE KEVIN L. WALDEN | |
| 2:46:38 PM | Defendant's Attorney Jesse Rochman | |
| 2:46:45 PM | JUDGE KEVIN L. WALDEN | |
| 2:48:50 PM | Defendant's Attorney Jesse Rochman | |
| 2:48:56 PM | Plaintiff's Attorney Edwin Harvey | |
| 2:49:41 PM | JUDGE KEVIN L. WALDEN | Off Record |

IN THE CIRCUIT COURT OF CARROLL COUNTY, MISSOURI

| | | |
|---|---|---|
| COMMERCE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 16CR-AC00091-01 |
| | ) | |
| BEVERLY J. WILLIAMSON and | ) | |
| REBECCA PALMER, | ) | |
| | ) | |
| Defendants. | ) | |

F I L E D

JUN 13 2017

CHERYL A. MANSUR
CIRCUIT CLERK
CARROLL COUNTY, MO

## ORDER

Before the Court is Plaintiff's *Motion to Dismiss Defendants' Amended Counterclaim* for

failure to state a claim upon which relief can be granted (the "*Motion*"). After due consideration

and being fully advised in the premises, Plaintiff's said *Motion* is DENIED.

Dated: ___13-JUN-2017___

_Kevin Z. Walden_
Judge

### In The 8th Judicial Circuit Court, Carroll County, Missouri
CARROLL COUNTY COURTHOUSE, CARROLLTON, MISSOURI 64633

**COMMERCE BANK  V BEVERLY J WILLIAMSON ET AL**          **CASE NO : 16CR-AC00091-01**

To:     File

YOU ARE HEREBY NOTIFIED that the court duly entered the following:

| Filing Date | Description |
| --- | --- |
| 13-Jun-2017 | Order |

_Clerk of Court_

CC:      File

ECC:     DAVID MICHAEL MANGIAN
         EDWIN G HARVEY
         EVAN CHOUTEAU MURPHY

Date Printed : 13-Jun-2017

# EIGHTH JUDICIAL CIRCUIT COURT
# CARROLL COUNTY, MISSOURI

Commerce Bank,

        Plaintiff/Counterclaim-Defendant,

v.                                      Case No. 16CR-AC00091-01

Beverly J. Williamson and          Division 1
Rebecca Palmer,

        Defendants/ Counterclaimants.

## CERTIFICATE OF MAILING

The undersigned hereby certifies that WORD versions of Counterclaimant's First Set of Interrogatories Directed to Commerce and Counterclaimant's First Set of Requests for Production Directed to Commerce were sent via E-mail on June 14, 2017, to the below counsel:

David M. Mangian
dmangian@thompsoncoburn.com

Edwin Harvey
eharvey@thompsoncoburn.com

*Attorneys for Plaintiff*

                                   THE ONDER LAW FIRM

By:                    _____
                              Martin L. Daesch, #40494
                              Jesse B. Rochman, #60712
                              110 E. Lockwood Ave.
                              St. Louis, MO  63119
                              (314) 963-9000 (telephone)
                              (314) 963-1700 (facsimile)
                              daesch@onderlaw.com
                              rochman@onderlaw.com
                              *Attorneys for Defendant*

**Certificate of Service**

I certify on June 14, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

_____

Electronically Filed - Carroll Circuit Division - June 14, 2017 - 04:01 PM

**EIGHTH JUDICIAL CIRCUIT COURT**
**CARROLL COUNTY, MISSOURI**

| | | |
|---|---|---|
| Commerce Bank, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16CR-AC00091-01 |
| v. | ) | |
| | ) | |
| Beverly J. Williamson and | ) | |
| Rebecca Palmer, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF COMMERCE BANK'S ANSWER TO AMENDED COUNTERCLAIM

COMES NOW Plaintiff Commerce Bank ("Plaintiff" or "Commerce"), through counsel, and for its Answer to Defendants Beverly J. Williamson's and Rebecca Palmer's (collectively, "Defendants") Amended Counterclaim ("Counterclaim"), states as follows:

### Nature of Case

1.    Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class; Defendants' Counterclaim speaks for itself and is the best evidence of its contents.    Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case.    Commerce denies all remaining allegations in Paragraph 1.

2.    Commerce denies the allegations in Paragraph 2.

3.    Commerce states that the documents attached to its Petition speak for themselves and are the best evidence of their contents, and specifically denies that Commerce has provided any notice that does not comply with applicable law, including the UCC.    Commerce admits the last three sentences of footnote 1.    Commerce denies all remaining allegations in Paragraph 3

6576774.8

(including the remaining allegations in footnote 1 to the Counterclaim) not expressly admitted herein.

4.      Commerce states that the documents attached to its Petition speaks for themselves and are the best evidence of their contents.  Commerce denies all remaining allegations in Paragraph 4.

5.      Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class. Defendants' Counterclaim speaks for itself and is the best evidence of its contents. Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 5.

### Parties

6.      Commerce lacks sufficient information to admit or deny the allegations in Paragraph 6 and therefore denies the same.

7.      Commerce denies the allegations in Paragraph 7 (Commerce is a "Missouri Bank & Trust Company.")

8.      The allegations in Paragraph 8 constitute legal conclusions to which Commerce need not respond.  To the extent Commerce must respond, Commerce denies the allegations in Paragraph 8.

### Jurisdiction and Venue

9.      The allegations in Paragraph 9 constitute legal conclusions to which Commerce need not respond.  To the extent Commerce must respond, Commerce admits that this Court currently has jurisdiction over this case.

10.     Commerce admits that Defendants purport to assert claims on behalf of themselves and putative class members that exceeds $25,000, but Commerce denies liability to Defendants and the putative class members, and further denies that class treatment is appropriate in this case.

11.     The allegations in Paragraph 11 constitute legal conclusions to which Commerce need not respond.  To the extent Commerce must respond, Commerce admits that venue is currently proper in Carroll County, Missouri.

## General Allegations

12.     Commerce admits that Defendants obtained a loan in connection with their purchase of a motor vehicle and states that the loan documents and security instrument speak for themselves and are the best evidence of their contents.   Commerce denies all remaining allegations in Paragraph 11.

13.     The allegations in Paragraph 13 constitute legal conclusions to which Commerce need not respond.  To the extent Commerce must respond, Commerce denies the allegations in Paragraph 13.

14.     Commerce admits that Defendants obtained a loan in connection with their purchase of a motor vehicle and states that the loan documents and security instrument speak for themselves and are the best evidence of their contents. Commerce denies all remaining allegations in Paragraph 14.

15.     The allegations in Paragraph 15 constitute legal conclusions to which Commerce need not respond.  To the extent Commerce must respond, Commerce denies the allegations in Paragraph 15.

16.     Commerce denies the allegations in Paragraph 16.

17.     Commerce denies the allegations in Paragraph 17.

18.     Commerce admits that it sent presale notices to Defendants, and states that any such presale notices speak for themselves and are the best evidence of their contents and that such notices were in compliance with applicable law.   Commerce denies all remaining allegations in Paragraph 18.

19.     Commerce denies the allegations in Paragraph 19.

20.     Commerce denies the allegations in Paragraph 20.

21.     Commerce denies the allegations in Paragraph 21.

22.     Commerce admits that the collateral securing Defendants' loan was sold at a private sale after sending Defendants a presale notice.   Commerce denies all remaining allegations in Paragraph 22.

23.     Commerce admits that it sent Defendants post-sale notices after sale of collateral and states that the post-sale notices speak for themselves and are the best evidence of their contents.  Commerce denies all remaining allegations in paragraph 23.

24.     Commerce denies the allegations in Paragraph 24.

25.     Commerce denies the allegations in Paragraph 25.

26.     Commerce admits that, if applicable, future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses had the potential to affect the amount of the surplus or deficiency for Defendants or any other borrower.  Commerce denies all remaining allegations in Paragraph 26.

27.     Commerce denies the allegations in Paragraph 27.

28.     Commerce denies the allegations in Paragraph 28.

29.     Commerce states that its Petition against Defendants speaks for itself and is the best evidence of its contents.  Commerce further states that, to the extent it has filed an action against an unidentified member of the putative class, the petition/complaint/claims in such action would speak for itself and would be the best evidence of its contents. Commerce denies all remaining allegations in Paragraph 29.

30.     Commerce states that to the extent it has obtained a deficiency judgment against any unidentified member of the putative class, the judgment would speak for itself and would be the best evidence of its contents.  Commerce denies all remaining allegations in paragraph 30.

31.     Commerce denies the allegations in Paragraph 31.

32.     Commerce denies the allegations in Paragraph 32.

33.     Commerce denies the allegations in Paragraph 33.

34.     Commerce denies the allegations in Paragraph 34.

35.     Commerce denies the allegations in Paragraph 35.

36.     Commerce denies the allegations in Paragraph 36.

37.     Commerce denies the allegations in Paragraph 37.

**Class Allegations**

38.     Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class.  Commerce states that Defendants' Counterclaim speaks for itself and is the best evidence of its contents.  Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 38.

39.     Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class.  Commerce states that Defendants' Counterclaim speaks for

Electronically Filed - Carroll Circuit Division - June 23, 2017 - 03:21 PM

itself and is the best evidence of its contents. Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 39.

40.     Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class. Commerce states that Defendants' Counterclaim speaks for itself and is the best evidence of its contents. Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 40.

41.     Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class. Commerce states that Defendants' Counterclaim speaks for itself and is the best evidence of its contents. Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 41.

42.     Commerce admits that Defendants purport to assert a claim on behalf of themselves and a putative class. Commerce states that Defendants' Counterclaim speaks for itself and is the best evidence of its contents. Commerce denies liability to Defendants and the putative class members and further denies that class treatment is appropriate in this case. Commerce denies all remaining allegations in Paragraph 42.

43.     Commerce denies the allegations in Paragraph 43.

44.     Commerce denies the allegations in Paragraph 44.

45.     Commerce denies the allegations in Paragraph 45.

46.     Commerce denies the allegations in Paragraph 46.

47.     Commerce denies the allegations in Paragraph 47.

48.     Commerce denies the allegations in Paragraph 48.

49.     Commerce denies the allegations in Paragraph 49.

50.     Commerce denies the allegations in Paragraph 50.

51.     Commerce denies the allegations in Paragraph 51.

52.     Commerce denies the allegations in Paragraph 52.

53.     Commerce denies the allegations in Paragraph 53.

54.     Commerce denies the allegations in Paragraph 54.

55.     Commerce denies the allegations in Paragraph 55.

56.     Commerce denies the allegations in Paragraph 56.

57.     Commerce denies the allegations in Paragraph 57.

58.     Commerce denies the allegations in Paragraph 58.

59.     Commerce denies the allegations in Paragraph 59.

60.     Commerce denies the allegations in Paragraph 60.

61.     Commerce denies the allegations in Paragraph 61.

62.     Commerce denies the allegations in Paragraph 62.

63.     Commerce denies the allegations in Paragraph 63.

64.     Commerce denies the allegations in Paragraph 64.

65.     Commerce denies the allegations in Paragraph 65.

66.     Commerce denies the allegations in Paragraph 66.

67.     Commerce admits that the allegations in the Counterclaim speak for themselves and are the best evidence of their contents.   Commerce denies all remaining allegations in Paragraph 67.

## Count I - Class's Claim

68.     For its answer to Paragraph 68, Commerce incorporates by reference herein its answers to Paragraph 1 through 67.

69.     Commerce denies the allegations in Paragraph 69.

70.     Commerce denies the allegations in Paragraph 70.

71.     Commerce denies the allegations in Paragraph 71.

72.     Commerce denies the allegations in Paragraph 72.

73.     Commerce denies the allegations in Paragraph 73.

74.     Commerce denies the allegations in Paragraph 74.

75.     Commerce denies the allegations in Paragraph 75.

## Count II - Missouri Subclass' Claim

76.     For its answer to Paragraph 68, Commerce incorporates by reference herein its answers to Paragraph 1 through 75.

77.     Commerce denies the allegations in Paragraph 77.

78.     Commerce denies the allegations in Paragraph 78.

79.     Commerce denies the allegations in Paragraph 79.

80.     Commerce denies the allegations in Paragraph 80.

81.     Commerce denies the allegations in Paragraph 81.

82.     Commerce denies the allegations in Paragraph 82.

83.     Commerce denies the allegations in Paragraph 83.

84.     Commerce denies the allegations in Paragraph 84.

85.     Commerce admits that it did not intend to and did not violate RSMo. § 408.553 or any other statutes under the UCC.

86.     Commerce denies the allegations in Paragraph 86.

87.     Commerce denies the allegations in Paragraph 87.

88.     Commerce denies the allegations in Paragraph 88.

FURTHER ANSWERING, Commerce denies that Defendants and the putative class members they seek to represent are entitled to any relief whatsoever and therefore denies that any relief should be awarded pursuant to Defendants' *ad damnum* clauses (or "Wherefore" clauses) in Counts I and II of the Counterclaim.

## DEFENSES AND AFFIRMATIVE DEFENSES

Each and every allegation of the Counterclaim not expressly admitted is hereby denied. While Commerce denies the allegations pled by Defendants, Commerce raises the following additional defenses.  Inclusion of these defenses is not intended to shift the burdens of proof or persuasion imposed by law.  Moreover, inclusion of the defenses shall not be deemed an admission of liability, damages, or other essential elements of Defendants' claims, but rather as alternative or additional defenses that may bar or otherwise limit recovery.

## FIRST AFFIRMATIVE DEFENSE

Defendants' Counterclaim fails to state a claim upon which relief may be granted against Commerce and further fail to state facts sufficient to entitle them to relief.

## SECOND AFFIRMATIVE DEFENSE

Defendants' claims fail because Defendants have not been damaged by any acts of Commerce and, to the extent Defendants have damages, Defendants failed to mitigate their damages.

**THIRD AFFIRMATIVE DEFENSE**

Commerce complied with the provisions of the Article 9 of the Missouri Uniform Commercial Code, in its handling of Defendants' loan. Furthermore, Commerce acted in good faith in conformity with the applicable statutes, rules, regulations, and/or interpretations. Accordingly, Commerce is entitled to each and every defense and limitation of liability provided by those statutes and regulations.

**FOURTH AFFIRMATIVE DEFENSE**

Defendants' claim for exemplary or punitive damages violates the Due Process and Double Jeopardy Clauses of the Fifth Amendment, the Excessive Fines Clause of the Eighth Amendment, and the laws of the State of Missouri. Commerce further adopts by reference the defenses, criteria, limitations, standards and constitutional protections mandated or provided by the United States Supreme Court in the following cases: *BMW v. Gore*, 517 U.S. 559 (1996); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 923 (2001); *State Farm v. Campbell*, 538 U.S. 408 (2003); and, *SAFECO Insurance Co. of America v. Burr*, 127 S.Ct. 2201 (2007).

**FIFTH AFFIRMATIVE DEFENSE**

While Commerce denies that Defendants or putative class members are entitled to any relief whatsoever, and further deny that any right to recover a deficiency against Defendants or putative class members was eliminated, to the extent Defendants claim Commerce is barred from recovering a deficiency under RSMo. § 400.9-626 or the "no-notice-no-deficiency" rule, Defendants are barred by the express language of RSMo. § 400.9-625(d) from recovering any damages under RSMo. § 400.9-625(b).

## SIXTH AFFIRMATIVE DEFENSE

Defendants' claims against Commerce are barred, in whole or in part, due to Defendants' prior material breach of the loan agreement, and their failure to pay precludes their claims. Furthermore, Defendants' claims may be barred and/or circumscribed by the express terms of the loan documents.

## SEVENTH AFFIRMATIVE DEFENSE

Defendants' claims against Commerce are barred, in whole or in part, because the notices provided to Defendants by Commerce were proper under RSMo. § 400.9-613 and RSMo. § 400.9-614.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants' claim fails because Defendants have not been damaged by any acts of Commerce and, to the extent Defendants have damages, such damages were caused by Defendants' own actions or inactions.

## NINTH AFFIRMATIVE DEFENSE

Defendants' claims and/or those of the putative class are barred, in whole or part, by the doctrines of laches, waiver and/or estoppel.

## TENTH AFFIRMATIVE DEFENSE

Defendants' claims and/or those of the putative class are barred, in whole or in part, by Commerce's good faith compliance with applicable law, including but not limited to the mandatory disclosure and disclaimer requirements of Article 9 of the Missouri Uniform Commercial Code.

### ELEVENTH AFFIRMATIVE DEFENSE

This action may not be maintained as a class action because Defendants, and/or the putative class members, cannot satisfy the elements of Missouri Rule 52.08.

### TWELFTH AFFIRMATIVE DEFENSE

Defendants' request for attorneys' fees and costs is inappropriate under Missouri law because Commerce alleged conduct cannot support such an award of fees and costs.

### THIRTEENTH AFFIRMATIVE DEFENSE

Defendants and/or the putative class members may not recover from Commerce because, among other reasons, they suffered no actual damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendants' claims against Commerce are barred, in whole or in part, by the doctrines of set-off or recoupment.

### FIFTEENTH AFFIRMATIVE DEFENSE

No punitive damages can be awarded in this case under the due process clause of the Fourteenth Amendment to the United States Constitution and the Constitution, law and public policy of Missouri, insofar as made by a jury that: (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award; (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of Commerce; (4) is not permitted to award punitive damages under a vague or arbitrary standard, such as one that does not define

with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) is not properly instructed regarding Defendants' burden of proof with respect to each and every element of a claim for punitive damages; and/or (6) is not subject to trial court and appellate judicial review on the basis of constitutionally adequate and objective standards.

### SIXTEENTH AFFIRMATIVE DEFENSE

No punitive damages can be awarded in this case under the due process clause of the Fourteenth Amendment to the United States Constitution and the Constitution, law and public policy of Missouri that (1) exceed what is reasonably required to vindicate Missouri's legitimate interests in punishment and deterrence, or seek to punish or deter conduct occurring outside Missouri, or seek to punish or deter conduct causing harm outside Missouri; or (2) would result in multiple punitive damages awards for the same course of conduct.

### SEVENTEENTH AFFIRMATIVE DEFENSE

No punitive damages can be awarded in this case under the due process clause of the Fourteenth Amendment to the United States Constitution and the Constitution, law and public policy of Missouri because laws regarding the standards for determining liability for punitive damages fail to give Commerce prior notice of the conduct for which punitive damages may be imposed, and therefore are void for vagueness.

### EIGHTEENTH AFFIRMATIVE DEFENSE

No punitive damages can be awarded in this case under the due process clause of the Fourteenth Amendment to the United States Constitution and the Constitution, law and public policy of Missouri, because any award of punitive damages is penal in nature without according to Commerce the same protections that are accorded to a criminal Defendant.

## NINETEENTH AFFIRMATIVE DEFENSE

No punitive damages can be awarded in this case under the due process clause of the Fourteenth Amendment to the United States Constitution and the Constitution, law and public policy of Missouri, insofar as such award results in whole or in part from improper or unfair argument by Defendant including without limitation as to Commerce's wealth, corporate status or from otherwise unfair or improper proceedings.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants' and the putative class' claims fail for lack of standing.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

While Commerce denies that Defendants or putative class members are entitled to any relief whatsoever, and further deny that any right to recover a deficiency against Defendants or putative class members was eliminated, to the extent Defendants are entitled to damages they are required to elect their remedy – i.e., take either the elimination of deficiency under Missouri common law or the statute damage sunder the UCC (but not both).

## TWENTY-SECOND AFFIRMATIVE DEFENSE

While Commerce denies that Defendants or putative class members are entitled to any relief whatsoever, and further deny that any right to recover a deficiency against Defendants or putative class members was eliminated, to the extent Defendants are entitled to damages Commerce can offset the amount of any deficiency against any recovery by Defendants or putative class members.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendants' and the putative classes' claims are barred in whole or in part by the three year statute of limitations in RSMo. § 516.130(2), or alternatively the five year statute of

limitations in RSMo. § 516.120, or alternatively the six year statute of limitations in RSMo. § 516.420.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Defendants' and the putative classes' claims are preempted in whole or in part by Sections 1681h(e) and 1681t(b)(1(F) of the Fair Credit Reporting Act. *See Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011); *see also Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011).

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendants and the putative classes are not entitled to putative damages.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Commerce states that its investigation of this matter is ongoing, and Commerce hereby reserves the right to state additional affirmative defenses as applicable to the claims alleged herein.

WHEREFORE, Plaintiff Commerce Bank, having fully answered Defendants' Counterclaim, respectfully requests the Court dismiss the Counterclaim with prejudice, award Commerce its costs and attorneys' fees incurred herein, and award such other and further relief as the Court deems just and proper.

Electronically Filed - Carroll Circuit Division - June 23, 2017 - 03:21 PM

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Edwin G. Harvey
     Edwin G. Harvey, #30565
     David M. Mangian, #61728
     One US Bank Plaza
     St. Louis, Missouri 63101
     314-552-6000
     FAX 314-552-7000
     eharvey@thompsoncoburn.com
     dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

## CERTIFICATE OF SERVICE

     I hereby certify that on June 23, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                          /s/ Edwin G. Harvey

**EIGHTH JUDICIAL CIRCUIT COURT**
**CARROLL COUNTY, MISSOURI**

Commerce Bank,

      Plaintiff/Counterclaim-Defendant,

v.

Beverly J. Williamson and
Rebecca Palmer,

      Defendants/Counterclaimants.

Case No. 16CR-AC00091-01

Division 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Plaintiff/Counterclaim-Defendant Commerce Bank's Answers and Objections to Defendant/Counterclaimant's First Set of Interrogatories Directed to Plaintiff/Counterclaim-Defendant Commerce Bank, Plaintiff/Counterclaim-Defendant Commerce Bank's Responses and Objections to Defendant/Counterclaimants' First Set of Requests for Production Directed to Plaintiff/Counterclaim-Defendant Commerce Bank, and documents bates labeled Commerce 000001 to Commerce 000142, were sent via electronic mail to the following attorneys of record, this 14th day of September, 2017:

    Martin L. Daesch
    Jesse B. Rochman
    Evan C. Murphy
    ONDER, SHELTON, O'LEARY & PETERSON, LLC
    110 E. Lockwood Drive
    St. Louis, MO 63119
    daesch@onderlaw.com
    rochman@onderlaw.com
    murphy@onderlaw.com

    Attorneys for Counterclaimants

6624120

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
    Edwin G. Harvey, #30565
    David M. Mangian, #61728
    One US Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000 (Phone)
    (314) 552-7000 (Fax)
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Plaintiff/Counterclaim-Defendant*
*Commerce Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2017 the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ David Mangian

6624120

2

**EIGHTH JUDICIAL CIRCUIT COURT**
**CARROLL COUNTY, MISSOURI**

Commerce Bank,                  )
                                )
        Plaintiff,          )
                                )      Case No. 16CR-AC00091-01
v.                             )
                                )
Beverly J. Williamson and    )
Rebecca Palmer,           )
                                )
        Defendants.      )

**NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE**

COMES NOW Plaintiff Commerce Bank, through counsel, pursuant to Supreme Court Rule 67.02(a), and hereby dismisses with prejudice its Petition on Contract, filed May 2, 2016, against Defendants Beverly J. Williamson and Rebecca Palmer.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Edwin G. Harvey
     Edwin G. Harvey, #30565
     David M. Mangian, #61728
     One US Bank Plaza
     St. Louis, Missouri  63101
     314-552-6000
     FAX 314-552-7000
     eharvey@thompsoncoburn.com
     dmangian@thompsoncoburn.com

*Attorneys for Plaintiff Commerce Bank*

6624468.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Edwin G. Harvey

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

| | |
|---|---|
| COMMERCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 16CR-AC00091-01 |
| BEVERLY J. WILLIAMSON | ) |
| | ) |
| and | ) |
| | ) |
| REBECCA PALMER | ) |
| | ) |
| Defendants. | ) |

**COUNTERCLAIM DEFENDANT COMMERCE BANK'S MOTION TO REALIGN THE PARTIES**

COMES NOW Counterclaim Defendant Commerce Bank ("Commerce"), and moves the Court for an order formally realigning Commerce as the "Defendant" and Counterclaim Plaintiffs Beverly J. Williamson and Rebecca Palmer (collectively, "Counterclaim Plaintiffs") as the "Plaintiffs" in this case. In Support of its Motion, Commerce states as follows:

## I. INTRODUCTION

1. This case began on May 2, 2016, as a simple claim for a $13,023 deficiency judgment filed by Commerce against Counterclaim Plaintiffs in the Associate Circuit Division of this Court, which was the only court where Commerce could file the claim. Commerce has dismissed its claim with prejudice, and the case is now *solely* a putative *nationwide* class action filed by Counterclaim Plaintiffs seeking millions of dollars in damages from Commerce for alleged violations of the Uniform Commercial Code. Despite this significant change from the case as it was filed, Counterclaim Defendant Commerce remains nominated as the party-plaintiff and Counterclaim Plaintiffs remains denominated as the party-defendants in this case. These

labels are incorrect, as they do not reflect the actual interests of the parties in this case—and if this case proceeds to trial will result in jury confusion. In the current posture of the case, there is no Plaintiff and there is no Defendant, only Counterclaim Plaintiffs and a Counterclaim Defendant. These inappropriate designations also prevent Counterclaim Defendant Commerce from removing Counterclaim Plaintiff's putative *nationwide* class action to federal court where it should be venued pursuant to the Class Action Fairness Act ("CAFA"), which was enacted to codify Congress' "*strong preference* that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41. (emphasis added). For these reasons, discussed more fully below, the Court should enter an order formally re-aligning the parties with Counterclaim Defendant Commerce as the party-defendant and Counterclaim Plaintiffs as the party-plaintiffs.

## II.     BACKGROUND

2.     On May 2, 2016, Commerce filed a Petition against Counterclaim Plaintiff seeking a deficiency judgment in the amount of $13,023.15 plus reasonable attorney fees, costs, and interest at the contract rate of 3.39%. Because the deficiency amount sought by Commerce was less than $25,000, Commerce was required to file its claim in the Associate Circuit Division of this Court instead of in the Circuit Division or federal court. *See* RSMo. § 517.011.1(1); 28 U.S.C. § 1332.

3.     On June 14, 2016, Defendants filed their First Amended Counterclaim ("Counterclaim") against Commerce. The Counterclaim alleges two claims on behalf of Counterclaim Plaintiffs and a putative nationwide class of consumers based on alleged defects in certain pre-sale and post-sale notices that Commerce was required to send to Defendants and the

putative class members under the UCC. Commerce filed a Motion to Dismiss the Counterclaim, which the Court denied on June 13, 2017.

4.       On September 22, 2017, pursuant to Supreme Court Rule 67.02, Commerce served Notice of Voluntary Dismissal With Prejudice of its Petition against Counterclaim Plaintiffs in this case.. The dismissal was immediately effective leaving the Counterclaim as the only remaining claims in this case. *Freeman v. Leader Nat. Ins. Co.*, 58 S.W. 3d 590, 595 (Mo. App. 2001) ("A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed.").

## III.    ARGUMENT

5.       The Court should realign the parties in this case with Counterclaim Plaintiffs as the party-plaintiffs and Counterclaim Defendant Commerce as the party-defendant. Realignment is appropriate because it will reflect the parties' actual interests in this case, will eliminate the risk of confusing a jury should this case proceed to trial, and will allow Commerce to remove Counterclaim Plaintiffs' putative nationwide class action claims to federal court where they should be heard pursuant to CAFA.

6.       This Court has the inherent authority to realign the parties based on their true interests in this lawsuit. *See, e.g*., *Blue Cross and Blue Shield of Missouri v. Nixon*, 1998 WL 35151872 (Mo. Cir.) (order granting realignment of the parties) ("This Court has, and indeed all courts have, the power to realign the parties as their true interests may dictate – regardless of the nominal alignment assigned them by the necessities of service and pleadings."); *see also Moody v. Ball*, 753 S.W.2d 590, 592 (Mo. Ct. App. 1988) (circuit court granted party's motion to realign); *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 177 (Mo. banc 1993) (analyzing whether the Circuit Court erred in refusing to formally realign the parties after a defendant

entered into a Mary Carter Agreement with the plaintiff); *Teeter v. Missouri Highway & Transp. Comm'm*, 891 S.W.2d 817 (Mo. banc 1995) (noting that the Circuit Court had granted the plaintiff's motion for realignment of the parties); *Anderson v. Wittmeyer*, 834 S.W.2d 780, 784 n. 3 (Mo. Ct. App. 1992) (stating that a motion to realign a misjoined party from plaintiff to defendant was preferred over dismissing the misjoined party from the action).

      7.    Counterclaim Defendant Commerce's voluntary dismissal of its Petition with prejudice leaves Counterclaim Plaintiffs' putative nationwide class action Counterclaim as the only claims remaining in this case.  There is no question that Counterclaim Defendant Commerce is the "defendant" and that Counterclaim Plaintiffs are the "plaintiffs" in the Counterclaim.  *See* Jeffrey A. Burns, 2 Mo. Prac. § 8.4, *Effect of Dismissal on Counterclaims, Cross claims and Third Party Claims* (4th ed. 2017) ("The result of a dismissal of plaintiff's petition in such a case [where a counterclaim has been filed] is that the parties change places; plaintiff becomes defendant and defendant becomes plaintiff.").  Thus, realignment as requested by Counterclaim Defendant Commerce is appropriate because it would be consistent with the true interests of the parties in this case.  It would also avoid any jury confusion should this case proceed to trial by having the parties appropriately aligned.

      8.    Realignment is also appropriate because it will allow Counterclaim Defendant Commerce to remove this case to federal court, which is the appropriate forum for Counterclaim Plaintiffs' putative nationwide class action claims under CAFA.

      9.    "Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions." *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1197 (11th Cir. 2007); *see also* S. Rep. No. 109-14, at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41.  The purpose of CAFA is to "(1) assure fair and prompt recoveries for class members with legitimate claims; (2) restore the intent

- 4 -

of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction; and (3) benefit society by encouraging innovation and lowering consumer prices." Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(b), 119 Stat. 4 (2005).

10. Indeed, the Eighth Circuit has recognized that "[a] primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell v. Hershey Co.*, 557 F.3d 953, 957–58 (8th Cir. 2009) (citing CAFA, Pub.L. No. 109–2, § 2(a)(2)(B), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010) ("Congress passed the Class Action Fairness Act primarily to curb perceived abuses of the class action device which…had often been used to litigate multi-state or even national class actions in state courts.").

11. CAFA's "provisions should be read broadly, with a *strong preference* that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41. (emphasis added).

12. The only reason Counterclaim Plaintiffs putative *nationwide* class action claims are in this Court instead of in federal court pursuant to CAFA is that those claims were filed as counterclaims in this case instead of as an original action. Counterclaims are not ordinarily removable under federal law. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941); *Resurgent Capital Servs. LP v. Thomason*, No. 12-3436-CV-ODS, 2012 WL 5398189, at *2 (W.D. Mo. Nov. 5, 2012).

- 5 -

Electronically Filed - Carroll Circuit Division - September 22, 2017 - 03:08 PM

13.     Several federal courts, however, have allowed original state court plaintiffs to remove original counterclaims where the parties have been realigned by the state court prior to removal.  *See Hickman v. Alpine Asset Mgmt. Grp., LLC*, 919 F. Supp. 2d 1038, 1043 (W.D. Mo. 2013); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F. Supp. 2d 1020, 1028 (N.D. Ohio 2010), *aff'd,* 719 F.3d 564 (6th Cir. 2013) ("a state court order realigning a particular party as a plaintiff or a particular party as a defendant can create removal jurisdiction where none previously existed, subject to the caveat that a federal court must exercise its own judgment to ensure that opposing parties are on opposite sides of a dispute."); *Stewart v. Bureaus Inv. Grp. No. 1*, No. 3:10-CV-1019-WKW, 2011 WL 2313213, at *6 (M.D. Ala. June 10, 2011) (finding that a state court plaintiff realigned as a defendant can remove a case under 28 U.S.C. § 1441 and denying motion to remand); *Zea v. Avis Rent a Car Sys., Inc.*, 435 F. Supp. 2d 603, 607 (S.D. Tex. 2006) (finding that "the State Court's Realignment Order turned this case from a nonremovable case to a removable case, and that it was properly removed to this Court.").

14.     In *General Credit Acceptance Co., LLC v. Deaver*—a case litigated by counsel for Counterclaim Plaintiffs—GCAC had failed to seek realignment prior to removing to federal court.  The United States District Court discussed the above cases and distinguished them on the basis that in those cases the state court had realigned the parties prior to removal.  *See* No. 4:13CV00524 ERW, 2013 WL 2420392, at *1 (E.D. Mo. June 3, 2013) The Court held: "However, unlike the instant action, in three of the cases cited by GCAC[1]… , the *state court* had already realigned the parties prior to the removal.  These federal courts held that when a state

_____

[1] The three cases were:  *Hrivnak v. NCO Portfolio Mgmt.,* 723 F.Supp.2d 1020, 1028 (N.D.Ohio 2010), *Passmore v. Discover Bank,* No. 1:11CV01347, 2012 WL 2332233, at * 1(N.D. Ohio June 14, 2012), and *Stewart v. Bureaus Ins. Grp. # 1,* No. 3:10CV1019, 2011 WL 2313213, at *3 (M.D. Ala. June 10, 2011)

court realigns parties, the realigned defendant can properly remove an action to federal court. *Here, the state court did not realign the parties, and GCAC was still the plaintiff at removal*.". *Id.*

15.     By filing this motion, Counterclaim Defendant Commerce is following the guidance of *Deaver,* and (unlike the removing party in that case) seeking realignment in the state court before removal.  The federal court's statements in *Deaver*, and the *Hrivnak*, *Passmore, Stewart*, and *Zea* cases, demonstrate that this case will be removable to federal court if the Court realigns the parties consistent with their actual interests in this case.

16.     The Court should grant Counterclaim Defendant Commerce's Motion and realign the parties consistent with their interests in this case so that Counterclaim Defendant Commerce can remove this case to federal court pursuant to CAFA.  Federal court is the proper forum for Counterclaim Plaintiffs putative nationwide class action claims and denial of Counterclaim Defendant Commerce's Motion would result in exactly the type of situation Congress intended to avoid by enacting CAFA.  *See Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891, 901 (8th Cir. 2017) ("In enacting CAFA, Congress expressed concern about lawyers who 'game' the procedural rules and keep nationwide or multi-state class actions in state courts[.]"); *see also* Class Action Fairness Act of 2005, PL 109–2, February 18, 2005, 119 Stat 4, § 2 (a)(4)(A) ("Abuses in class actions undermine the national judicial system…in that State and local courts are keeping cases of national importance out of Federal court[.]").

17.     Counterclaim Defendant Commerce anticipates Counterclaim Plaintiffs will oppose this Motion and in doing so will (as their counsel has done elsewhere) rely on *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 176-77 (Mo. banc 1993).  But *Carter* is inapposite. There, one co-defendant appealed the circuit court's refusal to formally realign another co-

- 7 -

defendant as a party plaintiff, after that co-defendant had entered into a Mary Carter Settlement Agreement[2] with the plaintiff.. *Carter*, 857 S.W.2d 177. The Supreme Court agreed that the settling co-defendant's status as a party-defendant was illusory, but held formal realignment was not necessary in that case because "co-defendants who have filed cross-claims to apportion fault against each other are usually mutually antagonistic" and realignment "might promote, instead of alleviate, confusion about the parties true interests" in the case. *Id.* ("With such formal realignment, the jury would be asked to assess a percentage of fault against [the settling co-defendant], which would have every appearance of a party-defendant but no similarity to a party-plaintiff"). The reason for declining to realign in *Carter* resulted from the complexities of the Mary Carter Settlement Agreement, including the fact that the defendant there was still a defendant and realignment would likely engender more confusion than it would alleviate. The *Carter* situation has no application here because the parties are already on opposite sides of the "v"—but Counterclaim Plaintiffs are clearly the party-*plaintiffs* and Counterclaim Defendant Commerce is clearly the party-*defendant* in the Counterclaim.

18.     We also anticipate that Counterclaim Plaintiffs' counsel will oppose this motion by submitting a recent decision from a St. Louis County court where realignment was denied. *See Americredit Financial Services, Inc. v. Nicole M. Bell*, No. 15SL-AC24506-01 (Mo. Cir. Ct. July 11, 2017). A copy of that order is attached. It is inapposite because it is premised on *Carter*, which is factually and legally distinguishable as discussed above. The order also does not consider removal or Congress' strong preference under CAFA to have putative *nationwide*

---

[2] The term "Mary Carter Settlement Agreement" encompasses a wide variety of settlement arrangements that occur in multiparty litigation when fewer than all defendants settle with the plaintiff. *See Carter*, 857 S.W.2d at 175. A Mary Carter agreement limits the liability of the settling defendant and gives the plaintiff a guaranteed minimum recovery. *Id.* The settling defendant typically remains a party to the pending action without disclosing the full agreement. If a judgment against the non-settling defendants is for more than the amount of the settlement, any money collected will first offset the settlement so that the settling defendant may ultimately pay nothing. *Id.*

Electronically Filed - Carroll Circuit Division - September 22, 2017 - 03:08 PM

class actions (which implicate numerous non-Missouri statutes and laws) like this one handled by federal courts who have far greater resources than a Missouri state court. S. Rep. No. 109-14, at 5 ("Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court."); *see also Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8 Cir. 2010) (Congress enacted CAFA so that federal courts would be the ones considering interstate cases of national importance).

19.     It is true that Counterclaim Defendant Commerce originally filed this lawsuit in the Associate Circuit Division of this Court—but it did not do so by choice or out of preference for the forum. Rather it filed here because of the small amount (approximately $13,000) at issue.

20.     *In no way* did Counterclaim Defendant Commerce intentionally select this Court as the forum in which to defend against a putative *nationwide* class action seeking the recovery of millions of dollars in damages under a multitude of state laws that each adopt parts of the UCC. Instead, the decision to file a nationwide class action in an associate state court was made by counsel for Counterclaim Plaintiffs. Rather than file their national class claims as original actions, they seek out deficiency judgment actions and file putative class actions as *counterclaims* in an effort to avoid having those cases removed to federal court where Congress says they belong under CAFA. That was exactly what happened in *Deaver*, where Counterclaim Plaintiffs' counsel here was also counsel and vigorously opposed removal (the court due to the failure to realign in the state court). 2013 WL 2420392, at *1. Counterclaim Plaintiffs' counsel's strategy is well-documented in many cases. *See, e.g.*, *Ally Financial, Inc. v. Marino*, Case No. 16WY-CV00069 (Mo. Cir. June 3, 2016) (bringing UCC class action as a counterclaim to deficiency action for $6,511.91); *Focus Bank v. Scott*, Case No. 15MI-00193-01 (Mo. Cir.

Feb. 20, 2017) (UCC class action as counterclaim to deficiency action for $2,218.88); *Lou Budke's Arrow Finance Co. v. Kyles*, Case No. 15SL-AC29334-01 (Mo. Cir. Aug. 4, 2016) (class action counterclaims in response to deficiency action for $3,206.18); *Ally Financial, Inc. v. Keyser*, Case No. 16CA-AC00449-01 (Mo. Cir. Sept. 6, 2016) (class action counterclaims in response to deficiency action for $5,344.07); *United Auto Credit Corp. v. Rucker*, Case No. 1522-AC11032 (Mo. Cir. May 9, 2016) (class action counterclaims in response to deficiency action for $6,659.06); *Universal Credit Acceptance, Inc. v. Myers*, Case No. 15JE-AC05976 (Mo. Cir. Feb. 24, 2016) (class action counterclaim in response to deficiency action for $9,528.73); *Saber Acceptance Co. v. Henderson*, Case No. 15AO-AC02085 (Mo. Cir. Jan. 21, 2016) (class action counterclaims in response to deficiency action for $8,914.57); *General Credit Acceptance Co. v. Deaver*, Case No. 11SL-AC28887 (Mo. Cir. Apr. 20, 2012) (class action counterclaims in response to deficiency action for $11,776.15).

21.      All Counterclaim Defendant Commerce is asking is that the Court formally realign the parties consistent with their actual designations and interests in this case.  Such a realignment will not prejudice Counterclaim Plaintiffs in any manner whatsoever, will avoid any jury confusion at trial, and will allow Counterclaim Defendant Commerce to remove Counterclaim Plaintiffs' putative nationwide class action to federal court where it should be, pursuant to CAFA. Although Counterclaim Plaintiffs may disagree with Counterclaim Defendant Commerce's interpretation of federal law regarding removal of a realigned counterclaim by an original state court plaintiff, that is an issue that should (and will if the Court grants realignment) be decided by a federal court interpreting federal removal statutes and case law.  This Court should grant Counterclaim Defendant Commerce the opportunity to seek to have this putative nationwide class action heard in federal court where it should be under CAFA.

## IV.    CONCLUSION

22.    For the foregoing reasons, Counterclaim Defendant Commerce Bank respectfully requests that the Court grant its Motion to Realign Counterclaim Plaintiffs Beverly J. Williamson and Rebecca Palmer as the "Plaintiffs" and Commerce Bank as the "Defendant" in this action and for any further relief this Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By:  /s/ Edwin G.  Harvey
    Edwin G.  Harvey, #30565
    David M.  Mangian, #61728
    One US Bank Plaza
    St.  Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000
    eharvey@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Counterclaim Defendant Commerce Bank*

Electronically Filed - Carroll Circuit Division - September 22, 2017 - 03:08 PM

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Edwin G. Harvey

IN THE CIRCUIT COURT OF CARROLL COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| COMMERCE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 16CR-AC00091-01 |
| BEVERLY J. WILLIAMSON | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REBECCA PALMER | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that on Tuesday, October 24, 2017 at 1:30 p.m., Counterclaim Defendant Commerce Bank will call up for hearing its Motion to Realign the Parties at the Carroll County Courthouse, Division I, or as soon thereafter as counsel may be heard.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
  Edwin G. Harvey, #30565
  David M. Mangian, #61728
  One US Bank Plaza
  St. Louis, Missouri 63101
  314-552-6000
  FAX 314-552-7000
  eharvey@thompsoncoburn.com
  dmangian@thompsoncoburn.com

*Attorneys for Counterclaim Defendant Commerce Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

<div align="right">

   /s/ David M. Mangian    

</div>

# EIGHTH JUDICIAL CIRCUIT COURT
# CARROLL COUNTY, MISSOURI

Commerce Bank,

       Plaintiff/Counterclaim-Defendant,

v.

Beverly J. Williamson and
Rebecca Palmer,

       Defendants/Counterclaim-Plaintiffs.

Case No. 16CR-AC00091-01

Division 1

## Response to Oppose Commerce Bank's
## Motion to Realign the Parties

Counterclaim-Plaintiffs, through their undersigned counsel, respond to oppose Counterclaim-Defendant Commerce Bank's ("Commerce") motion to realign the parties:

### A. Introduction

Over 17 months ago, Commerce sued Counterclaim-Plaintiffs in this Court for a deficiency judgment after it repossessed their car. Counterclaim-Plaintiffs responded by filing an answer and a class action counterclaim on nearly 15 months ago. Rather than seeking realignment or removing the case to federal court back when the class action counterclaim was filed, Commerce wanted a peek at this Court's view of the law when it moved the Court to dismiss the counterclaim on the merits by arguing its UCC notices complied with the statutory requirements. The Court denied Commerce's motion, so now it wants to run, but Commerce's time for a change of judge and to remove to federal court

1

has expired. So, Commerce asks this Court to realign the parties to facilitate removal of the counterclaim to the federal court.

"[T]here is little to be said for a 'peek and run' system that would allow a litigant to use a trial judge's time and then disqualify the judge after the party gets an unfavorable ruling." *State ex rel. Cohen v. Riley*, 994 S.W.2d 546, 549 (Mo. banc 1999) (Wolff, J., concurring). Fortunately, "a trial judge has sufficient discretion and flexibility under our rules to avoid and deter 'peek and run' maneuvers." *Id.* Not only should the Court deny Commerce's motion outright to avoid and deter its peek and run maneuver, but it should decline to manufacture federal jurisdiction by realigning the parties.

## B. Analysis

Commerce argues realignment is justified for two reasons: (1) it will allow "Commerce to remove this case to federal court, which is the appropriate forum for Counterclaim Plaintiffs' putative nationwide class action claims under CAFA;" and (2) it "is appropriate because it would be consistent with the true interests of the parties in this case [and] avoid any jury confusion should this case proceed to trial[.]" *See* Motion, ¶¶ 7–8. Both arguments lack merit.

### 1. The Court should deny Commerce's motion to realign because manufacturing federal jurisdiction is neither allowed nor a valid reason to realign the parties.

Commerce asks this Court to take an active role unauthorized by the civil rules to facilitate removal to federal court by realigning the parties. Commerce cites no Missouri rule that provides for a motion to formally realign the parties, and the only appellate opinion to address the issue suggests this Court lacks

authority to formally realign the parties. *Carter v. Tom's Truck Repair, Inc.,* 857 S.W.2d 172, 177 (Mo. banc 1993) ("realignment can and should be achieved in some manner other than by denominating a defendant as a plaintiff."); *see also Americredit Financial Services, Inc. v. Nicole M. Bell*, No. 15SL-AC24506-01 (Mo. Cir. Ct. July 11, 2017)

Other courts have rejected the strategy Commerce seeks to employ here. *See, e.g., State ex rel. Caszatt v. Gibson*, 2013 Ohio 213 (App. 2013); *Americredit, supra*. In *Caszatt,* the creditor sued a consumer to collect a debt. *Id.* at ¶ 2. The consumer counterclaimed and sought class certification. *Id.* After the trial court dismissed the debt collection action by summary judgment, the creditor moved to realign the parties, arguing "'realignment' was warranted because the counterclaim was the only claim pending." *Id.* at ¶ 6. The consumer opposed the motion, alleging the creditor was engaging in forum-shopping, and arguing no provision in the Ohio Rules of Civil Procedure authorized inversion of the parties as requested by the creditor. *Id.* at ¶ 7.

The Ohio Court of appeals noted the creditor moved to realign the parties "for the express purpose of facilitating removal of the counterclaim to the federal court." *Id.* at ¶ 26. It "held that an order to realign parties 'is clearly and patently not authorized by the Rules of Civil Procedure. * * * There is no provision in the civil rules to allow the parties (or the court for that matter) to magically transform a counterclaim into a complaint." *Discover Bank v. Passmore*, 2016 Ohio 3121, at ¶ 9 (App. 2016) (citing *Caszatt*). It explained that,

Electronically Filed - Carroll Circuit Division - October 20, 2017 - 06:51 PM

while state courts have a "very limited role in removal proceedings," the trial court "played an *active* role unauthorized by the civil rules ... for the purpose of facilitating the removal and, in effect, refused to exercise its jurisdiction to hear a FDCPA claim." *Caszatt*, 2013 Ohio 213, at ¶ 40. "Without [the judge's] role in ordering a reversal of the parties' designation, a notice of removal could not lawfully be filed." *Id*. The Ohio Court of Appeals issued a writ requiring the trial court to vacate its order and proceed to an adjudication of the merits of the counterclaim. *Id*. at ¶ 46.

Like *Caszatt*, Commerce moves to realign the parties to facilitate removal of the counterclaim to federal court. This Court should not play an active role, unauthorized by the Missouri Rules of Civil Procedure, to facilitate Commerce's desire to remove.

Commerce suggests it "is following the guidance of *Deaver*, and (unlike the removing party in that case) seeking realignment in the state court before removal." *See* Motion, ¶ 15. Although the *Deaver* court distinguished three cases because the state court had realigned the parties before removal, it never suggested it was proper for a state court to manufacture federal jurisdiction by realigning the parties. *General Credit Acceptance Co., LLC v. Deaver*, 4:13CV00524 ERW, 2013 WL 2420392 (E.D. Mo. June 3, 2013). Quite the opposite:

> Ultimately, here, there is not a situation where antagonistic parties are on the same side, and realignment would only serve to manufacture federal jurisdiction. GCAC chose to pursue its claim

in state court. Defendant Deaver answered and filed a counter-
claim. The only justification for realignment here is that the orig-
inal complaint by GCAC has been voluntarily dismissed, and
GCAC no longer wishes to litigate in the forum it originally se-
lected. This justification does not comprise a valid reason to grant
GCAC a change in status for removal purposes.

*Id.* at *6.

Commerce's assertion that *Deaver* offered "guidance" for original plaintiffs
to seek state court realignment before removal to manufacture federal juris-
diction conflicts with other Missouri federal cases discussing *Deaver*. *See Mid-
land Funding LLC v. Jackson*, No. 1:13CV177 ACL, 2014 WL 2800756, at *2
(E.D. Mo. June 19, 2014); *Steeby v. Discover Bank*, 980 F. Supp. 2d 1131 (W.D.
Mo. 2013). The *Midland* court followed *Deaver* in remanding the case to state
court. The original plaintiff indicated it wanted "to realign the parties in state
court and then remove this action a second time[.]" *Midland*, 2014 WL
2800756, at *3. Under federal law, however, "the parties' alignment is deter-
mined as of the time the original complaint is filed, not at the time of removal."
*Steeby*, 980 F.Supp. 2d at 1135, so "state court realignment of the parties [to]
creat[e] federal jurisdiction would be futile" because "characterization of the
parties for the purposes of the federal removal statute is determined by refer-
ence to federal law, not state law or a state court's decision to realign the par-
ties." *Midland*, 2014 WL 2800756, at *3.

The *Steeby* court hammered home the point that *Deaver* didn't suggest state
courts should realign parties to manufacture federal jurisdiction. There, "Dis-
cover sued Steeby in the associate division of the Circuit Court of Buchanan

5

County, Missouri, seeking payment on a $1,125.22 credit card debt." *Steeby*, 980 F.Supp. 2d at 1133. Steeby counterclaimed, which caused the action to be transferred to circuit court. *Id.* Discover Bank dismissed its petition, "leaving Steeby's counterclaims against Discover as the only remaining claims." *Id.* The state court "ordered the realignment of the parties, captioning Steeby as the plaintiff and Discover as the defendant." *Id.* Discover Bank then removed the case to federal court. *Id.*

The *Steeby* court explained why a state court couldn't manufacture federal jurisdiction for Discovery Bank by realigning the parties:

> the Court holds the fact that the state court captioned Discover as a defendant at the time of removal is of no significance. Which party is a plaintiff and which is a defendant for purposes of the federal removal statute is determined by reference to federal law, not state law or a state court's decision to realign the parties. This rule makes sense because a state court may decide to caption a plaintiff as the defendant for a variety of reasons, such as administrative convenience, which have nothing to do with which party is the substantive defendant. Allowing a state court realignment decision to control which party is the defendant for purposes of the federal removal statute would effectively give a state court or state legislature the power to control the jurisdiction of the lower federal courts, a power the Constitution entrusts to Congress. It would also thwart Congress's intent in enacting the removal statute to provide uniform removability of lawsuits from state courts to the lower federal courts, irrespective of local law. Consequently, in applying the removal statute, the Court gives no weight to the state court's decision to realign the parties.

*Id.* at 1135 (internal citations and parentheticals omitted)

Commerce's suggestion that CAFA changes the analysis and the state court in *Americredit* failed to consider it is untrue and legally wrong. The *Ameri-*

*credit* heard arguments regarding CAFA at the hearing on the motion to realign, but had no reason to discuss CAFA in its order denying realignment because over "70 years ago, the Supreme Court concluded that a litigant who files suit in state court is a 'plaintiff' and cannot remove the case, even if the defendant files a counterclaim and the original plaintiff then wears two hats, one as plaintiff and one as defendant—and even if the counterclaim is distinct from the original claim and could have been a separate piece of litigation." *First Bank v. DJL Properties, LLC*, 598 F.3d 915, 918 (7th Cir. 2010). It has long been settled that a counterclaim-defendant, such as Commerce, cannot remove an action to federal court. *Resurgent Capital Services LP v. Thomason*, 2012 WL 5398189, *1 (W.D.Mo. 2012). It remains the law for removal, and all circuits and the district courts of in the Eighth Circuit that have addressed the issue, have held CAFA didn't change the analysis. *Id.* at *1-2; *Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir.2008); *First Bank*, 598 F.3d at 917–18 ("If the drafters of the 2005 Act [CAFA] wanted to negate *Shamrock Oil*, they could have written 'defendant (including a counterclaim defendant)' or 'any party'.... But they chose the unadorned word 'defendant,' a word with a settled meaning."); *In re Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 849, 853-54 (6th Cir.2012); *Progressive West Ins. Co. v. Preciado*, 479 F.3d 1014, 1018 (9th Cir.2007); *Westwood Apex v. Contreras*, 644 F.3d 799, 807 (9th Cir. 2011); *Deutsche Bank Nat. Trust Co. v. Collins*, 2012 WL 768206 (W.D.Ark. 2012).

Commerce's arguments regarding CAFA mirror the policy concerns addressed in the concurring opinion in *Westwood Apex*. There, the concurrence noted that the defendant "transformed a $20,000 debt-collection lawsuit into an unrelated multi-million dollar class action by filing a counterclaim[.]" *Westwood Apex*, 644 F.3d at 809. Had the defendant filed his "class action separately and not by means of a counterclaim, the defendants could have removed the case from state court to federal court under 28 U.S.C. § 1453; but because [the defendant] did not do so, they must now, by happenstance, litigate in state court." *Id.* "Given that 'Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions,' *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1197 (11th Cir.2007), it seems strange that Congress would have wanted to funnel class actions filed by means of an original complaint into federal court but keep those filed by means of a counterclaim in state court. **But as the court correctly concludes, CAFA achieves this particular result, and if Congress does not like it, Congress should rethink the rule."** *Id.*

To accept Commerce's policy arguments regarding CAFA to justify realigning the parties "would be for the court to legislate rather than to adjudge." *W. Cent. Missouri Region Lodge #50 of Fraternal Order of Police v. City of Grandview*, 460 S.W.3d 425, 446 (Mo. App. 2015). The orderly administration of justice dictates deference to rather than usurpation of the legislative process. If Commerce wants to remove, Congress should rethink CAFA, not ask this

Court to assist it with attempting to circumvent the removal statute by realigning the parties.

After losing its motion to dismiss, Commerce is employing the same strategy rejected by other courts. This court should do as done by those courts and decline to realign the parties in Commerce's futile attempt to manufacture federal jurisdiction.

### 2. The Court should deny Commerce's motion to realign because realignment isn't needed to reflect the true interests of the parties.

Even assuming this Court has authority to realign the parties, the Court shouldn't realign the parties. Although Commerce tells the Court it is just following the (nonexistent) guidance from *Deaver* in seeking to realign before removal, Commerce ignores the tests for realignment and set forth by *Deaver* to determine whether realignment is warranted and the holding that cases like this one fail to justify realignment.

In *Deaver,* the plaintiff sued for a deficiency judgment and the defendant brought a consumer class action counterclaim for the plaintiff's alleged failure to send proper presale notices. *Deaver*, 2013 WL 2420392, at *1. The plaintiff's lawsuit was dismissed and the defendant's "class action counterclaim, therefore, was the only remaining claim in the state court action." *Id.* The plaintiff then moved to realign the parties. *Id.*

The *Deaver* court explained "the question of realignment, involving jurisdiction, must be tested at the time of filing the complaint." *Id.* at *5.

> The realignment inquiry generally examines whether parties
> with the same ultimate interests in the outcome of the action are

on the same side…. courts have generally applied two tests to determine whether realignment is appropriate. One test examines the original plaintiff's 'primary' or 'principal' purpose for filing suit. The parties are then aligned according to the primary purpose of the lawsuit and their respective interests. The second test provides that realignment of the parties is not required when there is an actual and substantial conflict between the parties that are sought to be realigned, even if it is not necessarily the primary dispute."

*Id.*

Applying those two tests to facts like here, the *Deaver* court held:

The Court does not find that realignment is warranted under either test in this case. Under the principal purpose test, the Court will examine the original plaintiff, GCAC's principal purpose in filing the suit, and ask if GCAC and Deaver are properly aligned on that issue…. Here, GCAC's principal purpose in filing the complaint was to seek a deficiency judgment from Deaver. On that issue, GCAC and Deaver are properly aligned according to the principal purpose of the litigation. Secondly, under the "Substantial Conflict" test, and regardless of the principal purpose of the lawsuit, there is an actual and substantial conflict between GCAC on one side, and Deaver on the other.

Ultimately, here, there is not a situation where antagonistic parties are on the same side, and realignment would only serve to manufacture federal jurisdiction. GCAC chose to pursue its claim in state court. Defendant Deaver answered and filed a counterclaim. The only justification for realignment here is that the original complaint by GCAC has been voluntarily dismissed, and GCAC no longer wishes to litigate in the forum it originally selected. This justification does not comprise a valid reason to grant GCAC a change in status for removal purposes.

*Id.* at *6.

10

Just as in *Deaver*, realignment is unwarranted. Commerce's principal purpose in filing the complaint was to seek a deficiency judgment from Defendants. Commerce and Defendants were properly aligned for the principal purpose of that litigation. Regardless of the principal purpose, there is also an actual and substantial conflict between Commerce on one side and Defendants on the other. This is not a situation where antagonistic parties are on the same side, but even it was, *Carter* noted such a situation doesn't "necessitate formal realignment[.]" 857 S.W.2d at 176–77. Rather, the Supreme Court of Missouri held "realignment can and should be achieved in some manner other than by denominating a defendant as a plaintiff." *Id.* at 177. Having satisfied neither test for realignment, this Court should deny Commerce's motion to realign.[1]

## C. Conclusion

Counterclaimants respectfully request the Court deny Commerce's motion to realign.

OnderLaw, LLC

By: _/s/ Jesse B. Rochman_____
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Counterclaimants*

---

[1] Commerce suggests there would be no prejudice to Defendants upon realignment. Prejudice isn't a consideration for realignment, but even if it was, realignment prejudices the putative class because federal courts apply a shorter statute of limitations than Missouri courts, meaning many class members claims would be time barred if the case was removed after realignment. *See Rashaw v. United Consumers Credit Union*, 685 F.3d 739 (8th Cir. 2012) (holding *Schwartz v. Bann-Cor Mortgage*, 197 S.W.3d 168, 178 (Mo. App. 2006) incorrectly held a six-year statute of limitations applies).

**Certificate of Service**

  I certify on October 20, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

                   */s/ Jesse B. Rochman* _____

| Description | 16CR-AC00091-01 Commerce Bank V Beverly Williamson and Rebecca Palmer |
|---|---|
| | Plaintiff: Commerce Bank <br> Attorney: Edwin G. Harvey |
| | Defendants: Beverly J. Williamson and Rebecca A. Palmer <br> Attorney: Jesse B. Rochman and Martin L. Daesch |
| | Judge Kevin L. Walden <br> Clerk: Melanie Higgins |
| Date | 10/24/2017 **Location** [CRLWC00004] |

| Time | Speaker | Note |
|------|---------|------|
| 1:32:43 PM | Judge | Calling Case Number 16CR-AC00091-01 |
| 1:33:03 PM | Appearances | Ed Harvey for PLT and Martin Daesch and Jesse Rochman for DFT |
| 1:33:17 PM | Judge | |
| 1:33:34 PM | Ed Harvey | Testimony on Motion to Realign Parties |
| 2:00:48 PM | Ed Harvey | Nothing Further |
| 2:00:53 PM | Judge | |
| 2:00:56 PM | Martin Daesch | |
| 2:01:09 PM | Martin Daesch | |
| 2:10:49 PM | Jesse Rochman | |
| 2:16:21 PM | Judge | |
| 2:16:23 PM | Ed Harvey | Response |
| 2:21:25 PM | Judge | |
| 2:21:58 PM | Ed Harvey | |
| 2:23:08 PM | Judge | |
| 2:26:06 PM | Ed Harvey | |
| 2:28:48 PM | Jesse Rochman | |
| 2:32:27 PM | Martin Daesch | |
| 2:32:33 PM | Judge | |
| 2:32:35 PM | Ed Harvey | |
| 2:33:20 PM | Jesse Rochman | |
| 2:34:14 PM | Ed Harvey | |
| 2:34:28 PM | Jesse Rochman | |
| 2:34:32 PM | Ed Harvey | |
| 2:34:58 PM | Judge | |
| 2:39:23 PM | Ed Harvey | Nothing Else on Record |
| 2:39:26 PM | Martin Daesch | Nothing Else on Record |
| 2:39:29 PM | Judge | Off Record |

Case 4:18-cv-00513-DGK   Document 1-2   Filed 07/06/18   Page 219 of 222

# Exhibit A

IN THE CIRCUIT COURT OF CARROLL COUNTY, MISSOURI

COMMERCE BANK,                          )
                                        )
            Plaintiff,                  )
                                        )
    vs.                                 )       Case No. 16CR-AC00091-01
                                        )
BEVERLY J. WILLIAMS and                 )       F I L E D
REBECCA PALMER,                         )
                                        )       JUN 2 7 2018
            Defendants.                 )
                                                CHERYL A. MANSUR
                                                CIRCUIT CLERK
                                                CARROLL COUNTY, MO

## ORDER

Before the Court is *Counterclaim Defendant Commerce Bank's Motion to Realign the Parties* ("*Motion*"). Original Plaintiff/Counterclaim Defendant has dismissed its original claim against Defendants/Counterclaim Plaintiffs, with prejudice. The only affirmative claims for relief pending are those of Counterclaim Plaintiffs against Counterclaim Defendant. Counterclaim Defendant requests realignment for the express purpose for seeking removal to federal court under the Class Action Fairness Act ("CAFA"). The Court has considered the arguments and authorities cited by the parties and is cognizant of federal authority relating to the effect of a state court "realignment" of parties as it relates to federal court removal jurisdiction. This Court shares the federal viewpoint that federal law, not state law, determines which party is a "defendant" for purposes of federal removal. The Court further holds the view that state law, not federal law, should determine which party is the "plaintiff" and which party is the "defendant" for purposes of state court procedure. For purposes of this case in this Court, Counterclaim Plaintiffs are the "plaintiffs" and Counterclaim Defendant is the "defendant," and realignment is appropriate. Should Counterclaim Defendant attempt to remove this case to federal court and Counterclaim

Plaintiffs oppose removal, it may well be that the case will be remanded to state court. This Court will leave that determination to its colleagues in the federal district court.

It is therefore ordered that Counterclaim Defendant Commerce Bank's *Motion to Realign the Parties* is GRANTED, and hereafter Counterclaim Plaintiffs shall hereafter be designated as "Plaintiffs" and Counterclaim Defendant shall be designated as "Defendant."

Date: _6/27/2018_

Kevin Z. Walden

_____
JUDGE

2